## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DERRICK EDMOND, KATHERINE EALY, CRAIG ROBINSON, EDDIE COOPER, JR., VICKI HILL, ROBERT T. LAWS, JR., and ADEBOLA FEGBEMI On behalf of themselves and a class of similarly-situated employees of the City of Chicago Department of Water Management,<br><br>                                    Plaintiffs,<br><br>v.<br><br>THE CITY OF CHICAGO; RANDY CONNER, acting Commissioner of the Department of Water Management, in his official and individual capacity; BARRETT MURPHY, former Commissioner of the Department of Water Management, in his official and individual capacity; JOHN POPE, Deputy Commissioner of the Department of Water Management, in his official and individual capacity; ALAN STARK, Deputy Commissioner of the Department of Water Management, in his official and individual capacity; EDWARDO SALINAS, Engineering of Water Purification of the Department of Water Management, in his official and individual capacity; and JOSEPH LYNCH, Chief Operating Engineer of the Department of Water Management, in his official and individual capacity,<br><br>                                    Defendants. | Case No.<br><br>Judge:<br><br>Magistrate:<br><br><br><br><br><br>CLASS ACTION<br><br>Jury Demand Requested |

## **COMPLAINT**

NOW COME Plaintiffs, DERRICK EDMOND, KATHERINE EALY, CRAIG

ROBINSON, EDDIE COOPER, JR., VICKI HILL, ROBERT T. LAWS, JR., and ADEBOLA

FEGBEMI ("Plaintiffs"), by and through their attorney, William C. Martin, of Henderson Parks

LLC, on behalf of themselves and a class of similarly-situated Black employees of the City of Chicago Department of Water Management (hereinafter "DWM" or "Department") complaining of Defendants, THE CITY OF CHICAGO; RANDY CONNER, acting Commissioner of the DWM, in his official and individual capacity; BARRETT MURPHY, former Commissioner of the DWM, in his official and individual capacity; JOHN POPE, Deputy Commissioner of the DWM, in his official and individual capacity; ALAN STARK, Deputy Commissioner of the DWM, in his official and individual capacity; EDWARDO SALINAS, Engineering of Water Purification of the DWM, in his official and individual capacity; and JOSEPH LYNCH, Chief Operating Engineer of the DWM, in his official and individual capacity, ("Defendants") and state as follows:

## NATURE OF THE ACTION

1.     This is an action brought under 42 U.S.C. §§ 1981(a) and 1983 to correct the real and deliberate acts of race discrimination carried out against Plaintiffs, and to redress violations of Plaintiffs' Equal Protection rights guaranteed under the Fourteenth Amendment of the United States Constitution.

2.     Defendants continue to engage in deliberate and unlawful policies, patterns, and employment practices to create and proliferate a hostile and abusive work environment based on race that includes violence, intimidation, retaliation, and constructive discharge against the Plaintiffs, and the class of similarly-situated former and current DWM employees.

3.     Plaintiffs and the class of similarly-situated employees seek declaratory and/or injunctive relief, compensatory and punitive damages, costs, attorneys' fees, and/or any such other relief the Court may deem appropriate.

4.     This lawsuit also arises under the Fair Labor Standards Act, 29 U.S.C. §201 *et.*
*seq.* ("FLSA") for unpaid wages, liquidated damages, costs, attorneys' fees, declaratory and/or
injunctive relief, and/or any such other relief the Court may deem appropriate.

5.     Defendants have willfully violated the FLSA by intentionally not filling open
positions in the Department as a part of the creation and proliferation of a hostile work
environment, and then failing to pay Plaintiffs, and similarly-situated employees, wages
commensurate to work performed that was senior to their classification or in addition to their
job classification or both, in violation of the FLSA.

## JURISDICTION AND VENUE

6.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) & (4),
which confers original jurisdiction upon this Court in a civil action to redress the deprivation of
any right, privilege, or immunity secured by the Constitution of the United States or by any Act
of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the
United States under color of any State law, statute, ordinance, regulation, custom, or usage, and
to recover damages or to secure equitable or other relief under any Act of Congress providing
for the protection of civil rights.

7.     The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1331, which
confers original jurisdiction upon this Court in a civil action arising under the Constitution or
laws of the United States.

8.     The jurisdiction of this Court is also invoked pursuant to 29 U.S.C. § 216(b),
which confers original jurisdiction upon this Court in a civil action arising under the FLSA.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c),
because Defendant has its headquarters, can be found, and conducts all its business within the

Northern District of Illinois, and because the unlawful conduct alleged herein was committed and continues to occur within the boundaries of the Northern District of Illinois.

## PARTIES

Individual Plaintiffs

10.  Individual plaintiffs are current or former employees of the City of Chicago within the meaning of FLSA 29 U.S.C. § 203(e)(2)(C).

11.  Plaintiff Derrick Edmond is a Black man and resident of Cook County, Illinois.

   a.  He is currently 57 years of age.

   b.  He is a member of a protected class.

   c.  He has been and continues to be subjected to adverse employment actions.

   d.  He has been and continues to be treated differently by his employer during his employment in comparison to other similarly-situated employees not in his protected class.

   e.  He is qualified for his job and performs his work in an exemplary manner.

   f.  He started work for the DWM in 1985.

   g.  He currently works as an Operating Engineer Group A at the South Water Purification Plant located at 3300 E. Cheltenham Place, Chicago, Illinois 60649.

12.  Plaintiff Katherine Ealey is a Black woman and resident of Cook County, Illinois.

   a.  She is currently 50 years of age.

   b.  She is a member of a protected class.

   c.  She has been and continues to be subjected to adverse employment actions.

    d.   She has been and continues to be treated differently by her employer during her employment in comparison to other similarly-situated employees not in her protected class.

    e.   She is qualified for her job and performs her work in an exemplary manner.

    f.   She started work for the DWM in 1999.

    g.   She is currently Acting Chief Operating Engineer at the Jardine Water Purification Plant located at 1000 E Ohio St, Chicago, IL 60611.

