**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK EDMOND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 17-cv-4858 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Sheila Finnegan |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BARRETT MURPHY'S MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Individual Defendant Barrett Murphy ("Murphy"), by his undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that this Court dismiss the claims against him in Plaintiffs' Second Amended Complaint ("Complaint") with prejudice for failure to state a claim.

**INTRODUCTION**

Faced with Murphy's meritorious motion to dismiss the First Amended Complaint (Doc. 65), Plaintiffs filed a Second Amended Complaint that once again fails to make any plausible factual allegations against Murphy. Plaintiffs' Complaint suffers from the same fatal deficiencies as the prior complaints; it is replete with conclusory allegations unsupported by any facts about what Murphy is alleged to have done to the Plaintiffs. Accordingly, Plaintiffs' Second Amended Complaint fails to state a claim against Murphy and Counts I-V against him should be dismissed with prejudice under Rule 12(b)(6).

The claims under 42 U.S.C. § 1981 (Counts II and IV) must be dismissed because Plaintiffs can only bring claims against state actors under 42 U.S.C. § 1983. The § 1983 claims brought against Murphy in his official capacity (Counts I and III) are duplicative of the claims

1

against the City of Chicago ("City") and therefore must be dismissed. The § 1983 claim brought against Murphy in his individual capacity (Count V) must be dismissed because Plaintiffs have failed to allege that Murphy acted outside the scope of his authority at the Water Department.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Seven individual plaintiffs, all current or former employees of the City of Chicago Department of Water Management ("Water Department"), filed their original complaint on June 29, 2017 against the City and several Water Department employees, including Murphy, a former Commissioner of the Water Department. Doc. 1. Plaintiffs filed an Amended Complaint on November 21, 2017, adding an additional Defendant, removing two Plaintiffs, and adding one Plaintiff. Doc. 32. After every Defendant filed a motion to dismiss Plaintiffs' claims for failure to state a claim, Plaintiffs filed a third version of their complaint. Doc. 87. The Second Amended Complaint, which is the subject of this renewed motion to dismiss, added three new Plaintiffs, removed one Defendant, and simply reshuffled the same legally deficient claims while adding a few conclusory anecdotes in an attempt to plead with the required specificity.

Of the seven counts in the Complaint, five counts are brought against Murphy, the first four in his official capacity. Count I alleges a hostile work environment based on race in violation of § 1983, Count II alleges a hostile work environment based on race in violation of "§ 1981 via § 1983," Count III alleges race discrimination in violation of § 1983, Count IV alleges race discrimination in violation of "§ 1981 via § 1983," and Count V alleges race discrimination against Murphy "in the alternative" in his individual capacity. Complaint at ¶¶ 210-243.

Plaintiffs' race discrimination claims are based on several alleged adverse employment actions taken against Plaintiffs because of their race, including a failure to promote, denial of overtime, denial of acting up pay, denial of desired shifts and work locations, and undue

discipline. *Id.* at ¶¶ 99, 101, 115, 124, 131. Plaintiffs do not allege that Murphy was personally involved in or approved of any of these actions. This is fatal to their claims against him.

Plaintiffs' hostile work environment claims are based on offensive emails allegedly sent primarily by former Water Department employee Paul Hansen, who is not a defendant despite his central role in the allegations. Complaint at ¶¶ 80-87. Plaintiffs allege that two of these emails were received by Murphy, one in 2013 and one in 2015, and one of those emails was forwarded. *Id.* at ¶ 87. Plaintiffs also allege that a noose was hung in a Water Department truck, although they do not allege Murphy was involved in, or even knew about, that incident. Plaintiffs further allege that they were called racially derogatory names but, once again, there is no allegation that Murphy was involved in, or even knew about, that conduct either. *Id.* at ¶¶ 89-90.

