IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK EDMOND, KATHERINE EALY, EDDIE COOPER, JR., VICKI HILL, ROBERT T. LAWS, JR., ANTON GLENN, VERONICA SMITH DONALD ANDERSON, and DAVID HENRY, individually and on behalf of others similarly situated, <br><br>Plaintiffs, <br><br>v. <br><br>The CITY OF CHICAGO; BARRETT MURPHY, former Commissioner of the Department of Water Management; WILLIAM BRESNAHAN, former Managing Deputy Commissioner of the Department of Water Management; JOHN POPE, Deputy Commissioner of the Department of Water Management ALAN STARK, Deputy Commissioner of the Department of Water Management; and JOSEPH LYNCH, Chief Operating Engineer of the Department of Water Management, <br><br>Defendants. | Case No. 17 CV 4858 |

### DEFENDANT BRESNAHAN'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COMES the Defendant, WILLIAM BRESNAHAN, by and through his attorneys and pursuant to Fed. R. Civ. P. 12(b)(6) moves to dismiss Counts I through V of Plaintiffs' Second Amended Complaint. In support of dismissal, Defendant Bresnahan argues:

Plaintiffs' Second Amended Complaint has now ballooned from 35 pages and 165 paragraphs to 61 pages and 252 paragraphs. Instead of remedying the deficiencies, it only serves to further highlight the flaws and demonstrate the inability to bring such a wide-ranging class action lawsuit. The attempted use of the class action system is particularly flawed with respect to individual defendants. Counts I through V all are made under §1981 and/or § 1983, appear to include class action allegations, and all include individual defendants. Yet Plaintiffs fail to account for and include

1

sufficient allegations that would satisfy the personal involvement requirements of those statutes. Bresnahan moves to dismiss on grounds of failure to sufficiently allege personal involvement. Bresnahan also moves to strike any class allegations made against him. In the alternative, should the Court deny the motion to dismiss and strike on these grounds, Bresnahan moves to dismiss the §1981 claims and the suit brought in his official capacity as being duplicative. Lastly, Bresnahan joins and adopts the City and any other individual defendant's motion to dismiss or strike to the extent those arguments are also applicable to Bresnahan.

I.   *Relevant Procedural History*

In June of 2017, Plaintiffs filed an initial complaint naming the City and various individual defendants containing the following counts: (1) Hostile Work Environment on the basis of race under § 1983 (Against Individual Defendants); (2) Municipal Liability under § 1983 (Against City of Chicago); (3) Hostile Work Environment on the basis of race under § 1981 (Against Individual Defendants); and (4) Fair Labor Standards Act (Against City of Chicago). See Dkt. No. 1. Bresnahan was not named in the initial complaint. Subsequent to the City and the then named individual defendant's filing of a motion to dismiss and strike but prior to the Court ruling on the motion, the Plaintiffs requested and were granted leave to file an amended complaint. See Dkt. Nos. 19-31.

Plaintiffs then filed an amended complaint which contained the following counts and named Bresnahan for the first time: (1) Hostile Work Environment on the basis of race under § 1983 (Against All Defendants); (2) Hostile Work Environment on the basis of race under § 1981 (Against All Defendants); (3) Race Discrimination under § 1983 (Against All Defendants); (4) Race Discrimination under §1981 (Against All Defendants); (5) Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq.* (Against the City); and (6) Indemnification pursuant to 745 ILCS 10/2-302 (Against the City). See Dkt. No. 32.

Faced again with formidable motions to dismiss by all Defendants, Plaintiffs again moved for leave to amend the complaint. See Dkt. Nos. 76. The Court granted them leave. See Dkt. No. 86. But this time the Plaintiffs were specifically warned that this would only be unopposed by defendants with the agreement that this would be the last amendment prior to consideration of a dispositive motion. See Dkt. No. 86. The second amended complaint adds three additional named Plaintiffs and subtracts two individual defendants. The counts now contained in the second amended complaint are (1) Hostile Work Environment – Equal Protection Clause and Due Process Clause via § 1983 – against City and other Defendants in their official capacities; (2) Hostile Work Environment - § 1981 "via" § 1983 (based on race) – against the City and other Defendants in their official capacities; (3) Discrimination – Equal Protection Clause and Due Process Clause via § 1983 – against City of Chicago and the other Defendants in their official capacities; (4) Discrimination – § 1981 via 1983 – against City of Chicago and the other Defendants in their official capacities; (5) Discrimination - § 1981 (against Individual Defendants in the alternative); (6) Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq.* (against City of Chicago); (7) Indemnification – 745 ILCS 10/2-302 (against City of Chicago). See Dkt. No. 87.