13.    Plaintiff Craig Robinson is a Black man and resident of Cook County, Illinois.

    a.   He is currently 41 years of age.

    b.   He is a member of a protected class.

    c.   He has been and continues to be subjected to adverse employment actions.

    d.   He has been and continues to be treated differently by his employer during his employment in comparison to other similarly-situated employees not in his protected class.

    e.   He is qualified for his job and performs his work in an exemplary manner.

    f.   He started work for the DWM in 2000.

    g.   He currently works as an Operating Engineer Group A at the Jardine Water Purification Plant located at 1000 E Ohio St, Chicago, IL 60611.

14.    Plaintiff Eddie Cooper Jr., is a Black man and resident of Cook County, Illinois.

    a.   He is currently 53 years of age.

    b.   He is a member of a protected class.

    c.   He has been and continues to be subjected to adverse employment actions.

d. He has been and continues to be treated differently by his employer during his employment in comparison to other similarly-situated employees not in his protected class.

e. He is qualified for his job and performs his work in an exemplary manner.

f. He started work for the DWM in 1994.

g. He currently works as a Water Chemist II at the South Water Purification Plant located at 3300 E. Cheltenham Place, Chicago, Illinois 60649.

15. Plaintiff Vicki Hill is a Black woman and resident of Cook County, Illinois.

a. She is currently 52 years of age.

b. She is a member of a protected class.

c. She was subjected to ongoing adverse employment actions.

d. She was treated differently by her employer during her employment in comparison to other similarly-situated employees not in her protected class.

e. She was qualified for her job and performed her work in an exemplary manner.

f. She started work for the DWM in 1983 until she was constructively discharged in 2015 while working as a Staff Assistant.

16. Plaintiff Robert T. Laws, Jr. is a Black man and resident of Cook County, Illinois.

a. He is currently 51 years of age.

b. He is a member of a protected class.

c. He has been and continues to be subjected to adverse employment actions.

d. He has been and continues to be treated differently by his employer during his employment in comparison to other similarly-situated employees not in his protected class.

    e.   He is qualified for his job and performs his work in an exemplary manner.

    f.   He started work for the DWM in 1988.

    g.   He currently works as a Laborer at the pumping station located at 9546 South Genoa, Chicago, Illinois 60643.

17.    Plaintiff Adebola Fagbemi is a Black man and resident of Cook County, Illinois.

    a.   He is currently 55 years of age.

    b.   He is a member of a protected class.

    c.   He was subjected to adverse employment action.

    d.   He was treated differently by his employer during his employment in comparison to other similarly-situated employees not in his protected class.

    e.   He has a Ph.D. in Environmental Engineering with a specialization in water and effluent.

    f.   He was qualified for his job and performed his work in an exemplary manner.

    g.   He started work for the DWM in 1988 and was employed with the DWM until he was illegally terminated in retaliation in 2010.

I.    Defendants

18.    Defendant CITY OF CHICAGO, ("City") is a municipal corporation in the State of Illinois, County of Cook incorporated under the laws of the State of Illinois.

19.    City of Chicago, is an employer within the meaning of 29 U.S.C. § 203(d).

20.    The Department is a department within the City.

21.    The City employs the Plaintiffs and the other personnel of the Department and is responsible for the lawful operation, administration, maintenance, training, and control over the Department.

22.     Each act and/or omission alleged in this COMPLAINT was done under color of authority and color of state law as well as under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the City.

23.     Randy Conner, Acting Commissioner, acted and acts under color of law as the Acting Commissioner of the Department.

24.     Barrett Murphy, former Commissioner of the Department, acted under color of law.

25.     John Pope, Deputy Commissioner, acted and acts under color of law.

26.     Alan Stark, Deputy Commissioner, acted and acts under color of law.

27.     Edwardo Salinas, Engineer of Water Purification, acted and acts under color of law.

28.     Joseph Lynch, Chief Operating Engineer, acted and acts under color of law.

29.     The Chicago Department of Water Management is an infrastructure department that operates under the direction of a Commissioner.

30.     The Commissioner is appointed by the Mayor and approved by the Chicago City Council.

31.     The Commissioner sets the policy and culture of the Department.

32.     The Commissioner controls all transfers and promotions within the Department.

33.     Providing support to the Commissioner in order of rank is the First Deputy Commissioner, two Managing Deputy Commissioners, and five Deputy Commissioners.

34.     The Commissioner along with the First Deputy and Deputy Commissioners have ultimate policy marking authority over promotions, transfers, discipline, and terminations within the Department, including the 11 pumping stations and 2 filtration plants.

## CLASS ACTION ALLEGATIONS

35.    Paragraphs 1 through 34 above are incorporated herein by reference.

36.    The named Plaintiffs bring this action on their own behalf, and on behalf of a class of persons under Rule 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

37.    Racial discrimination is real and is damaging.

38.    Racial discrimination is, by definition, subjecting a class of people to different treatment because of race.

39.    The named Plaintiffs seek to represent a class of:

**All current and former Department employees who have been subject to the ongoing and continuing violations of a hostile work environment and/or deliberate acts of discrimination during their employment based on their race.** (herein "Race Class").

40.    The named Plaintiffs also seek to represent a class of:

**All Department employees who are or have been employed by the Department in any classification as non-exempt FLSA personnel who worked job classifications senior to their own or in addition to their own without receiving appropriate compensation for each hour worked, including overtime compensation**. (herein "Wage Class").