Plaintiffs' latest complaint includes a grand total of four new paragraphs of allegations purporting to describe Murphy's alleged unlawful conduct. Specifically, Plaintiffs allege that Murphy's wife works for Mayor Rahm Emanuel and he "believed himself to therefore be immune from criticism or repercussions." *Id.* at ¶ 38. Plaintiffs also allege that Murphy attended a meeting with Defendant Bresnahan – the Complaint does not say when, nor does it allege that any of the Plaintiffs were present – where the two allegedly "talked about" the n-word. *Id.* at ¶ 68. Plaintiffs allege that Murphy "had a habit of excluding African-American employees from meetings" and refused to shake hands with African-American employees, although they do not allege that this happened to any of the Plaintiffs, and that Murphy "refused to help" an unidentified African-American employee who wanted to change her work schedule to start an hour earlier, although there is no allegation that this employee is a Plaintiff. *Id.* at ¶¶ 70, 116. None of these allegations are sufficient to state any plausible claim for relief against Murphy.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must, first, "describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests" and, second, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). If the complaint cannot meet this standard, "the plaintiff pleads itself out of court." *Id*. Although the court must accept as true all of the complaint's well-pleaded allegations, this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

**ARGUMENT**

**I.      Plaintiffs cannot bring claims under 42 U.S.C. § 1981 against a state actor.**

Counts II and IV of the Complaint are brought under 42 U.S.C. § 1981 "via § 1983," alleging hostile work environment and race discrimination in Murphy's official capacity, respectively. Complaint at ¶¶ 217, 232. Section 1981 does not create a private right of action against state actors. *Campbell v. Forest Preserve Dist. of Cook County*, 752 F.3d 665, 671 (7th Cir. 2014). Instead, 42 U.S.C. § 1983 "remains the exclusive remedy for violations of § 1981 committed by state actors." *Id*. (affirming dismissal of § 1981 claim against a public employer for failure to state a claim); *Ali v. Village of Tinley Park*, 79 F. Supp. 3d 772, 774 (N.D. Ill. 2015) (dismissing with prejudice § 1981 claims against a municipality and municipal employees because § 1983 "provides the exclusive remedy" for claims against state actors).

Plaintiffs themselves allege that Murphy is a state actor. Complaint at ¶ 44 ("The Individual Defendants are or were at relevant times employees of the City of Chicago and acted or purported to act under color of law."). Although they amended these counts to be brought

under section 1981 "via 1983," this change makes no difference. Section 1983 is the single available remedy for § 1981 claims against state actors. Therefore, Plaintiffs' § 1981 claims against Murphy in Counts II and IV must be dismissed with prejudice.

## II. Plaintiffs' § 1983 claims against Murphy in his official capacity must be dismissed as duplicative.

Counts I and III of the Complaint are brought against Murphy in his official capacity under § 1983, alleging hostile work environment and race discrimination, respectively. Section 1983 claims against a government official in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent" and "should be treated as suits against" the government entity itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Claims against Murphy in his official capacity are claims against the City of Chicago and should be dismissed as duplicative. *Mixon v. Manno*, 2013 WL 1278481, at *3 (N.D. Ill. Mar. 28, 2013) (dismissing as "redundant" an official capacity § 1983 claim against a Chicago Board of Education employee when the plaintiff also brought his § 1983 claim against the Board of Education itself); *Alicea v. City of Chicago*, 2002 WL 1021553, at *4 (N.D. Ill. May 20, 2002) (holding that "because [the plaintiff] already names the City as a defendant, the claims against [a City employee] in his official capacity are dismissed as duplicative"); *Morton v. Dart*, 2017 WL 4785925, at *6 (N.D. Ill. Oct. 23, 2017) (holding that, "[s]ince Cook County will be joined as a defendant, the official capacity claims against [a Cook County employee] are duplicative"). Counts I and III against Murphy must be dismissed as redundant.

## III. Plaintiffs fail to state a plausible 42 U.S.C. § 1983 claim against Murphy for discrimination.

Count III of the Complaint alleges race discrimination in violation of § 1983. Even if this claim is not dismissed as redundant, it must be dismissed for failure to state a claim against Murphy. To state a claim for race discrimination under § 1983, Plaintiffs must allege that they

were "(1) a member of a protected class; (2) performing [their] job[s] satisfactorily; (3) the employer took an adverse employment action against [them]; and (4) the employer treated at least one similarly situated individual outside of [their] protected class more favorably." *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). Plaintiffs failed to meet this standard for two reasons. First, they allege no personal liability of Murphy. Second, many of the actions alleged do not qualify as adverse employment actions. The Complaint fails to state a claim for race discrimination.