II.     *Standard for Dismissal*

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. City of Boone, Ill., 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2007); See also Fed. R. Civ. P. 8(a). But, the complaint must also allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (7th Cir. 2009)(*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).) A complaint "requires more than labels and conclusions and a formulaic recitation

3

of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

  III.  *Lack of Personal Involvement of Bresnahan*

Liability under §1981 and §1983 depends upon individual fault. Jenkins v. Keating, 147 F.3d 577, 583 (7th Cir. 1998). To be liable under racial discrimination under §1981 and 1983, an individual defendant must have personally "caused or participated in" the allegedly discriminatory action. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). This concept applies with equal force to all §1981 and §1983 actions – including employment actions. See Id.; McPhaul v. Board of Com'rs of Madison County, 226 F.3d 558, 566 (7th Cir. 2000)(holding that there must be a showing that the supervisor was directly responsible for the improper conduct in a case brought by a former county employee alleging racial discrimination under §1983); Togba v. County of Cook, 48 F. Supp.2d 1104, 1112 (N.D. Ill. 1999)(dismissing §1981 claim where plaintiff's allegations showed only that defendant was "the individual in the [employer's] hierarchy responsible for communicating personnel decisions to [the plaintiff]".) As with municipalities, an individual cannot be personally liable under a theory of respondeat superior. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995); Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

  A. *Allegations in Relation to Bresnahan*

By Plaintiffs own allegations, the City's Water Department is a massive department that consists of "approximately 2,104 employees and has an annual operating budget of $900,000,000" and serves "Chicago and 126 suburban communities." See Dkt. No. 87, ¶ 46-47. The second amended

complaint goes on to further add that the employees in the City's Water Department are members of eight separate collective bargaining agreements. See Dkt. No. 87, ¶57. Taking together the size of the Water Department, the strictures of Twombly and Iqbal, and the requirements of personal involvement to make out a §1981 or 1983 claim against an individual defendant, the law mandates that particular care be taken to specify what role Bresnahan played so as to sufficiently make out a claim sufficient to survive the Rule 12(b)(6) hurdle. Plaintiffs fail to do this.

In the amended complaint, which was the first time Bresnahan was named as a defendant, Bresnahan was only specifically: (a) named in the caption; (b) identified as a managing deputy commissioner within the pleading; and (c) identified as an individual that received racist emails from former Water Department employee Hansen. See Dkt. No. 32, ¶ 19-22, 35-37. The remainder of the allegations in the amended complaint were against all "Defendants" as a lumped together category with no distinction between them. See Dkt. No. 32, ¶ 31-33, 91, 105, 111, 115, 120. Plaintiffs' second amended complaint, has added some additional specific allegations referencing Bresnahan, but still has failed to allege sufficient personal involvement. Further, although the additional allegations identify Bresnahan by name, they are still vastly conclusory and fail to adequately explain the structure of the vast Water Department and Bresnahan's role within it. Plaintiffs cannot simply make blanket and conclusory allegations and call it a day. See Harrison v. Ill. Dept. of Transp., 2011 WL 2470626 at *2, *6 (N.D. Ill. 06/21/2011)(Aspen, J.)(holding complaint must go beyond "naked assertions" to meet the requirements of Twombly and Iqbal). Yet, that is exactly what they have done here.

Plaintiffs unintentionally demonstrate Bresnahan's lack of personal involvement by their selection of the Plaintiffs as class representatives. When filing a 12(b)(6) motion, a defendant like Bresnahan is required to accept all facts as true. Bressner v. Ambroziak, 379 F.3d 478, 480 (7th Cir. 2004). Amongst the class representatives, Bresnahan is only mentioned specifically by name with

respect to one Plaintiff – Donald Anderson. And there his only involvement is participating in an interview of Anderson with Hansen. See Dkt. No. 87, ¶ 189. The additional allegations added against Bresnahan in the second amended complaint are: (1) that he attended a meeting at Sawyer Plant with Murphy, where the two allegedly "talked about 'n******'"; (2) that he used a racial slur and made crude remarks about African-Americans at a meeting; (3) that Bresnahan and Murphy excluded African-Americans from meetings and refused to shake hands with African-Americans or look at them when speaking to them; (4) that Bresnahan denied African-American employees offices; (5) that Bresnahan traded racially derogatory messages with former colleagues in the police department and joked about it in front of other Water Department employees; (6) that he deliberately overlooked highly qualified African-American employees for promotion and designed job descriptions for Caucasians; (7) that he assigned an African-American employee an unfavorable job location and altered her work schedule; and (8) that he ignored complaints of not receiving overtime, shift and location scheduling, and promotions from African-Americans. See Dkt. No. 87, ¶s 68, 69, 70, 71, 84, 111, 116, 134.