Numerosity – Rule 23(a)(1)

41.    The individuals in the Class are so numerous that joinder of all members is impracticable.

42.    Plaintiffs estimate that there are at least fifty (50) members of the Race Class and may be as many as five hundred (500) members of the Race Class.

43.    Plaintiffs estimate that there are at least fifty (50) members of the Wage Class and may be as many as one hundred (100) members of the Wage Class.

Commonality – Rule 23(a)(2)

44.     There are questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions are:

a.  Whether the City of Chicago violated federal civil rights laws, including 42 U.S.C. § 1983.

b.  Whether the City of Chicago violated the FLSA, 29 U.S.C. § 201.

c.  Whether the individual Defendants violated federal civil rights laws, including 42 U.S.C. §§ 1981 and 1983.

d.  Whether Defendants maintain written or unwritten policies and/or practices that create or proliferate a hostile or abusive work environment for Class members.

e.  Whether Defendants create or proliferate a hostile or abusive work environment for Class members by deliberately denying Class members access to training opportunities.

f.  Whether Defendants create or proliferate a hostile or abusive work environment for Class members by deliberately intimidating Class members.

g.  Whether Defendants create or proliferate a hostile or abusive work environment for Class members by allowing unwelcomed, inappropriate conduct such as any conduct of a sexual or racial nature; sexually oriented or racially motivated jokes; sexually explicit or racially insensitive e-mail, screen savers, posters, cartoons, and graffiti; or unwanted verbal and physical contact based on sex or race.

h.  Whether Defendants maintain written or unwritten policies and/or practices for determining transfers that create or proliferate a hostile or abusive work environment for Class members.

i.  Whether Defendants maintain written or unwritten policies and/or practices for determining promotions that create or proliferate a hostile or abusive work environment for Class members.

j.  Whether Defendants maintain written or unwritten policies and/or practices for determining filling open positions that create or proliferate a hostile or abusive work environment for Class members.

k.  Whether Defendants maintain written or unwritten policies and/or practices for administering discipline that create or proliferate a hostile or abusive work environment for Class members.

l.  Whether Defendants maintain written or unwritten policies and/or practices for terminations that create or proliferate a hostile or abusive work environment for Class members.

m.  Whether Defendants maintain written or unwritten polices and/or practices for transferring, promoting, or placing non-Black employees into positions that create or proliferate a hostile or abusive work environment for Class members.

n.  Whether any single policy or practice maintained by Defendants that creates or proliferates a hostile or abusive work environment for Class members is so pervasive and severe that it is sufficient to permit an inference of intentional discrimination.

o.  Whether there are statistically significant disparities between the transfer, promotion, or placement awarded to Black employees and the transfer, promotion, or placement awarded to similarly-situated non-Black employees sufficient to permit an inference of intentional discrimination.

11

p. Whether Defendants failed and continue to fail in remedying or preventing a hostile working environment for its Black employees.

q. If discrimination is found, whether injunctive relief, including changes to companywide written and unwritten policies and practices, is needed to adequately remedy past and present discrimination against the Class and prevent future discrimination against the Class.

r. Whether Defendants' conduct constitutes a pattern and practice of discrimination against the Class justifying an award of lost wages, benefits, or other similar relief to individual members of the Class.

s. Whether Defendants' conduct constitutes a pattern and practice of discrimination against the Class justifying an award of compensatory and punitive damages to individual members of the Class;

Typicality – Rule 23(a)(3)

45. The claims of the representative parties are typical of the claims of the class.

Adequacy of the Representative Plaintiff – Rule 23(a)(4)

46. The named Plaintiffs will fairly and adequately represent the interests of the Class.

Adequacy of the Representative Plaintiff's Counsel – Rule 23(g)

47. The named Plaintiffs have retained skilled and experienced counsel to represent them in class litigation.

**Class Certification Under Rule 23(b)(2)**

48. Defendants have refused to act on grounds generally applicable to the class for making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the class.

12

49.     Class members are entitled to declarative and injunctive relief to end the Defendants' pervasive and systemic practices that have created and proliferates a hostile work environment throughout the Department.

### Class Certification Under Rule 23(b)(3)

50.     The common questions of law and fact predominate over any questions affecting only individual class members and that a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

51.     The class members have been damaged and are entitled to recovery as a result of the Defendants pervasive and systemic practices that create a hostile work environment in the Department.

### ALLEGATIONS OF DISCRIMINATION COMMON TO RACE CLASS MEMBERS

52.     Paragraphs 1 through 51 above are incorporated herein by reference.

53.     The Department employs approximately 2,104 full-time personnel.

54.     The primary function of the Department is the purification and transmission of potable water to the homes and business of Chicago, and 126 suburban communities.

55.     The Department is also responsible for the transmission of the effluent from the homes and business of Chicago, to the Metropolitan Water Reclamation District of Greater Chicago for treatment.

56.     The Department includes 11 pumping stations and 2 filtration plants.

57.     The Department along with the Department officials: Randy Conner, Acting Commissioner, in his official and individual capacity; Barrett Murphy, former Commissioner of the Department, in his official and individual capacity; John Pope, Deputy Commissioner, in his official and individual capacity; Alan Stark, Deputy Commissioner, in his official and

individual capacity; Edwardo Salinas, Engineer of Water Purification, in his official and individual capacity; Joseph Lynch, Chief Operating Engineer, in his official and individual capacity, and others in the Department maintain written or unwritten policies and/or practices that create, sustain, and proliferate a hostile and abusive work environment for Class members based on race across the Department and specifically within the two filtration plants.

58.    This hostile and abusive work environment is perpetuated, sustained, and created by deliberate acts allowed, sanctioned, and encouraged by Defendants.