### A.    Plaintiffs do not allege any actions taken by Murphy.

Inherent in any discrimination claim is the requirement that a plaintiff show that each individual defendant was personally involved in the discrimination. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998); *Harrison v. Ill. Dep't of Transp.*, 2011 WL 2470626, at *6 (N.D. Ill. June 21, 2011) ("Liability under § 1981 and § 1983 depends upon individual fault."). In the case of a discrimination claim against a supervisor, in order to be personally liable, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Plaintiffs may not "lump[] each of the individual Defendants together without regard to their respective roles" in the alleged discrimination. *Harrison*, 2011 WL 2470626 at *6. In *Harrison*, the plaintiff brought a race discrimination claim against the Illinois Department of Transportation and several employees, alleging that he was involuntarily transferred to a less

desirable position because of his race. *Id*. at *2. The complaint stated only that the several individual defendants "were all directly involved" in the decision to transfer the plaintiff. *Id*. The court ruled that this "blanket allegation" did "little to elucidate key facts" and was merely a "naked assertion" that "contravenes the rule that liability under…§ 1983 is premised upon individualized fault." *Id.* at *6. The court dismissed the complaint for failure to state a claim. *Id*.

In this case, Plaintiffs similarly allege several adverse employment actions taken collectively by the "Defendants." Complaint at ¶ 78 ("The Individual Defendants, Deputy Commissioners, and the superintendents engaged in discriminatory acts against Plaintiffs…"), ¶ 104 ("Defendants refused and refuse to promote, or delay promoting…"), ¶ 127 ("Defendants maintain practices of disciplining African American employees in a manner different from and more harshly than Caucasian employees."), ¶ 152 ("Defendants promoted less qualified Caucasian applicants despite Edmond's superior qualifications."), ¶ 172 ("Defendants used disciplinary proceedings to force Hill to retire…"). Plaintiffs do not make a single specific allegation of any discriminatory action taken or approved of by Murphy against any of them. The full list of all actions allegedly taken by Murphy are: he received and forwarded emails, he used an offensive term that no Plaintiff is alleged to have heard, he excluded African-Americans – but not Plaintiffs – from meetings and refused to shake their hands, and he would not allow an African-American employee – who is not alleged to be a Plaintiff – to change her work schedule. *Id*. at ¶¶ 87, 68, 70, 116.

Plaintiffs do not allege that they ever received or saw the emails. Plaintiffs do not allege that they heard Murphy use any offensive term on any occasion. Plaintiffs do not allege that *they* were excluded from meetings, that Murphy would not shake *their* hand, or that any of *them* were refused a change in work schedule by Murphy. Not once do any of the Plaintiffs allege that

Murphy denied them promotions or that Murphy failed to promote them or that Murphy himself took any of the other adverse actions alleged in the Complaint. Nor does the Complaint ever allege that Murphy personally knew about, facilitated, approved of or condoned any of the alleged adverse actions.

Plaintiffs themselves show how problematic their undifferentiated claims are. For example, Plaintiffs allege generally that the Individual Defendants "moved the locations where an African-American employee had parked for nearly a decade." *Id*. at ¶ 72. Later in the Complaint, we learn that this allegation involves Plaintiff Donald Anderson, whom Plaintiffs concede had his parking spot reassigned by Andy Anderson and Chris Williams, neither of whom is a defendant in this case. *Id*. at ¶ 191. Plaintiffs never allege that Murphy was involved in, or even knew about, the alleged parking spot reassignment.