The remainder of the allegations are against all the "Defendants" as a lumped together category with no distinction between them. See Dkt. No. 87, ¶ 67 ("Racial discrimination toward African American employees of the Water Department is fostered, sanctioned, implemented, and endorsed by the Individual Defendants."); ¶ 76 ("…creating a hostile and abusive work environment that was and is perpetuated, sustained, and created by deliberate acts allowed, sanctioned and encouraged by Defendants."); ¶ 78 ("Defendants engaged in discriminatory acts…"); ¶ 152 ("Defendants promoted less qualified Caucasian applicants despite Edmond's superior qualifications."); ¶ 166 ("Cooper was treated differently because of his race, and Defendants, tolerated, encouraged, and sustained the disparate treatment."); ¶ 176 ("Laws was denied overtime…[which] was endorsed and encouraged

6

by the individual Defendants."); ¶ 181 ("Glenn was denied overtime…[which] was endorsed and encouraged by the individual Defendants.").

   B. *Claims of Racial Discrimination in Relation to Bresnahan*

Plaintiffs also claim that they were victims of racial discrimination, specifically they allege that they were subject to the following adverse employment actions: (a) failure to promote; (b) failure to transfer or assign selected shifts; and (c) failure to award overtime. See Dkt. No. 87, ¶ 198-199. First, with respect to the "failure to transfer or assign selected shifts," this is a claim that is further described in the complaint by Plaintiffs as being denied days off, denied "desired work locations," given "undesirable work assignments, shifts, and days off," "required to travel to different locations throughout the City" and "not given a City vehicle," and were denied shifts closer to their homes. See Dkt. No. 87, ¶ 115,160, 163, 170, 174. These are not adverse employment actions. See Grube v. Lau Industries, Inc., 257F.3d 723, 728 (7th Cir. 2001)(holding that a change in shift does not rise to the level of an adverse employment action); Griffin v. Potter, 356 F.3d 824, 828 (7th Cir. 2004)(holding that a change in shift and change in work location that lengthened commute not an adverse employment action). Even if these were adverse employment actions, Plaintiffs have no specific allegations with respect to any of the class representatives or any employees that they contend are within the class that Bresnahan was directly responsible or otherwise had an impact on these transfers or shift assignments beyond conclusory allegations that do not satisfy Twombly or Iqbal. Where did the class representatives work within the Water Department? What was their job title? Were they subject to a collective bargaining agreement where there was a preference given for certain assignments? Plaintiffs failure to describe and allege even these basic items demonstrates this complaint's incurable deficiencies. Bresnahan presumes that on their third attempt, with an army of attorneys, if they had the capability to make such allegations they would have done so. The fact that they did not leads to an inference that they failed to do so

7

because it would doom their case against Bresnahan. With respect to the remainder of the allegations against Bresnahan the allegations that he "designed job descriptions to favor Caucasians," that he generally denied promotions to African-Americans, and that he "ignored complaints" about "not receiving overtime" or promotions are all conclusory allegations that do not meet the requirement of facial plausibility in accordance with Twombly and Iqbal. This is particularly applicable, as this is now the second amended complaint, Bresnahan was not added until the amended complaint, and the Plaintiffs had the benefit of reading all of the motions to dismiss brought by the individual defendants prior to crafting its second amended complaint.

*C. Claims of Hostile Work Environment in Relation to Bresnahan*

To make out a claim for a hostile work environment, Plaintiffs must allege that: (1) [they were] subject to unwelcome harassment; (2) the harassment was based on [their] race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile of abusive situation; and (4) there is a basis for employer liability." Cole v. Bd. of Trustees, 838 F.3d 888, 898 (7th Cir. 2016). The harassment must be considered severe and pervasive both from an objective and subjective point of view. Boss v. Castro, 816 F.3d 888, 898 (7th Cir. 2016)(plaintiff must show that "the work environment was both objectively and subjectively offensive"). That is, the environment must be one that a reasonable person would find hostile and it must also be an environment that the Plaintiffs actually perceived to be hostile. Smith v. Northeastern Illinois, Univ., 388 F.3d 559, 566 (7th Cir. 2004).