59.    Each of the following deliberate acts occur against Black employees and weave a tapestry of hostility that dominates every aspect of Class members existence in the Department. These acts include being:

a.   assigned less desirable shifts;

b.   assigned less desirable days off;

c.   assigned less desirable work assignments;

d.   denied promotions - "Glass Ceiling";

e.   denied transfers - "Glass Wall";

f.   denied overtime;

g.   denied training opportunities;

h.   denied compensation for work performed;

i.   intimidated;

j.   harassed based on race;

k.   subjected to unwelcomed racially-charged conduct;

l.   subjected to violence in the workplace;

m.   subjected to harsh and undue discipline in retaliation;

n.   subjected to retaliatory transfers;

o.   subjected to retaliatory terminations; and

p.   constructively discharged.

60.   Defendants maintain written or unwritten polices and/or practices for promoting, transferring, and providing overtime to the detriment of Black employees that creates and proliferates a hostile or abusive work environment for Class members based on race.

61.   All employees of the Department are represented by several unions including, but not limited to:  the International Union of Operating Engineers, Local 399; American Federation of State, County and Municipal Employee Counsel 31; Pipefitters Association Local Union 597, Service Employees International Union Local 73; and Laborers Local 1092 (collectively "Unions").

62.   Each of these Unions are parties to respective Collective Bargaining Agreements ("CBA") representing the employees of the Department.

63.   Each CBA specifies the protocol under which employees may request transfers within job classifications or seek promotions to new job classifications.

64.   Under the operative CBA, Promotions are granted based on experience and seniority.

65.   Under the operative CBA, transfers are granted strictly based on seniority.

66.   Seniority is defined as an employee's continuous service in the employee's current job title.

67.   The Department consistently and deliberately, based on race, failed to follow written policies governing promotions, transfers, and overtime.

The Glass Ceiling

68.     Black employees are intentionally blocked by a "Glass Ceiling," a transparent barrier of deliberate racism obstructing the opportunities of the upward movement and advancement afforded to non-Black employees of the Department.

69.     The Department has a deliberate and pervasive pattern and practice of systemic and continuing employment discrimination against Black employees with respect to opportunities for advancement/leadership and promotions.

70.     The Department has created an employment scheme that requires Black employees to work three times as long as their Caucasian counterparts in order to receive a promotion.

71.     When a promotion is obtained, the progress of Black employees is blocked by the Glass Ceiling, the result being Black employees are consistently prohibited from reaching the highest levels within the Department.

72.     This Glass Ceiling fundamentally changes the nature and terms of employment for Black employees.

73.     Caucasians are promoted at a higher rate than Black employees.

74.     Caucasians can achieve the highest levels of leadership and management within the Department.

75.     Job openings are posted through the normal course of business.

76.     Job openings, however, are not filled even though qualified Black employees have sufficient seniority, experiences, and performance history to qualify for the positions.

77.     Instead, job openings are deliberately left unfilled until a handpicked Caucasian candidate is chosen.

78.     An independent review of the entire candidate pool would reveal that qualified Black employees are consistently available for job openings, but systematically denied the opportunity to be promoted based on race.

79.     Blacks are denied the opportunity to advance to the same level and at the same rate as less-qualified Caucasian employees.

The Glass Walls

80.     Black employees are intentionally blocked by Glass Walls, transparent barriers of racism that strip Black employees of the freedom to select preferred shifts, locations, or days off; a privilege afford non-Black employees with sufficient seniority.

81.     The Department has a deliberate and pervasive pattern and practice of systemic and continuing employment discrimination against Black employees based on race with respect to opportunities to transfer within the Department.

82.     These Glass Walls fundamentally change the nature and terms of employment for Black employees.

83.     In general, any operative CBA governs job assignments or transfers.

84.     The Department's right to transfer and assign employees is limited by a seniority rights provision in any operative CBA.

85.     Employees who desire a change in shift, day off group, or work location of their job assignment shall request such a change in writing on the Employer's form.

86.     In general, an operative CBA requires that the Department select the most senior employee in the job classification who had requested a transfer.

87. The Department then shall select the most senior employee in the job classification who has such request on file, provided the employee has the present ability to perform the required work without further training.

88. Job transfer opportunities are posted through the normal course of business.

89. The Department, however, intentionally, based on race, fails to fulfill open job transfer opportunities even though qualified Black employees with sufficient seniority have requested the transfer.

90. As a result, Defendants deliberately leave job transfers open and unfilled until a handpicked Caucasian candidate is available.

91. The Department's total disregard of seniority for Black employees is arbitrary, capricious, and in bad faith.

92. The Department, by maintaining a Glass Ceiling in determining promotions, creates and proliferates a hostile or abusive work environment for Class members.

93. The Department, by maintaining Glass Walls in determining transfers, creates and proliferates a hostile or abusive work environment for Class members.

94. The Glass Ceiling and Glass Walls deprive Black employees of the rights and liberties afforded non-Blacks to advance their careers and choose their own schedules and locations based on seniority, in violation of their Constitutional rights under the color of law.

95. As a result of the Glass Ceiling and Glass Walls, Black employees are chilled and deterred from applying for promotions or transfers because of the Department-wide policy that they will not be promoted or transferred because of their race.

96. Overtime is provided to employees based on seniority.

97. The Department deliberately overlooks the seniority of Black employees by failing to offer overtime to them at the same rate and under the same conditions that the Department provides overtime opportunities to non-Black employees.

98. The Department deliberately limits the work opportunities of Black employees by assigning union-designated work to unqualified, non-Black, and non-union and/or inappropriate union workers.

99. Limiting the opportunity for Black employees to earn overtime wages creates and proliferates an abusive and hostile work environment based on race.