Murphy cannot be held personally liable simply because bad things allegedly happened to certain African-American employees in the City's Water Department. Murphy can only be held liable for specific actions that he took against specific Plaintiffs. Plaintiffs cannot "lump each of the individual Defendants together without regard to their respective roles" in the alleged discrimination. *Harrison*, 2011 WL 2470626 at *6. Plaintiffs have failed to allege any facts on which to base their claim that Murphy discriminated against them.

**B.      Many of Plaintiffs' allegations are not materially adverse employment actions.**

Even if Plaintiffs alleged an adverse employment action specifically taken or condoned by Murphy, which they do not, many of the actions allegedly taken by "Defendants" simply do not qualify as materially adverse employment actions.

To state a claim for discrimination, Plaintiffs must allege that they experienced an adverse employment action. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012).

8

"An adverse employment action must materially alter the terms and conditions of employment. A materially adverse employment action is more than a mere inconvenience or an alteration of job responsibilities…not everything that makes an employee unhappy is an actionable adverse action." *Id*. The Seventh Circuit recognizes three types of adverse employment actions: "(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects" and (3) cases where the "conditions in which [an employee] works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *Id*.

Among other actions, Plaintiffs allege that they were denied days off (¶ 163), that they were denied "desired work locations" (¶ 160), given "undesirable work assignments, shifts, and days off" (¶ 163, 174), were "required to travel to different locations throughout the City" and "not given a City vehicle," (¶ 170), and were denied shifts closer to their homes (¶ 115). These are not adverse employment actions. *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (a "change in shift…certainly does not rise to the level of an adverse employment action"); *Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004) (change in shift and change in work location that lengthened commute not an adverse employment action); *Porter v. City of Chicago*, 700 F.3d 944, 954-55 (7th Cir. 2012) ("placement in the Friday/Saturday days-off group" is not an adverse employment action). These actions did not impact Plaintiffs' compensation or benefits, they did not significantly reduce Plaintiffs' career prospects by preventing them from using their skills and experience, and they did not subject Plaintiffs to humiliating or unsafe

9

environments. These sorts of changes in work schedule and location are not adverse employment actions, and they cannot serve as the basis for a discrimination claim.

## IV. Plaintiffs fail to state a plausible 42 U.S.C. § 1983 claim against Murphy for hostile work environment.

Count I of the Complaint alleges a hostile work environment based on race in violation of § 1983. Even if this claim is not dismissed as redundant, it must be dismissed for failure to state a claim against Murphy. To state a claim for hostile work environment, Plaintiffs must allege that: "(1) [they were] subject to unwelcome harassment; (2) the harassment was based on [their] race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability."[1] *Cole v. Bd. of Trustees*, 838 F.3d 888, 898 (7th Cir. 2016). The harassment must be considered severe and pervasive both from an objective and a subjective point of view. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (plaintiff must show that "the work environment was both objectively and subjectively offensive"). That is, the environment must be one that a reasonable person would find hostile and it must also be an environment that the Plaintiffs actually perceived to be hostile. *Smith v. Northeastern Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) ("In other words, the environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."). Plaintiffs' allegations fail to allege the necessary elements in three ways: (1) the conduct alleged is not objectively severe and pervasive; (2) the Complaint makes no allegation that Plaintiffs knew about Murphy's alleged conduct when it happened, and therefore the subjective requirement is not met; and (3) there is no basis for employer liability against Murphy.

---

[1] Hostile work environment claims under § 1981 and § 1983 apply the same framework as hostile work environment claims under Title VII. *Hallmon v. Sch. Dist. 89*, 911 F. Supp. 2d 690, 699 (N.D. Ill. 2012) ("employment-related race discrimination claims under §§ 1981 and 1983 are analyzed under the framework governing Title VII claims").

### A.    Murphy's alleged conduct  is not objectively severe and pervasive.

Plaintiffs have failed to allege that Murphy personally harassed them, let alone that the harassment was objectively severe and pervasive. "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss*, 816 F.3d at 920. Harassment is more than offensive comments. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) ("the mere utterance of an...epithet which engenders offensive feelings in an employee" is not enough to establish a hostile work environment).