With respect to harassment, the only arguably specific allegations they make against Bresnahan are that he used the "n" word at a meeting at one plant on an unknown date, that he used a racial slur in relation to African-Americans at a meeting (again at an unknown date), that he received emails from Paul Hansen that were racially derogatory (on two separate occasions years apart), and that he received emails from "former colleagues" in the "Chicago Police Department" and "laughed

8

and joked about it" with Water Department employees (again with unknown dates). Harassment requires more than offensive comments. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Further, the harassment must have been directed at the Plaintiffs. Smith, 388 F.3d at 567. Here there are no allegations that any of these alleged actions of Bresnahan were actually observed or witnessed by *any* African-Americans, much less the specific Plaintiffs identified. Even if there were, by Plaintiffs' own admission in their complaint, the Water Department is a vast department with thousands of employees. These alleged isolated statements over the course of an unknown period of time are not sufficiently "severe and pervasive" from an objective and subjective standard to meet the facial plausibility requirement of Twombly and Iqbal.

While the Plaintiffs do make additional allegations about alleged acts by other Water Department employees – specifically the hanging of a noose, being subjected to racist images and being called offensive names – they do not allege that it was by Bresnahan or that Bresnahan was aware of it. See Dkt. No. 87, ¶68, 155, 177. Although a supervisor may be subject to liability where they "condoned or acquiesced in a subordinate's unconstitutional" misconduct, Minix v. Canarecci, 597 F.3d 824, 833-834 (7th Cir. 2010), such conclusory allegations fall short of plausibly suggesting that knowingly acted with deliberate indifference to Plaintiffs' rights or condoned the alleged misconduct. Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012); Adams v. City of Indianapolis, 742 F.3d 720, 733 (7th Cir. 2014).

    IV.    *Class Allegations Alleged Against Bresnahan must be Stricken*

Defendant Bresnahan joins the City's arguments as to why class certification is not appropriate and any class allegations should be stricken from the Complaint. Additionally, the class allegations are also brought against Defendant Bresnahan. The lack of personal involvement, as described in the preceding section, further illuminates why a class action cannot be brought against an individual defendant – specifically Bresnahan.

9

Rule 12(f) permits courts to strike immaterial or impertinent matter from a pleading. See Fed. R. Civ. P. 12(f). With respect to class allegations, Rule 23(c)(1)(A) states that "[a]t an early practicable time after a person sues…as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "The rule's text plainly indicates that he court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the Plaintiff will be unable to satisfy Rule 23." Hill v. Wells Fargo Bank, N.A., 946 F. Supp.2d 817, 829 (N.D. Ill. 2013). Motions to strike class allegations at the pleadings stage are appropriate. See Wolfkiel v. Intersection Ins. Servs., Inc., 303 F.R.D. 287, 292 (N.D. Ill. 2014); Padron v. Wal-Mart Stores, Inc., 783 F. Supp.2d 1042, 1048 (N.D. Ill. 2011)(dismissing Title VII class action claims at the pleadings stage); See also Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 563 (7th Cir. 2011)("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification.").

Rule 23(a) has four requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Plaintiffs must also show that they have met the requirements of Rule 23(b). Plaintiffs fail to satisfy the numerosity, commonality and typicality requirement with respect to Bresnahan – particularly bearing in mind the personal involvement requirement.

With respect to numerosity, in the second amended complaint, the Plaintiffs added with respect to the allegations against Bresnahan that he was a "Chicago Police Officer with no experience….[who] harbored racist views of African-Americans from this time as a Chicago Police Officer…." See Dkt. No. 87, ¶ 39. Plaintiffs also added allegations related to the City's Personnel Rules and Hiring Plan (¶49-63) – presumably in response to the City's argument in its motion to

10

dismiss that there were insufficient *Monell* allegations. But Plaintiffs did not add any allegations as to what exactly Bresnahan's defined duties and responsibilities he had as "Managing Deputy Commissioner of the Department of Water Management" so as to determine if he had sufficient personal involvement so as to be liable for each and every member of this class that consists of "over 500 members."

With respect to commonality, the requirement can be established by showing a common policy. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 353 (2011). However, it must be answered without individualized inquiries. Strait v. Belcan Eng'g Group, Inc., 911 F. Supp.2d 709, 720 (N.D. Ill. 2012). The fact that the Plaintiffs have attempted to name not just Bresnahan, but several individual defendants in such a large department that is subject to numerous collective bargaining agreements, as defendants in the class action is a red flag to the Court that the commonality requirement is not met with respect to Bresnahan. See Puffer v. Allstate Ins. Co, 255 F.R.D. 450, 460-461 (N.D. Ill. 2009)(noting that "[s]everal decisions in this district have denied class certification in discrimination cases where a plaintiff's class definition implicated numerous, independent decision-makers, resulting in the need for numerous individual inquiries," collecting cases and denying class certification, as discussed *infra*). Again applying the additional requirement of personal involvement with respect to Bresnahan, how could there possibly be a common question of law or fact specifically with respect to Bresnahan as applied to each and every Plaintiff. Who were the Plaintiffs' immediate supervisors? Were they subject to a collective bargaining agreement? What were the terms of that agreement? Which divisions were the Plaintiffs each a part of? Were they salaried or hourly? Were they line employees or supervisors? What were the Plaintiffs' titles? What were the Plaintiffs' daily duties and responsibilities? Where were they primarily located? Where was Bresnahan primarily located? This case also involves several counts alleging a hostile work environment.