100. Black employees are denied the same training opportunities as other similarly situated non-Black employees.

101. The Department's refusal to provide training to Black employees restricts the Black employees' ability to progress into the next higher position and other promotional opportunities, which also creates and proliferates a hostile and abusive work environment.

102. While trying to earn a living imprisoned by a Glass Ceiling and Glass Walls, Black employees are subject to unwelcome, inappropriate conduct during their day-to-day activities.

103. The unwelcome and inappropriate conduct includes intimidation and violence in the work place, which is condoned and encouraged by the Department, also creates and proliferates a hostile and abusive work environment based on race.

104. Black employees are humiliated, harassed, and threatened daily by co-workers, supervisors, and Department leadership.

105.   The pervasive harassment, intimidation, and violence aimed at Black employees is meant to chill Black employees into accepting their status as second-class citizens within the Department.

106.   Black employees are subject to racially derogative language by non-Black managers and employees including being called "niggers," or referred to as "you people."

107.   The Department applies workplace rules and regulations in a racially-biased manner.

108.   Black employees often start their shifts with their work area sabotaged and tampered with by non-Blacks.

109.   Black employees who attempt to question their treatment are physically intimidated, threatened, and verbally abused.

110.   Black employees are subjected to racially insensitive email, screen savers, posters, cartoons, and graffiti.

111.   Black female employees are sexually harassed daily by being subjected to unwelcomed sexually-motivated jokes, comments, and innuendo on a regular basis.

112.   Black female employees are called bitches and whores on a regular basis.

113.   Unwelcome and inappropriate conduct such as: racial slurs; any conduct of a sexual or racial nature; sexually oriented or racially motivated jokes; sexually explicit or racially insensitive communications including but not limited to e-mail, screen savers, posters, cartoons, and graffiti; and unwanted verbal and physical contact based on sex or race is severe or pervasive to create a hostile or abusive work environment.

114.   Defendants maintain written or unwritten policies and/or practices for discipline and terminations that create or proliferate a hostile or abusive work environment for Black employees.

115.   Black employees are subjected to unfair, arbitrary, and capricious discipline in retaliation for speaking out against their hostile work environment.

116.   Black employees are subjected to illegal transfers to less desirable locations and/or work shifts in retaliation for speaking out against their hostile work environment.

117.   The retaliation against Black employees leads to reduced promotional and/or training opportunities.

118.   In response to the hostile and abusive work environments during their day-to-day activities, while surrounding by Glass Walls and limited by a Glass Ceiling, which on their own create a hostile and abusive work environment, Black employees can either continue to suffer or be constructively discharged.

119.   Black employees are subject to involuntary terminations based on race in retaliation.

120.   In response to these hostile work environments, Black employees have made repeated complaints to the Department and to the City of Chicago.

121.   In response to the complaints, Defendants have done nothing to remedy the hostile work environment.

122.   Instead of taking steps to alleviate the hostile work environment, Defendants instituted a policy of relation against Black employees.

123.   Any single policy or practice maintained by Defendants, or act condoned implicitly or explicitly by Defendants, that creates or proliferates a hostile or abusive work

environment for Class members is so pervasive and severe that a reasonable person can infer intentional discrimination on behalf of the individual Defendants.

124.   Defendants have maintained a systemic employment system that intentionally discriminates against or imposes disparate treatment upon a protected group based on race.

125.   This systemic employment system maintained by the Defendants is so pervasive that it has become the City of Chicago's standard operating procedure.

126.   The Defendants' systemic employment system has denied the Plaintiffs tangible job benefits and therefore constitutes illegal discrimination.

127.   This intentional and disparate treatment of discrimination represents a department-wide pattern and practice, rather than a series of isolated incidents.

128.   Defendants' written and unwritten policies and practices regarding evaluation, compensation, and advancement in leadership and promotion subject the named Plaintiffs to ongoing disparate treatment based on race.

129.   Defendants' actions constitute a continuing violation of the rights of the named Plaintiffs and the Class they represent.

130.   There are statistically significant disparities between the transfer, promotion, or placements awarded to Black employees and the transfer, promotion, or placement awarded to similarly situated non-Black employees sufficient to permit an inference of intentional discrimination.

**ALLEGATIONS OF DISCRIMINATION COMMON TO WAGE CLASS MEMBERS**

131.   This action is properly brought under and maintained as an opt-in action pursuant to the FLSA, 29 U.S.C. § 216(b), by Plaintiff and on behalf of the Wage Class employees of the Department.

132.  Upon information and belief, Plaintiffs and the Wage Class are and have been similarly situated, have and have had substantially similar job requirements and pay provisions, and are and have been subject to the Department's decision, policy, plan, and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to compensate them for each hour worked including overtime compensation.

133.  Plaintiff, individually and on behalf of other such similarly situated employees, seeks relief on a collective basis challenging, among other FLSA violations, the Department's practice of failing to accurately record all hours worked and failing to pay employees for hours worked including overtime compensation.

134.  The Wage Class is readily ascertainable. For purpose of notice and other purposes related to this action, their names, phone numbers, and addresses are readily available from the Department. Notice can be provided to the Wage Class via first class mail to the last address known to the Department and through electronic mail using the Department's electronic mail system and intranet capabilities.

135.  Employees are instructed to take on job duties of more senior positions without receiving a commensurate salary for such added duties.

136.  Employees are not given proper training or staff to accomplish the new tasks.

137.  Upon completion of the new tasks, the employees are not properly paid.

<u>Record Keeping</u>

138.  Defendant City of Chicago has failed to keep appropriate records as required by the FLSA, with respect to the Plaintiffs and Wage Class, sufficient to determine wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 211(c) and 215(a).