The harassment must also have been directed at the Plaintiffs. *Smith*, 388 F.3d at 567 ("There is no hostile work environment where as here, the harassment about which [Plaintiff] complains was not directed at her."); *Russell v. Bd. of Trustees*, 243 F.3d 336, 343 (7th Cir. 2001) ("When harassing statements are directed at someone other than the plaintiff, the impact of such 'second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.") (affirming grant of summary judgment in favor of employer).

In *Pierce v. Illinois Department of Human Services*, the Seventh Circuit held that a plaintiff had not shown a hostile work environment when he alleged that coworkers told racist jokes, said that all black people look alike, called him the n-word, and "flashed a Ku Klux Klan sign" at him. 355 Fed. App'x 28 (7th Cir. 2009). The court reasoned that these actions were not sufficiently severe and pervasive and affirmed the dismissal of the claims. *Id*. In *Smith*, the Seventh Circuit held that an African-American plaintiff's claim based on hearing racial epithets directed at others was insufficient to show a hostile work environment. 388 F.3d at 567.

Plaintiffs' hostile work environment claim against Murphy rests on allegations that draw no connection between Murphy and any of the Plaintiffs. Plaintiffs allege that Murphy used an

11

offensive name in a meeting with Defendant Bresnahan, although they do not allege that any Plaintiff heard it said, that Murphy excluded African-Americans from meetings, although not that he excluded Plaintiffs, and that Murphy declined to change the work schedule of an African-American employee, although they do not allege that this employee is a party to this action. Complaint at ¶¶ 68, 70, 116. Plaintiffs also allege that a noose was hung in a Water Department vehicle and that Plaintiffs were called derogatory names, but there is no allegation connecting either claim to Murphy. *Id.* at ¶ 89. As discussed above, "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998); *Harrison v. Ill. Dep't of Transp.*, 2011 WL 2470626, at *6 (N.D. Ill. June 21, 2011) ("Liability under § 1981 and § 1983 depends upon individual fault."). The only remaining allegations against Murphy involve two emails.

The first email identified in the complaint was written by Paul Hansen to Murphy in February 2013. Complaint at ¶ 87. Murphy allegedly forwarded that email to an unidentified employee. *Id.* The second email was written by Murphy in August 2015, describing an equation for calculating the circumference of a circle. *Id.* There is no allegation that Murphy wrote anything else, but Hansen responded to this email with offensive comments. *Id.* These emails, the only ones described in the Complaint that relate to Murphy, are not objectively severe and pervasive harassment by Murphy. First, there is no allegation in the Complaint that Murphy wrote any offensive comments himself. Forwarding an email is not severe conduct, and receiving an email is not conduct at all. Nor are these allegations frequent. Plaintiffs claim that Murphy received and forwarded one email and that, more than two years later, he was the recipient of another. It could hardly be said that two emails in more than two years is frequent conduct. These are the kinds of isolated incidents that were found not to create a hostile work environment

in *Pierce*. According to Plaintiffs' recounting of the content of the emails, they were not physically threatening to any of the Plaintiffs, only a "mere offensive utterance." *Boss*, 816 F.3d at 920. And, like the comments in *Smith*, the emails were not directed to Plaintiffs at all. 388 F.3d at 567. Plaintiffs do not allege that Murphy or anyone else ever sent any of these emails to any of them. In neither of these emails did Murphy write anything offensive. This is not objectively severe and pervasive conduct. Plaintiffs failed to state a claim for hostile work environment against Murphy.

**B.    Plaintiffs do not allege that they knew about the emails.**

Plaintiffs must allege that the harassment was both objectively and subjectively severe and pervasive. *Boss*, 816 F.3d at 920. It is impossible for Plaintiffs to meet the requirement of subjectively severe and pervasive conduct when they do not allege they knew about the emails.

Plaintiffs allege that Murphy forwarded an email in 2013 and received an email in 2015, but they do not allege that the emails were sent to them by Murphy or by anyone else or that they ever saw the emails at all. Based on the Complaint, Plaintiffs did not learn about the emails until they were published in the newspaper in 2017. Complaint at ¶ 87. To allege a hostile work environment, Plaintiffs must allege conduct they personally perceived to be severe and pervasive. It is impossible they could perceive emails they never saw to be severe and pervasive.