Lastly, Plaintiffs fail to establish typicality with respect to Bresnahan largely for the same reasons that they fail to meet the commonality requirement. See Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 619 (W.D. Wis. 2003)(holding that a lack of typicality existed with respect to the individual defendants in relation to a civil rights action brought by prisoners related to strip search procedures, denying class certification against the individual defendant officers, and further finding it noteworthy that Plaintiffs had failed to cite to a single case where a civil rights action was granted with respect to individual defendant officers). Courts have denied class certification for a hostile work environment for failure to meet the typicality requirement against the employer as an entity. See Goodwin v. Conagra Poultry Co., No. 03–cv–1187, 2007 WL 1434905, at *14 (W.D.Ark. May 15, 2007) ("Plaintiffs work in different areas or departments throughout the Defendants' processing complex. They have different supervisors. Their claims arise out of differing events and conduct within the particular departments in which they work. As a result, their complaints are highly individualized."); Elkins v. Am. Showa Inc., 219 F.R.D. 414, 425 (S.D.Ohio 2002) (rejecting typicality argument when "claims of many of the plaintiffs and putative class members do not involve similar conduct" and "this is not a case where a named plaintiff who proved her own claim would prove anyone else's"). How can the Plaintiffs, with these confusing and minimal allegations as to how exactly the Water Department was structured and what Defendant Bresnahan's role and responsibilities were possibly meet the requirements of typicality requirement with respect to Bresnahan?

Class certification against Bresnahan should be denied for failure to meet the requirements of numerosity, commonality and typicality.

V. *§1981 Claims Cannot be Brought*

In Counts II, IV and V, Plaintiffs bring §1981 claims against Bresnahan. The Supreme Court and the Seventh Circuit has determined that §1981 is not an available remedy against state actors and the Seventh Circuit has concurred. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Campbell v. Forest Preserve Dist. of Cook County, Ill., 752 F.3d 665, 667-670 (7th Cir. 2014). Instead, § 1983 "remains the exclusive remedy for violations of §1981 committed by state actors." Id. Plaintiffs allege in the complaint that Bresnahan is a state actor by alleging: "[t]he Individual Defendants are or were at relevant times employees of the City of Chicago and acted and act under color of law,…." See 2nd Am. Compl.¶44. Thus, Counts II, IV and V must be dismissed with prejudice as improperly brought against Bresnahan – as Plaintiffs themselves allege Bresnahan is a state actor. See Ali v. Village of Tinley Park, 79 F. Supp.3d 772, 774 (N.D. Ill. 2015)(dismissing with prejudice §1981 claims against a municipality and municipal employees because §1983 "provides the exclusive remedy" for claims against state actors); See also McCormick v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012)(holding that §1981 claims against government officials in their individual capacities are precluded by Jett).

VI. *Suit against Bresnahan in his Official Capacity is Duplicative*

Counts I, II, III, and IV states that it is brought against Bresnahan in its official capacity. A lawsuit against a government official in his or her official capacity is redundant when the government entity is also named, such claims should be dismissed. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Jungels v. Pierce, 825 F.2d 1127, 1129 (7th Cir. 1987); Kiser v. Naperville Comm. Unit, 227 F. Supp. 954, 960-961 (N.D. Ill. 2002)(dismissed ADEA claims against board of education members sued in their official capacities). Thus, as the City is already named as a defendant, Bresnahan should be dismissed from the complaint as unnecessary or redundant.

13

VII. *Joinder by Bresnahan of other applicable arguments made by other Defendants*

Bresnahan joins and adopts the City and any other individual defendant's motion to dismiss or strike to the extent those arguments are also applicable to him.

WHEREFORE, the Defendant, WILLIAM BRESNAHAN, respectfully requests that he be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and the class allegations be stricken against him pursuant to Fed. R. Civ. P. 12(f).

Respectfully submitted,
Defendant BRESNAHAN

By: */s/ K. Austin Zimmer*
    K. Austin Zimmer

K. Austin Zimmer (ARDC No. 6276227)
Michael T. Del Galdo
Cynthia S. Grandfield
Sean M. Sullivan
DEL GALDO LAW GROUP, LLC
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222-7000 (t)
(708) 222-7001 (f)