## <u>INDIVIDUAL NAMED PLAINTIFFS' CLAIMS</u>

<u>Derrick Edmond</u>

139.   Paragraphs 1 to 138 are incorporated herein by reference.

140.   Edmond suffers unwelcomed racial harassment so severe and pervasive that it alters the terms and conditions of his employment and creates an abusive and hostile environment.

141.   The effect of the practice has been to deprive Edmond of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

142.   The unlawful employment practices suffered by Edmond were intentional.

143.   The unlawful practices suffered by Edmond were done with malice or with reckless indifference to the federally protected rights of Edmond and similarly-situated non-Black employees.

144.   During his employment with the Department, Edmond was subjected to a hostile work environment due to his race.  Examples of his hostile work environment include:

a.   Edmond consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of his race.

b.   Edmond consistently applied for transfer opportunities but was denied those opportunities because of his race.

c.   Edmond suffers through undesirable work assignments, shifts, and days off despite his seniority.

d.   Edmond was subjected to undue disciplinary hearings in retaliation for speaking out against his treatment in the Department.

e.  Edmond has been harassed regularly because of his race specifically Defendants Stark, Salinas, and Lynch under color of state law intentionally create, sustain, encourage, and proliferate a hostile and abusive work environment based on race.

f.  Edmond has been called a nigger and referred to as "you people" consistently during his time in the Department.

g.  Edmond has been violently attacked and intimidated in the workplace because of his race.

h.  Edmond has been forced to request early retirement rather than continue to endure the daily hostile work environment.

145.  Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

146.  The Department was aware of Edmond's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

Katherine Ealy

147.  Paragraphs 1 through 146 above are incorporated herein by reference.

148.  Ealy suffers unwelcomed racial harassment so severe and pervasive that it alters the terms and conditions of her employment to create an abusive and hostile environment.

149.  The effect of the practice has been to deprive Ealy of equal employment opportunities and to otherwise adversely affect her status as an employee because of her race.

150.  The unlawful employment practices suffered by Ealy were intentional.

151.   The unlawful practices suffered by Ealy were done with malice or with reckless indifference to the federally protected rights of Ealy and similarly-situated non-Black employees.

152.   During her employment with the Department, Ealy was subjected to a hostile work environment due to her race.  Examples of her hostile work environment include:

a.   Ealy consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of her race.

b.   Ealy consistently applied for transfer opportunities but was denied those opportunities because of her race.

c.   Ealy was denied training opportunities because of her race.

d.   Ealy was denied the proper staff to execute her duties within the Department because of her race.

e.   Ealy continues to be harassed each day because of her race, specifically Defendant Stark under color of state law intentionally creates, sustains, encourages and proliferates a hostile and abusive work environment based on race.

f.   Ealy is sexually harassed regularly because of her race.

g.   Ealy regularly is called something other than her name, based on her race, such as being called a fucking whore and a bitch.

153.   Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

154.   The Department was aware of Ealy's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

Craig Robinson

155.   Paragraphs 1 through 154 above are incorporated herein by reference.

156.   Robinson suffers unwelcomed racial harassment so severe and pervasive that it alters the terms and conditions of his employment to create an abusive and hostile environment.

157.   The effect of the hostile work environment is to deprive Robinson of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

158.   The unlawful employment practices suffered by Robinson were intentional.

159.   The unlawful practices suffered by Robinson were done with malice or with reckless indifference to the federally protected rights of Robinson and similarly-situated non-Black employees.

160.   During his employment with the Department, Robinson was subjected to a hostile work environment due to his race.  Examples of his hostile work environment include:

a.   Robinson consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of his race.

b.   Robinson consistently applied for transfer opportunities but was denied those opportunities because of his race.

c.   Robinson continues to be harassed each day because of his race specifically Defendants Stark and Lynch under color of state law intentionally create, sustain, encourage, and proliferate a hostile and abusive work environment based on race.

27

    d.   Robinson is subjected to racially insensitive conduct and images.

    e.   Robinson was subjected to undue disciplinary hearings in retaliation for speaking out against his treatment in the Department.

161.   Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

162.   The Department was aware of Robinson's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

163.   Robinson has been instructed to fill in and take on job duties of more senior positions without receiving a commensurate salary for such added duties.

164.   Robinson was not given proper training or staff to accomplish the new tasks.

165.   Upon completion of the new tasks, Robinson was not properly paid consistent with the level of work and the title into which he worked.

<u>Eddie Cooper, Jr.</u>

166.   Paragraphs 1 through 165 above are incorporated herein by reference.

167.   Plaintiff Cooper suffers unwelcomed racial harassment so severe and pervasive that it alters the terms and conditions of his employment to create an abusive and hostile work environment.

168.   The effect of the hostile work environment has been to deprive Plaintiff Cooper of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

169.   The unlawful employment practices suffered by Cooper were intentional.

170.   The unlawful practices suffered by Cooper were done with malice or with reckless indifference to the federally protected rights of Cooper and similarly-situated non-Black employees.

171.   During his employment with the Department, Cooper was subjected to a hostile work environment due to his race.  Examples of his hostile work environment include:

a.   Cooper consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of his race.

b.   Cooper consistently applied for transfer opportunities but was denied those opportunities because of his race.

c.   Cooper suffers though undesirable work assignments, shifts, and days off despite his seniority.

d.   Cooper was subjected to undue disciplinary hearings in retaliation for speaking out against his treatment in the Department.

e.   Cooper continues to be harassed regularly because of his race specifically Defendants Pope and Salinas under color of state law intentionally create, sustain, encourage, and proliferate a hostile and abusive work environment based on race.

f.   Cooper has been intimidated to alter chemical statistics to cover up problems with the City's drinking water.

172.   Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

173. Department was aware of Cooper's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

174. Cooper has been instructed to fill in and take on job duties of more senior positions without receiving a commensurate salary for such added duties.