**C.    There is no basis for employer liability against Murphy.**

To state a claim for a hostile work environment, Plaintiffs must allege some basis for employer liability: either harassment by a supervisor or harassment by a coworker. Depending upon who is alleged to have harassed Plaintiffs, the analysis of employer liability differs. *Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1029 (7th Cir. 2004) ("[W]e evaluate the fourth prong regarding the basis for employer liability differently depending on whether the

13

alleged harassment was perpetrated by supervisors or coworkers."). If a supervisor harassed the plaintiff, the employer may be liable if it resulted in a tangible employment action. *Id*. If a coworker harassed the plaintiff, the employer may be liable if the employer was "negligent either in discovering or remedying the harassment." *Id*. Plaintiffs never allege whether any of the conduct complained of was committed by a supervisor or a coworker, and so they have not alleged a basis for employer liability.

Plaintiffs allege that they were "subjected to racist images, such as a hangman's noose in restrooms and Water Department vehicles." Complaint at ¶ 89. They do not allege who hung the noose, when, or whether any steps were taken to remedy the situation. Plaintiffs also allege that they were called offensive names (¶¶ 155, 177) – although they do not allege that it was by Murphy or that Murphy knew it happened – and that Murphy used an offensive term to Bresnahan, although they do not allege that any Plaintiff heard it. *Id*. at ¶ 68.

The Complaint contains absolutely no allegation that Murphy, as a supervisor, participated in hanging a noose or in calling the Plaintiffs names. There is no basis for liability based on direct harassment by Murphy as a supervisor. Nor is there any allegation that Murphy was negligent in remedying harassment by others. Plaintiffs do not allege that they reported any of the incidents that happened to them or that Murphy ever knew about them. There is no basis for liability against Murphy based on negligence in remedying harassment by coworkers. Because they have alleged no basis at all for employer liability against Murphy, Plaintiffs have failed to state a claim for hostile work environment.

**V.    The 42 U.S.C. § 1981 claim against Murphy in his individual capacity must be dismissed because there are no allegations that Murphy acted in his individual capacity.**

Count V alleges race discrimination in violation of § 1981 "in the Alternative" and "to the extent [the Individual Defendants] acted outside the scope of their authority." ¶¶ 239-241.

But the Complaint contains no allegation that Murphy acted outside the scope of his authority. Indeed, Plaintiffs allege that all the actions in the Complaint were taken by Murphy in his capacity as Commissioner. *Id.* at ¶ 37 ("Each act or omission alleged herein was done under color of authority and color of law vested in the City of Chicago as a municipal corporation with in the State of Illinois."). Count V must be dismissed for failure to state a claim.

## VI.     Any amendment would be futile.

All three versions of the complaint have contained the same central allegations, with each successive version tinkering only around the edges as to Murphy. Plaintiffs have plainly alleged everything they could allege as to Murphy, and any further amendment would be futile.

## CONCLUSION

Defendant Barrett Murphy requests that this Court dismiss with prejudice Counts I-V of the Amended Complaint under Rule 12(b)(6) for failure to state a claim. A complaint must put a defendant on notice of the claims against him. Despite having multiple opportunities to amend, the Second Amended Complaint still lacks specific allegations against Murphy sufficient to hold him personally liable. Instead, Plaintiffs continue to lump together the individual Defendants without specifying who is alleged to have done what to which Plaintiff. The Complaint contains only the barest conclusory allegations, entirely unsupported by facts, and should be dismissed.

Dated: April 20, 2018

Respectfully submitted,
BARRETT MURPHY

By:     */s/ Vincent J. Connelly*
Vincent J. Connelly
Sara Norval
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
*Attorneys for Barrett Murphy*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, hereby certifies that, on the 20th day of April 2018, she caused to be filed, via the Court's electronic CM/ECF filing system, the foregoing **Motion to Dismiss the Second Amended Complaint for Failure to State a Claim**. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/      Sara Norval*