175. Cooper was not given proper training or staff to accomplish the new tasks.

176. Upon completion of the new tasks, Cooper was not properly paid consistent with the level of work or the title into which he worked.

<u>Vicki Hill</u>

177. Paragraphs 1 through 176 above are incorporated herein by reference.

178. Hill suffered unwelcomed racial harassment sufficiently severe or pervasive to alter the terms and conditions of her employment to create an abusive and hostile environment.

179. The effect of the practice has been to deprive Plaintiff Hill equal employment opportunities and to otherwise adversely affect her status as an employee because of her race.

180. The unlawful employment practices suffered by Hill were intentional.

181. The unlawful practices suffered by Hill were done with malice or with reckless indifference to the federally protected rights of similarly-situated non-Black employees.

182. During her employment with the Department, Hill was subjected to a hostile work environment due to her race. Examples of her hostile work environment include:

   a. Hill consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of her race.

   b. Hill consistently applied for transfer opportunities but was denied those opportunities because of her race.

    c.   Hill was sexually harassed based on her race.

    d.   Hill was subjected to undue disciplinary hearings in retaliation for speaking out against her treatment in the Department.

    e.   Hill was harassed each day because of her race specifically Defendant Stark, under color of state law intentionally creates, sustains, encourages, and proliferates a hostile and abusive work environment based on race.

    f.   Hill's workspace was sabotaged or tampered with because of her race.

    g.   Hill was deliberately forced to retire six months short of receiving the maximum amount on her pension.

183.   Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

184.   The Department was aware of Hill's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

185.   Hill has been instructed to fill in and take on job duties of more senior positions without receiving a commensurate salary for such added duties

186.   Hill was not given proper training or staff to accomplish the new tasks.

187.   Upon completion of the new tasks, Hill was not properly paid consistent with the level of work or the title into which she worked.

<u>Robert T. Laws</u>

188.   Paragraphs 1 through 187 above are incorporated herein by reference.

189.   Laws suffers unwelcomed racial harassment so severe and pervasive that it alters the terms and conditions of his employment to create an abusive and hostile environment.

190.   The effect of the practice has been to deprive Plaintiff Laws of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

191.   The unlawful employment practices suffered by Laws as complained of above were intentional.

192.   The unlawful practices suffered by Laws were done with malice or with reckless indifference to the federally protected rights of Laws and similarly-situated non-Black employees.

193.   During his employment with the Department, Laws was subjected to a hostile work environment due to his race.  Examples of his hostile work environment include:

    a.   Laws consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of his race.

    b.   Laws consistently applied for transfer opportunities but was denied those opportunities because of his race.

    c.   Laws continues to be discouraged to apply for transfers and promotions because of his race.

    d.   Laws suffers though undesirable work assignments, shifts, and days off despite his seniority.

    e.   Laws continues to be denied overtime because of his race, despite his seniority.

    f.   Laws continues to be harassed regularly because of his race.

    g.   Laws continues to be subjected to racist emails and discussions among his co-workers and supervisors.

h.  Laws continues to be subjected to racially insensitive comments and slurs because of his race.

194.  Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

195.  The Department was aware of Laws's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

Adebola Fagbemi

196.  Paragraphs 1 through 195 above are incorporated herein by reference.

197.  Fagbemi suffered unwelcomed racial harassment so severe and pervasive that it altered the terms and conditions of his employment to create an abusive and hostile environment.

198.  The effect of the practice has been to deprive Plaintiff Fagbemi equal employment opportunities and to otherwise adversely affect his status as an employee because of his race.

199.  The unlawful employment practices suffered by Fagbemi were intentional.

200.  The unlawful practices suffered by Fagbemi were done with malice or with reckless indifference to the federally protected rights of Fagbemi and similarly-situated non-Black employees.

201.  During his employment with the Department, Fagbemi was subjected to a hostile work environment due to his race.  Examples of this hostile work environment include:

a.  Fagbemi consistently applied for open promotion opportunities and successfully passed the prerequisite examinations, but was denied the promotion opportunities because of his race.

b.   Fagbemi consistently applied for transfer opportunities but was denied those opportunities because of his race.

c.   Fagbemi was denied training opportunities because of his race.

d.   Fagbemi was denied the proper staff to execute his duties within the Department because of his race.

e.   Fagbemi's workspace was sabotaged because of his race.

f.   Fagbemi was subjected to racially insensitive email, cartoons, and images.

202.   The unlawful employment practice involved subjecting Fagbemi to retaliation by terminating his employment.

203.   Similarly-situated non-Black employees were not subjected to a hostile work environment and received more favorable treatment in the terms and conditions of their employment with the Department due to their race.

204.   The Department was aware of Fagbemi's complaints, but failed to take any corrective action to remedy or prevent the discrimination.

## COUNT I
### (As Individual Defendants)
### HOSTILE WORK ENVIRONMENT UNDER SECTION 1983

205.   Paragraphs 1 through 204 above are incorporated herein by reference.

206.   The Fourteenth Amendment to the United States Constitution protects persons from being subjected to hostile work environments by persons acting under color of state law, based on race.

207.   The individual Defendants under color of state law intentionally set forth written or unwritten policies and/or practices that create, sustain, and proliferate a hostile and abusive work environment based on race.

208. This hostile and abusive work environment is perpetuated, sustained, and created by deliberate acts allowed and encouraged by the individual Defendants under color of state law.

209. This hostile and abusive work environment is widespread throughout the Department, is permanent and well-settled to constitute a custom or usage with the force of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Race Class respectfully request that this Court grant the following relief:

a. Certification of the Race Class;

b. Enter a judgment that Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

c. Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendant's discriminatory practices and prevent current and future harm to Plaintiffs and the Race Class;

d. Award Plaintiffs and the Race Class lost wages, including back pay, front pay, and lost benefits, and including, without limitation, any lost benefits that would otherwise have been available to the Plaintiffs and Race Class without the discrimination;

e. Award Plaintiffs and the Race Class compensatory and punitive damages;

f. Award reinstatement to those Plaintiffs and Race Class members who prove discriminatory discharge;

g. Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h.  Grant Plaintiffs and the Race Class such other and further relief as this Court finds necessary and proper.

**COUNT II**
**(As to City of Chicago)**
**MUNICIPAL LIABILITY UNDER SECTION 1983**

210.  Paragraphs 1 through 209 above are incorporated herein by reference.

211.  The City of Chicago has a duty and obligation to properly train, supervise, and discipline their Commissioners and Department supervisors to prevent them from violating the civil rights of others through the power and authority they have under the color of State law.

212.  The City of Chicago has failed to properly train, supervise, and discipline their Commissioners, which has therefore given them the comfort and sense that they can violate the civil rights of others and not be disciplined.

213.  This lack of training, supervision, and discipline fosters a climate in the ranks of the Department that if an individual's rights are violated, they do not have to report it, can look the other way, and maintain a code of silence.

214.  This comfort along with the persistent and defiant code of silence motivates and bolsters the open and notorious, hostile and abusive work environment based on race and sex created and proliferated in the Department.

215.  As a result of the customs, policies, and practices of the City of Chicago, including the failure to properly train and supervise, Defendants have ignored the civil rights of Plaintiffs and the Race Class they represent.

216.  As a result of the customs, policies, and practices of the City of Chicago, the unlawful discrimination committed against Plaintiffs and the Race Class they represent went un-investigated and un-disciplined.

217.   Consequently, the rights of Plaintiffs and the Race Class they represent were violated in a long-standing climate of abuse and harassment by the individual Defendants under color of law.

218.   As a result of the City of Chicago's discriminatory actions and inactions, Plaintiffs and the Class they represent suffered lost wages and benefits, fear, insult, pain, suffering, emotional distress, physical distress, humiliation, anxiety, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Race Class respectfully request that this Court grant the following relief:

a.   Certification of the Race Class;

b.   Enter a judgment that Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

c.   Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendant's discriminatory practices and prevent current and future harm to Plaintiffs and the Race Class;

d.   Award Plaintiffs and the Class lost wages, including back pay, front pay, and lost benefits, and including, without limitation, any lost benefits that would otherwise have been available to the Plaintiffs and Race Class without the discrimination;

e.   Award Plaintiffs and the Race Class compensatory and punitive damages;

f.   Award reinstatement to those Plaintiffs and Race Class members who prove discriminatory discharge;

g.   Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h.  Grant Plaintiffs and the Race Class such other and further relief as this Court finds necessary and proper.

**COUNT III**
**(As to Individual Defendants)**
**HOSTILE WORK ENVIRONMENT UNDER SECTION 1981**

219.  Paragraphs 1 through 218 above are incorporated herein by reference.

220.  Plaintiffs and the Race Class they represent were subjected to harassment by the individual Defendants and that harassment was motivated by race.

221.  This harassment was not welcomed by the Plaintiffs and the Race Class they represent.

222.  The conduct was so severe and pervasive that a reasonable person placed into the position of a Black employee in the Department would find the work environment to be hostile and abusive.

223.  This hostile and abusive work environment is perpetuated, sustained, and created by deliberate acts allowed and encouraged by the individual Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Race Class respectfully request that this Court grant the following relief:

a.  Certification of the Race Class;

b.  Enter a judgment that Defendant's acts and practices as set forth herein are in violation of the laws of the United States;

c.  Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Defendant's discriminatory practices and prevent current and future harm to Plaintiffs and the Race Class;

d.   Award Plaintiffs and the Class lost wages, including back pay, front pay, and lost benefits, and including, without limitation, any lost benefits that would otherwise have been available to the Plaintiffs and Race Class without the discrimination;

e.   Award Plaintiffs and the Race Class compensatory and punitive damages;

f.   Award reinstatement to those Plaintiffs and Race Class members who prove discriminatory discharge;

g.   Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

h.   Grant Plaintiffs and the Race Class such other and further relief as this Court finds necessary and proper.

**COUNT IV**
**(City of Chicago)**
**FAIR LABOR AND STANDARDS ACT**

224.   Paragraphs 1 through 223 above are incorporated herein by reference.

225.   This Count arises from the City of Chicago's violation of the FLSA for its failure to pay Plaintiffs and the Wage Class for work done at a senior job classification and/or in addition to their own work within the same classification.

226.   Plaintiffs and the Wage Class were directed to work at a level senior to their job classification, and Plaintiffs and the Wage Class did the work.

227.   Plaintiffs and the Wage Class were entitled to be paid at a level commensurate with the job classification under which the work was performed.

228.   Defendant did not pay Plaintiffs and the Wage Class for wages for time worked at a level commensurate to the classification under which the work was performed.

229.   Defendant's violation of the FLSA was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Wage Class respectfully request that this Court grant the following relief:

a.     Certification of the Wage Class pursuant to Section 216(b) of the FLSA;

b.     A judgment in the amount of all unpaid wages owed to Plaintiffs and the Wage Class;

c.     Liquidated damages in the amount equal to the unpaid wages;

d.     Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

e.     Grant Plaintiffs and the Wage Class such other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues of facts and damages in this action.

**DATED:**      June 29, 2017

Respectfully Submitted,

/s/ William C. Martin
Attorney for Plaintiffs

William C. Martin
Rebecca R. Kaiser
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Telephone: (312) 262-2900
Facsimile:  (312) 262-2901