IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERRICK EDMOND, KATHERINE
EALY, EDDIE COOPER, JR., VICKI
HILL, ROBERT T. LAWS, JR., ANTON
GLENN, VERONICA SMITH, DONALD
ANDERSON, and DAVID HENRY
individually and on behalf of all others
similarly-situated,

                        Plaintiffs,

          v.

THE CITY OF CHICAGO; BARRETT
MURPHY, former Commissioner of the
Department of Water Management;
WILLIAM BRESNAHAN, former Managing
Deputy Commissioner of the Department of
Water Management; JOHN POPE, Deputy
Commissioner of the Department of Water
Management; ALAN STARK, Deputy
Commissioner of the Department of Water
Management; and JOSEPH LYNCH, Chief
Operating Engineer of the Department of
Water Management,

                        Defendants,

No. 17 CV 4858

Judge: Joan B. Gottschall

Magistrate: Sheila Finnegan

**DEFENDANT CITY OF CHICAGO, JOHN POPE, ALAN STARK AND JOSEPH LYNCH'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND TO STRIKE CLASS CLAIMS PURSUANT TO RULE 12(f)**

**Table of Contents**

INTRODUCTION ...................................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ................................................................................ 2

PARTIES .................................................................................................................................. 3

FACTUAL ALLEGATIONS ................................................................................................... 4

ARGUMENT............................................................................................................................ 7

    I.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE CITY    AND THE
    INDIVIDUAL DEFENDANTS ....................................................................................... 7

        A.    Legal Standard.......................................................................................................... 7

        B.    Plaintiffs' Section 1981 Claims in Counts II & IV Fail. ......................................... 7

        C.    Plaintiffs' Section 1983 Claims in Counts I & III Fail............................................ 9

            1.    Plaintiffs Fail to Plead Facts Demonstrating the City Enacted a Policy or Practice Creating or
            Sustaining a Discriminatory Work Environment...................................................... 10

            2.    Plaintiffs Fail to Plead Facts Sufficient to Demonstrate Their Alleged Injuries Were Caused by
            Final Policymakers. ................................................................................................... 16

            3.    Plaintiffs' Section 1983 Claims Against the Individual Defendants in Their Official Capacities
            Should Be Dismissed................................................................................................. 19

        D.    Plaintiffs' Section 1981 Claim in Count V Fails. ................................................... 20

            1.    Plaintiffs Plead No Facts Demonstrating the Individual Defendants Acted as Private Actors.... 20

            2.    Plaintiffs Fail to Allege Personal Involvement on the Part of the Individual Defendants
            Sufficient to Impose Liability in Their Individual Capacities under Sections 1981 or 1983.................. 21

        E.    Plaintiffs' Illinois Civil Rights Act Claim in Count VI Fails. ................................ 26

    II.    THIS COURT SHOULD STRIKE PLAINTIFFS' CLASS CLAIMS. .............................. 27

        A.    Legal Standard.......................................................................................................... 27

        B.    The Standard of Review for Motions to Strike Class Claims Pursuant to  Federal Rule of Civil
        Procedure 23............................................................................................................. 28

        C.    Plaintiffs' Race Discrimination Class Claims Should Be Stricken. ......................... 28

        D.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(a)...................................... 31

            *1. Numerosity* ......................................................................................................... 33

            *2. Commonality*...................................................................................................... 34

            *3. Typicality* ........................................................................................................... 38

        E.    Plaintiffs Fail to Meet the Requirements of Rule 23(b)......................................... 39

Defendants City of Chicago (the "City"), John Pope, Alan Stark, and Joseph Lynch (collectively "Defendants"), by and through their attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submit the following Memorandum of Law In Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint and to Strike Class Claims Pursuant to Federal Rule of Civil Procedure 12(f), and state as follows.

## INTRODUCTION

In their final effort to cure their pleading deficiencies, Plaintiffs have amended their complaint to remove Randy Conner and Eduardo Salinas as named defendants, but have failed to withdraw their conclusory and insufficiently pleaded claims. While it is inexplicable that the newly added allegations of race discrimination against Defendants Stark, Pope and Lynch were just discovered by Plaintiffs nine months after their initial Complaint was filed, those allegations cannot save Plaintiff's Complaint from dismissal. Indeed, Plaintiffs continue to conflate the allegations of discriminatory conduct by Water Department employees who are not parties the this lawsuit (and in many cases not even identified) with the actions allegedly taken by Stark, Pope and Lynch. There is no effort to connect any alleged racist action on the part of Stark, Pope and Lynch to any specific Plaintiff. The newly added factual allegations of racially motivated emails were not sent or received by Defendants Stark, Pope, or Lynch. Likewise, Plaintiffs' new allegations of knowledge or participation in racially motivated employment decisions by Stark, Pope, and Lynch are too vague and/or unrelated to any Plaintiff to state a claim for liability under Section 1983.

In their Second Amended Complaint, Plaintiffs have added three additional plaintiffs without explanation or connection to the class claims. Like their newly discovered allegations of race discrimination, it is unclear why these three individuals were not included in the original or amended Complaint. The most likely reason is the same reason they elected to remove Plaintiff Adebola Fagbemi (African-American) from the named-Plaintiffs earlier this year – Plaintiffs are still

1

searching for individuals who will serve as appropriate class representatives and for allegations that can support a class claim. Fagbemi, as the former Chief Filtration Engineer supervised 150 people, was not a good class representative of employees alleging the Water Department does not promote African-Americans.[1] This attempt to mitigate their deficient class allegations is also the reason Plaintiffs removed from their original Complaint references to Plaintiffs' employment information which showed an array of distinct job titles, work locations and bargaining units. (Compare Complaint, Dkt. #1, ¶¶ 11(g), 12(g), 13(g), 14(g), 15(f), 16(g), 17(g) and 61) to Amended Complaint, Dkt. #32, ¶¶ 9-14; 90-122).

To be clear and despite these attempts at re-pleading, Plaintiffs hold uniquely different positions within the largest City operating department - the Department of Water Management - which employs over 2,000 full-time personnel, in no less than 159 job titles, spread out across the City in five (5) distinct work groups also referred to as "Bureaus." For the reasons stated more fully below, Plaintiffs' Second Amended Complaint remains insufficiently pleaded; its class allegations should be struck and the remaining claims should be dismissed.[2]

## RELEVANT PROCEDURAL HISTORY[3]

On June 29, 2017, seven plaintiffs filed their original complaint against the City of Chicago (the "City") and six defendants purportedly on behalf of themselves and a class of similarly-situated Black employees of the City of Chicago Department of Water Management (hereinafter "Department" or "DWM"). (Dkt. # 36) On November 2, 2017, the City moved to dismiss Plaintiffs original complaint in its entirety. (Dkt # 25) In lieu of a response to the City's motion to

---

[1] *See* Exhibit A, *Fagbemi v. City of Chgo*, No. 08 CV03736, Dkt. # 72, ¶3, Pl.'s Resp.to Def.'s 56.1 SOF.
[2] Plaintiffs' prayer for indemnification in Count VII should be dismissed for their failure to state a claim against Defendants in Counts I-VI.

[3] As is required on a Rule 12(b)(6) motion to dismiss, Defendants accept all well-pleaded facts as true only for purposes of this Motion. *Bressner v. Ambroziak*, 379 F.3d 478, 480 (7th Cir. 2004).

dismiss, Plaintiffs were given leave to file their Amended Complaint. Plaintiffs' Amended Complaint was filed on November 21, 2017. (Dkt. # 32). On January 30, 2018, Defendants moved to dismiss Plaintiffs' Amended Complaint in its entirety. (Dkt # 67) In lieu of a response to the Defendants' motion to dismiss, Plaintiffs were given leave to file their Second Amended Complaint. Plaintiff's Second Amended Complaint was filed on March 9, 2018. (Dkt. # 87). In their Second Amended Complaint ("SAC"), a total of nine plaintiffs, including three additional plaintiffs (Veronica Smith, Donald Anderson, and David Henry) bring claims against six defendants. *Id.*

**PARTIES**

Plaintiffs have named the City, as well as five individuals in their individual and official capacities as Defendants in this action. The City of Chicago's Department of Water Management is responsible for the purification and transmission of potable water to the homes and businesses of the City, and 126 suburban communities. (SAC ¶ 46) Plaintiffs Katherine Ealy ("Ealy"), Eddie Cooper, Jr. ("Cooper"), Robert T. Laws, Jr. ("Laws"), Vicki Hill ("Hill"), Derrick Edmond ("Edmond"), Anton Glenn ("Glenn"), Veronica Smith ("Smith"), Donald Anderson ("Anderson"), and David Henry ("Henry") are African-American current or former employees of varying positions within the Department. (SAC ¶¶ 16-25) Ealy, Robinson, Cooper, Laws, Glenn, Smith, Anderson, and Henry are current employees of the Department. (*Id.* ¶¶ 10-11, 13-14) Hill and Edmond retired in 2015 and 2017, respectively. (*Id.* ¶¶ 9, 12)

Plaintiffs have named as individual defendants former DWM Commissioner Barrett Murphy ("Murphy"), former Managing Deputy Commissioner William Bresnahan ("Bresnahan"), Deputy Commissioner John Pope ("Pope"), Deputy Commissioner Alan Stark ("Stark"), and Chief Operating Engineer Joseph Lynch ("Lynch"). (SAC ¶¶ 38-43)

## FACTUAL ALLEGATIONS

Plaintiffs' claims against the City and individual defendants are brought on their own behalf as well as on behalf of a class of all current and former African-American employees *presumably from 1983 to the present* ("Class") of the DWM under Federal Rule of Civil Procedure 23. (SAC ¶ 198) Plaintiffs allege Defendants engaged in discriminatory acts against them and the proposed class in the following ways: assigning less desirable work assignments; assigning less overtime; denying promotions; denying transfers, shifts and days off, subjecting them to unwelcomed racial intimidation and harassment, subjecting them to harsh and undue discipline; and subjecting them to retaliatory, adverse actions. (*Id.* ¶ 78). In that same vein, Plaintiffs allege they and proposed class members were subjected to and harmed by the systemic hostile work environment for African-Americans within the DWM. (*Id.* ¶ 224). Plaintiffs identify as an example of the hostile work environment, "email traded by Defendants and other supervisors on their City of Chicago computers." (*Id.* ¶ 80). However, Plaintiffs do not allege Defendants Stark, Pope, or Lynch sent, received or forwarded any racially charged emails. Rather, Plaintiffs specifically identify emails sent by former DWM employee Paul Hansen, who is not a Defendant in this lawsuit. (*Id.* ¶¶ 85-87).

Plaintiffs also claim Defendants created a practice, pattern, or policy of not promoting, refusing to transfer, assigning the duties of a higher position while declining to pay the higher compensation, assigning less overtime to African American employees, and disciplining African American employees more harshly than Caucasian employees. (*Id.* ¶¶ 99, 123, 127).

*Class and Sub-Class Allegations*

Within the broader Class of all African-American DWM employees, Plaintiffs seek to represent three sub-classes: a "Promotions Sub-Class," "Transfer and Shift Selection Sub-Class," and "Overtime Sub-Class." (*Id.* ¶ 198) Plaintiffs allege there are in excess of 500 members of the

4

Class. (*Id.* ¶ 200). Plaintiffs do not identify the number of employees or former employees in each sub-class, nor do they identity any time frames other than Plaintiffs' respective initial dates of hire.

Plaintiffs in the "Promotions Sub-Class" consist of "all African-American employees who applied for a promotion and did not receive it." (SAC ¶ 198). Plaintiffs allege the discriminatory acts engaged in by Defendants were part of a pattern and practice that was centrally devised and commonly applied to Plaintiffs and members of the Class and Sub-Classes to "deny promotions to African-American employees of the Water Department or require [them] to apply repeatedly before getting the promotion despite equal or superior qualifications to Caucasian employees." (*Id.* ¶ 199)

Plaintiffs in the "Transfer and Shift Selection Sub-Class" consist of "all African-American employees who applied for transfers or better shifts and did not receive them." (*Id.* ¶ 198). Plaintiffs allege the discriminatory acts engaged in by Defendants were part of a pattern and practice that was centrally devised and commonly applied to Plaintiffs and members of the Class and Sub-Classes to "refuse to transfer or award selected shifts to African-American employees, despite sufficient seniority to obtain those transfers and shifts." (*Id.* ¶ 199.)

Plaintiffs in the "Overtime Sub-Class" consist of "all African-American Water department employees who sought and were eligible to work overtime and did not receive it." (*Id.* ¶ 198). Plaintiffs allege the discriminatory acts engaged in by Defendants were part of a pattern and practice that was centrally devised and commonly applied to Plaintiffs and members of the Class and Sub-Classes to "deny overtime to African-American employees of the Water Department, and award overtime to Caucasian employees instead." (*Id.* ¶ 199.)

*Individual Allegations*

Plaintiffs Edmond, Ealy, Cooper, Hill, Laws, Glenn, Smith, Anderson, and Henry allege certain facts specific to each of them. Notably, Plaintiffs held *different* job titles within the DWM,

5

worked at varying locations and belonged to different bargaining units. The following is the job title, employment status, job location, and union affiliation of each Plaintiff[4]:

| Name | Title | Status | Job Location | Bargaining Unit |
|------|-------|--------|--------------|-----------------|
| Edmond | Operating Engineer A | *Retired* | South (Sawyer) Water Plant | Local 399 |
| Ealy | Chief Oper.Eng. | Current | South (Sawyer) Water Plant | Local 399 |
| Cooper | Water Chemist II | Current | South (Sawyer) Water Plant | AFSCME |
| Hill | Staff Assistant | *Retired* | Jardine Water Plant | AFSCME |
| Glenn | Foreman of Station Laborers | Current | South (Sawyer) Water Plant | Local 73 |
| Laws | Construction Laborer | Current | 95th and Genoa | Local 1092 |
| Smith | Construction Laborer | Current | Meter Shop | Local 1092 |
| Anderson | Plumber & Foreman of Water Pipe Constr. | Current | Central District | Local 130 |
| Henry | Plumber & Plumbing Investigator | Current | South District | Local 130 |

Despite having multiple opportunities to amend their class claims, the class allegations remain inconsistent amongst each of the Plaintiffs. Only 7 of the 9 named Plaintiffs allege they were denied promotions for which they applied due to racism (SAC ¶¶ 151, 158, 163, 168, 174, 185, 188). Only 5 of the 9 named Plaintiffs allege they were denied transfers for which they applied because of their race. (SAC. ¶¶ 151, 158, 163, 168, 174). Similarly, other class allegations are common to only some Plaintiffs. For example, *only* Hill, Laws, Glenn, Anderson and Henry allege they were denied overtime because of their race. (SAC ¶¶ 171, 176, 181, 190, 195). *Only* Edmond, Cooper and Hill allege they were subjected to undue discipline because of speaking out against mistreatment. (SAC ¶¶ 156, 166, 172). *Only* Cooper alleges he was eligible for acting up pay for performing the duties of

---

[4]The original Plaintiffs identified their job titles, job location and union affiliation in their original complaint. The Court may take judicial notice of the factual assertions contained in Plaintiffs' original complaint for purposes of considering this motion. (Compl. ¶¶ 11(g), 12(g), 14(g), 15(f), 16(g), and 61). *See, e.g., Watkins v. United States*, 854 F.3d 947, 949-950 (7th Cir. 2017) (ruling that the district court could take judicial notice of the plaintiff's earlier state court complaint and its allegations in dismissing the action based on the defendant's affirmative defense). With respect to Glenn, Smith, Anderson and Henry their job titles and salaries are publicly available on the City of Chicago website. https://data.cityofchicago.org/Administration-Finance/Current-Employee-Names-Salaries-and-Position-Title/xzkq-xp2w/data.

a more senior position, but was denied this pay despite completing the necessary paperwork.  (SAC ¶ 165).

## ARGUMENT

### I.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE CITY AND THE INDIVIDUAL DEFENDANTS

#### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss if the complaint "fail[s] to state a claim upon which relief may be granted."  In analyzing this motion to dismiss, the Court must be guided by the Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal,* to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations which, accepted as true, "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has mandated a two-pronged analysis when a court is faced with a Rule 12(b)(6) motion to dismiss. First, the court must identify those allegations of the complaint which represent nothing more than conclusory statements parroting the legal elements of a cause of action. *Id.* at 679-681. Such statements are not entitled to the presumption of truth. *Id.* Second, the court must consider whether the remaining allegations state a plausible cause of action – that is, whether the court can "infer more than the mere possibility of misconduct." *Id.* at 679. Unless a plaintiff is able to nudge his or her claims "across the line from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

#### B.    Plaintiffs' Section 1981 Claims in Counts II & IV Fail.

In Count II, Plaintiffs assert a claim of hostile work environment against the Individual Defendants and the City under 42 U.S.C. § 1981 "via 42 U.S.C. § 1983", and in Count IV, Plaintiffs

assert a racial discrimination claim against the Individual Defendants and the City under Section 1981 "via Section 1983" (collectively referred to as the "Section 1981 Claims"). For the first time in their Second Amended Complaint, Plaintiffs appear to plead their Section 1981 claims *via Section 1983* in an effort to correct their improperly pleaded stand-alone Section 1981 claims based on the Seventh Circuit finding that Section 1983 is the exclusive remedy for violations of Section 1981 committed by state actors. *Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 671 (7th Cir. 2014). Plaintiffs allege that each of the defendants is a state actor. As Plaintiffs' Section 1981 claims are plead precisely the same as in the prior complaints with the addition of the words "via Section 1983," those improperly pleaded Section 1981 claims should be dismissed against the City and individual defendants. *Id.*

To the extent Plaintiffs' Section 1981 claims of hostile work environment and race discrimination in Counts II and IV proceed under Section 1983 against the individual defendants in their official capacity, those claims should be dismissed as duplicative of the claims against the City. (*See* Section I.C.3. *infra.*)

Additionally, Plaintiffs' claims of hostile work environment and race discrimination brought under Section 1981 "via Section 1983" are held to the two-year statute of limitations, not the four-year statute of limitations for Section 1981 claims. *Cunliffe v. Bd. of Ed., et al.*, 51 F.Supp.3d 721, 732 (N.D. Ill. June 20, 2014)*(citing McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009)(rejecting plaintiff's argument that her untimely § 1983 claim was saved by the four-year statute of limitations period of § 1981 and holding that § 1981 does not provide a private right of action against state actors). For employment claims under Section 1983, the statute of limitations accrues at "the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Accordingly, any claims in Counts II and IV arising from alleged discriminatory acts that occurred before June 29, 2015 would be time-barred.

#### C. Plaintiffs' Section 1983 Claims in Counts I & III Fail.

Under Section 1983, the City cannot be held liable for the acts of its employees unless those

acts were undertaken pursuant to an official City policy or widespread practice, or undertaken by an

individual with final policymaking authority, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690 (1978). *See also Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). It is not enough to assert

that a municipality is responsible under a theory of *respondent superior. Monell*, 436 U.S. at 691. Rather,

the Seventh Circuit has identified the following three limited circumstances under which a

municipality may be found to violate Section 1983:

> (1) through an express policy that, when enforced, causes a constitutional
> deprivation; (2) through a 'wide-spread practice' that although not authorized by
> written law and express policy, is so permanent and well settled as to constitute a
> 'custom or usage' with the force of law; or (3) through an allegation that the
> constitutional injury was caused by a person with 'final decision policymaking
> authority.'

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382

(7th Cir. 1995)).

Plaintiffs do not claim that the City has an express policy in violation of the law, so they

appear to be proceeding only under the second and third theories of liability.[5] First, they allege that

Defendants "under color of state law set forth policies and/or practices that create, sustain, and

proliferate a hostile and abusive work environment based on race" and "engaged in a pattern and in

practices that treated African-Americans employees differently because of their race." (SAC ¶¶ 212

(Count I) and 228 (Count III); *see also*, *e.g.*, SAC ¶¶ 2-4 and 141). Plaintiffs further allege that these

practices are so pervasive that they constitute a widespread pattern or practice or "custom or usage"

with the force of law. (SAC ¶¶ 214 (Count I) and 229 (Count III)). In addition, Plaintiffs allege in a

---

[5] In fact, Plaintiffs admit that the City's Hiring Plan states the City's commitment to equal employment opportunity and requires that hiring decisions be made based on "non-race factors." (SAC ¶ 52).

purely conclusory fashion that the Individual Defendants and (often unnamed) others are "policymakers." (*See generally* SAC ¶¶ 6, 30, 36, 45, 98 and 117). However, Plaintiffs have failed to plead factual content sufficient to state a *Monell*.

1. <u>Plaintiffs Fail to Plead Facts Demonstrating the City Enacted a Policy or Practice Creating or Sustaining a Discriminatory Work Environment.</u>

A plaintiff asserting a *Monell* claim must plead factual content sufficient to support a reasonable inference that the defendant maintained an express policy or widespread practice that caused a constitutional violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Mere legal conclusions or boilerplate allegations are not enough to survive a motion to dismiss. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). Instead, to state a *Monell* claim, Plaintiffs must "'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley*, 671 F.3d at 616 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)) (internal quotations in the original). They have not. Plaintiffs allege only that the City has unspecified unlawful "policies and/or practices" and then conclude that these create a hostile and otherwise discriminatory environment based on race without demonstrating a causal connection. These legal conclusions are insufficient to state a *Monell* claim.

The Seventh Circuit's decision in *McCauley* is instructive. In *McCauley*, the Seventh Circuit considered allegations in support of a plaintiff's *Monell* claims based on purported equal protection clause violations, including that "the City 'has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence' and that '[t]here is no rational basis' for this purported policy." 671 F.3d at 616-617. The plaintiff in *McCauley* further alleged that:

> [The City], through its agents, employees and/or servants, acting under color of law, at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to McCauley's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at

all times material to this Complaint, [the City] had interrelated *de facto* policies, practices, and customs.

*Id.* As noted by the Seventh Circuit in *McCauley*, such allegations are merely "the legal elements of the various claims [plaintiff] has asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal.*" *Id.* Thus, in analyzing whether the plaintiff had sufficiently stated a claim for a violation of the equal protection clause pursuant to *Monell*, the Seventh Circuit disregarded the "alleged 'facts' [that were] actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951).

Here, Plaintiffs' allegations regarding the City's alleged unlawful policies and practices suffer from the same deficiencies as those considered by the Seventh Circuit in *McCauley*. As in *McCauley*, Plaintiffs rely entirely on "legal conclusions or elements of Plaintiffs' cause of action" to describe the allegedly offensive policies and practices they challenge. *Id.* When these legal conclusions, including vague references to a nebulous "culture of racism" (*i.e.*, "policies and/or practices" by another name), are disregarded, as they must be under *McCauley*, there simply is not enough factual material to state a plausible *Monell* claim under the relevant pleading standard. For example, Plaintiffs allege that:[6]

- "The Individual Defendants communicated and knowingly condoned a policy to all of the supervisors within the Water Department that African-Americans were to be, or could with impunity be, treated with disdain, deprived of promotions, given less overtime, and harassed." (SAC ¶ 7.)

---

[6] Defendants provide only a few illustrative examples for the sake of brevity. However, there are many more examples of such allegations in Plaintiffs' 252-paragraph SAC.

- "The Commissioner, Deputy Commissioners, and the superintendents in the Water Department established and promoted a pattern and practice of engaging in racially discriminatory remarks and actions against African-American employees of the Water Department…." (SAC ¶ 65).

- "The City of Chicago, through the Commissioners, supervisors, and policymakers at the Water Department have [*sic*] a practice of discriminating against African-American employees of the Water Department." (SAC ¶ 98.)

- "Defendants have a practice, pattern or policy of not promoting, refusing to transfer, and assigning less overtime to African American employees." (SAC ¶ 99.)

- "Defendants created a practice and scheme that requires African-American employees to work far longer than Caucasians and apply more times than Caucasians in order to receive a promotion." (SAC ¶ 103.)

When these and Plaintiffs' other conclusory allegations and pattern and practice buzzwords are omitted from the SAC, it is apparent that Plaintiffs have failed to plead *any* factual content as to what exact *policies or practices* that have essentially acquired the force of law they are challenging. This is especially true in the context of a Department as large as the Water Management Department which, as Plaintiffs point out, employs approximately 2,104 employees, many of whom are unionized and subject to a variety of collective bargaining agreements, and has an operating budget in excess of $900,000,000.00. (SAC ¶¶ 47, 57). Plaintiffs' scattershot allegations of alleged race discrimination practiced by largely-unnamed individuals simply cannot substitute for *specific* and *fact-based* pattern and practice allegations. *See Valentino v. Village of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (plaintiff could not establish *Monell* claim under custom or practice theory where plaintiff "present[ed] evidence of possible retaliation against others," but "d[id] not show how these separate incidents weave together into a cognizable [government] policy").

Moreover, even if Plaintiffs adequately pled factual content describing the alleged unlawful policies and practices they challenge, they have both failed to specifically plead sufficient conduct to

12

support their claim of a *widespread* custom or practice and that the conduct was allegedly causally-connected to the actions of the Individual Defendants. Plaintiffs' vague, boilerplate allegations, including of a "deeply ingrained," but nebulous "culture of racial discrimination within the Water Department," and that the Individual Defendants are somehow responsible for all personnel actions because they are "ultimately the responsibility of and determined, reviewed and approved or ratified by the Commissioner and Deputy Commissioners or those delegated by them" under the City's policies, must again be disregarded.[7] (*See* SAC ¶¶ 8, 62-67, 73, 77 and 79); *McCauley*, 671 F.3d at 616-617 (Section 1983 policy and practice claim deficient where plaintiff alleged, in part, that defendant "authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed").

Rather, the Court should focus on the specific allegations Plaintiffs make with respect to what allegedly happened to them based on their own firsthand knowledge. Yet Plaintiffs plead only a few categories of alleged adverse employment actions and instances of racial comments or behavior that they suffered and their allegations are largely devoid of factual detail. (*See generally* SAC ¶¶ 151-197). While most Plaintiffs allege that he or she was denied one or more promotions, only 5 Plaintiffs allege that they were denied overtime, only 3 that they were subjected to retaliatory disciplinary proceedings, only 1 alleges that he was denied "acting up" pay, and 1 that he had an "acting up" assignment allegedly terminated early. (*Id.*)

More importantly, only 1 Plaintiff alleges a causal connection between a single adverse action and the specific actions of an Individual Defendant. (*Id.* ¶ 189 (alleging Defendant Bresnahan interviewed Plaintiff Anderson for a position that Anderson was allegedly improperly denied, but *not*

---

[7] Plaintiffs allege Individual Defendants were *not* acting in accordance with City policies. (SAC,¶¶ 52, 55).

alleging that Bresnahan made the employment decision)). Plaintiffs otherwise fail to provide factual details to even infer that the purported adverse actions – which vary significantly in content – stemmed from the same widespread practice or custom allegedly implemented and carried out by the Individual Defendants. At best, Plaintiffs vaguely and generically claim that "Defendants" were involved or that the purported actions occurred "because of racial discrimination orchestrated, endorsed, and encouraged by the Defendants." (*Id.* ¶¶ 152-153, 157, 162, 166-167, 172-173, 176, 178-179, 181, 183-184, 188, 190-193, 195 and 197).

With respect to unnamed others, Plaintiffs plead only some racially-charged emails neither sent nor received by Defendants Stark, Pope or Lynch, and vague behavior and employment actions, which usually involve non-parties, often are not otherwise tied to the Individual Defendants, and often are not alleged to be directed to any African-Americans in particular. (*See* SAC ¶¶ 65, 68-72, 74-75, 77, 81-90, 93-95 100, 111, 116, 129 and 133-134). Consider the allegations against Defendant Lynch. In a 252 paragraph complaint, he is mentioned exactly once. Notably, he is not accused of having anything whatsoever to do with promotions, discipline, transfer or overtime. (SAC ¶ 95).

As the Seventh Circuit has long-held, a "plaintiff must demonstrate that there is a policy at issue rather than a random event," and although there is no bright line test for how frequently conduct must occur to demonstrate such a policy, it must occur more than three times. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). Plaintiffs' few specific allegations of what allegedly happened to them, which they only attempt to tie to Defendants broadly and in conclusory fashion, and their citation to unrelated racially-charged emails they are not alleged to have seen or received and racially-charged behavior that they are largely not alleged to have experienced themselves, are insufficient in number and detail to establish a widespread City custom or practice,

as required by *Monell*.[8] *See, e.g., Wuerffel v. Cook Cnty. Sheriff's Office*, No. 14 C 3990, 2016 U.S. Dist. LEXIS 55723, at *15-17 (N.D. Ill. Apr. 27, 2016) (rejected attempt to plead widespread practice *Monell* claim with conclusory allegations of multiple instances of political discrimination where plaintiff failed to identify the other complainants and specific retaliation or "how these separate incidents weave together into a cognizable County policy") (internal quotation omitted); *Drager v. Village of Bellwood*, 969 F. Supp. 2d 971, 981 (N.D. Ill. 2013) (even if the plaintiff had pled that he and two other employees were subject to First Amendment retaliatory discharge, he would not have adequately pled a *Monell* widespread practice or custom claim).

In sum, Plaintiffs' allegations supporting their *Monell* claim based on the City's alleged objectionable "policies and/or practices" rely only on legal conclusions parroting the elements of their cause of action and vague allegations of what happened to them. Plaintiffs do not tie their allegations to a unifying City practice *or* the Individual Defendants, as they must. Thus, Counts I and III against the City should be dismissed for failing to state a claim. *See, e.g., Thomas v. City of Markham*, No. 16-cv-08107, 2017 U.S. Dist. LEXIS 160635, at *7-8 (N.D. Ill. Sept. 29, 2017) (holding that the portions of the plaintiff's complaint offering "'boilerplate legal conclusions' that [defendant] was deliberately indifferent and had harmful policies in place are not sufficient on their own to state *Monell* claims"); *White v. City of Chicago*, No. 11-cv-7802, 2014 U.S. Dist. LEXIS 31738, at *10 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim where the plaintiff "fail[ed] to describe a specific unlawful practice, policy, or custom of the City"); *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) (finding that "bare allegations of a policy or custom" were not sufficient to state a *Monell* claim);

---

[8] Notably, Plaintiffs' allegations related to shifts and job locations pertain to actions that are both dictated by multiple collective bargaining agreements (*see* SAC ¶¶ 54, 57-58 and 61) and not adverse actions under the law in any event. *See Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1070 (7th Cir. 2012) (holding that the failure to assign the plaintiff to the class she preferred did not constitute a materially adverse action under Title VII and Section 1981).

*Echezarreta v. Kemmeren*, No. 10 C 50092, 2013 U.S. Dist. LEXIS 114141, at *10-11 (N.D. Ill. Aug. 13, 2013) (dismissing *Monell* claim where the plaintiff "merely draws language of 'custom and practice' from *Monell* to fit the elements of the claim" and did not "assert any additional facts to elucidate any 'customs' or 'practices;' rather, he leaves the claims unsupported and speculative in nature."). *See also Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (affirming dismissal of complaint where "[f]or all its heft, the amended complaint alludes to disparate impact in wholly conclusory terms. In several places the complaint uses the words 'disproportionate' and 'impermissible impact' and other synonyms, but those are bare legal conclusions, not facts.").

2. Plaintiffs Fail to Plead Facts Sufficient to Demonstrate Their Alleged Injuries Were Caused by Final Policymakers.

To the extent Plaintiffs assert that the Individual Defendants who caused their alleged injuries were all final policymakers such that they may maintain a *Monell* claim, they fare no better. As the Seventh Circuit has held, the City Council and the City's Commissioner of Human Resources "may be considered final policymakers for the City in the area of employment," not commissioners of other departments and their subordinates who, as Plaintiffs admit (SAC ¶¶ 49-55), are bound by the City's Personnel Rules. *Waters v. City of Chicago*, 580 F.3d 575, 581-583 (7th Cir. 2009) (City's motion for judgment as a matter of law on First Amendment retaliation claim under Section 1983 should have been granted because the Commissioner of Transportation, who had ultimate authority to terminate plaintiff, was constrained by the City's Personnel Rules and lacked final policymaking authority).

In support of their *Monell* claim, Plaintiffs only allege in a purely conclusory fashion that all Individual Defendants are "managers and policymakers" who acted "within the scope of their

employment and within the scope of their authority." (SAC ¶ 45).[9] But just attaching these labels to the Individual Defendants does not make them policymakers within the meaning of *Monell* and applicable Seventh Circuit precedent. Rather, "[o]nly those individuals with the requisite policymaking authority are capable of establishing 'official policy' as required by *Monell.*" *Lewis v. City of Chicago*, 496 F.3dd 645, 656 (7th Cir. 2007).

Whether an official has final policymaking authority is a question of state law and is to be decided by the Court. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986); *see also Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). In determining whether an official has final policymaking authority, courts generally consider the following factors: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Valentino*, 575 F.3d at 676. Just because an official has authority to make the personnel decisions Plaintiffs reference, such as whether to promote or grant overtime, does not make that official a policymaker. Instead, there must be a delegation of authority to the official to set policy for making the employment decisions in question. *Myers v. Joliet Twp. High Sch. Dist.*, No. 12-cv-1866, 2013 U.S. Dist. LEXIS 104655, at *16 (N.D. Ill. July 26, 2013) (finding that "[m]erely because an official has decisionmaking authority to hire and fire personnel does not make them a policymaker," citing *Valentino*, 575 F.3d at 677).

Here, Plaintiffs have offered no allegations upon which this Court can conclude that any of the Individual Defendants was a final policymaker for the City of Chicago under *Waters* and the

---

[9] Notably, Plaintiff Ealy and Defendant Lynch hold the same title: Chief Operating Engineer. https://data.cityofchicago.org/Administration-Finance/Current-Employee-Names-Salaries-and-Position-Title/xzkq-xp2w/data.

City's ordinances and rules.[10] Plaintiffs' bare assertion that the Individual Defendants are "policymakers" was not sufficient before the Supreme Court's decisions in *Iqbal* and *Twombly*, and it certainly is not sufficient after those decisions. *See Duda v. Bd. of Educ. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (pre-*Iqbal* and *Twombly* decision dismissing *Monell* claim based on bare allegation that individual was a final policymaker); *see also Horowitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001) (same).

Moreover, Plaintiffs actually plead themselves out of Court by demonstrating that none of the Individual Defendants sits at the apex of review and that all are bound by City policies, rules and collective bargaining agreements set by others. First, Plaintiffs admit that not even the Commissioner of the Water Department – the highest-ranking post held by any of the Individual Defendants – has final policymaking authority. Plaintiffs allege that the Commissioner "sets policy and directs the culture of the Water Department, in consultation with the Mayor and other policymakers within the City government." (SAC ¶ 30). Plaintiffs further admit that the remaining Individual Defendants cannot be final policymakers because, while Deputy Commissioners allegedly "exercise daily management and policymaking authority," they do so "[u]nder the direction and supervision of the Commissioner." (SAC ¶ 35).

Second, Plaintiffs repeatedly allege that "Water Department policymakers" are guided and bound by policies set by others when making employment decisions, including the City's Personnel Rules, Classification and Pay Plan and Hiring Plan and the collective bargaining agreements applicable to Water Department employees. (SAC ¶¶ 49-62). Thus, even in Plaintiffs'

---

[10] Nor have Plaintiffs established that any of the supposed unnamed "Water Department policymakers" they repeatedly reference do – or even could – exist. (*See* SAC ¶¶ 36, 50 and 58).

view, the Individual Defendants do not and cannot have independent final policymaking authority as required to establish liability under *Monell.*

3. Plaintiffs' Section 1983 Claims Against the Individual Defendants in Their Official Capacities Should Be Dismissed.

Plaintiffs bring Section 1983 hostile work environment claims against the Individual Defendants in their official capacities in Count I and racial discrimination claims against them in their official capacities in Count III. Plaintiffs' claims should be dismissed because they are duplicative of the claims against the City. As the Seventh Circuit has long held, "[a]ctions under § 1983 against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008). Thus, any "official capacity" Section 1983 claims against the Individual Defendants are in essence claims against the City, which is being sued under Section 1983 for the same conduct, and should be dismissed as duplicative.[11] *See, e.g., O'Leary v. Will Cnty. Sheriff's Office,* No. 12 C 5555, 2013 U.S. Dist. LEXIS 5695, at \*23-24 (N.D. Ill. Jan. 15, 2013) (dismissing claims against a sheriff in his official capacity as duplicative because the sheriff's office was already a defendant); *Day v. River Forest Sch. Dist.,* No. 10 C 4426, 2011 U.S. Dist. LEXIS 28201, at \*9-10 (N.D. Ill. Mar. 17, 2011) ("However, in the interests of efficiency, the court notes that the § 1983 official capacity claims against the individuals are duplicative of the § 1983 claim against the school district itself and, therefore, are subject to dismissal with prejudice."); *Florek v. Vill. of Mundelein,* No. 05 C 6402, 2010 U.S. Dist. LEXIS 31635, at \*13 (N.D. Ill. Mar. 31, 2010) (dismissing claims against police chief in his official capacity because they were redundant of plaintiff's claims against the municipality).

---

[11] Further, even if any "official capacity" claims were not subject to dismissal because they are duplicative of the claims against the City, such claims would nevertheless be properly dismissed for the same reasons Plaintiffs' claims against the City should be dismissed. (*See* Section I.C. *supra.*)

**D.    Plaintiffs' Section 1981 Claim in Count V Fails.**

Plaintiffs purport to bring Count V against the Individual Defendants "to the extent they acted outside the scope of their authority" and "engaged in discrimination against African-Americans in violation of 42 U.S.C. § 1981." (SAC ¶ 241.) In other words, Plaintiffs seek, in the alternative, to hold the Individual Defendants liable under Section 1981 for the same alleged discrimination underlying their Section 1983 claims. It is unclear whether Plaintiffs seek to hold the Individual Defendants liable as state actors in their individual capacities or as private actors. However, it is of little consequence because Plaintiffs have failed to adequately plead their claim under either theory.

1.    Plaintiffs Plead No Facts Demonstrating the Individual Defendants Acted as Private Actors.

To the extent Plaintiffs assert that the Individual Defendants committed the alleged misconduct as private actors not acting under color of law, they have pled no facts to support their claim. While Plaintiffs include boilerplate language claiming that, in the alternative, the Individual Defendants were not acting under color of law or within their scope of employment, *all* of the misconduct they allege the Individual Defendants committed relates to their work at the Water Department and their supervisory duties. (SAC ¶¶ 44-45, 83, 94-95, 100 and 129.) Moreover, Plaintiffs broadly claim that the Individual Defendants acted under color of law and that the discriminatory acts stemmed from policies they communicated and condoned. (*E.g.*, SAC ¶¶ 7 and 37.) In short, Plaintiffs plead nothing to support a claim that the Individual Defendants acted as private actors, nor can they. Where, as here, the individual capacity claim is based on alleged misconduct that is related to the performance of the individual's duties as a state actor, the claim must be brought against the individual in his or her individual capacity as a state actor. *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 n.3 (6th Cir. 2012) (noting that, while a claim may be brought

20

against a defendant under Section 1981 as a private actor, that "was certainly not the case" where the defendant faculty's alleged misconduct, like the Individual Defendants' alleged misconduct, "was related to their status as [government] employees"). The logic of *McCormick* applies here: it is of no consequence if the pleadings state in a purely conclusory fashion that the individual was not acting under color of state law because all the allegedly unlawful actions described are related to the performance of official duties. Thus, to the extent Plaintiffs bring Count V as a claim against the Individual Defendants as private actors, it should be dismissed for failure to state a claim upon which relief may be granted.

2. Plaintiffs Fail to Allege Personal Involvement on the Part of the Individual Defendants Sufficient to Impose Liability in Their Individual Capacities under Sections 1981 or 1983.

To the extent Plaintiffs seek to hold the Individual Defendants liable under Section 1981 in their individual capacities as government actors, the standards applicable to Section 1983 claims apply. *See McCormick*, 693 F.3d at 661 (concluding "that § 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity"); *Nitch v. Ester*, No. 16-CV-06033, 2017 U.S. Dist. LEXIS 171338, at *11 (N.D. Ill. Oct. 17, 2017) ("when the statutory violation claimed by the plaintiff is a violation of a right provided by § 1981, a private party may sue the state actor for that statutory violation only under § 1983," and whether the individual is sued in his or her official or individual capacity is irrelevant, citing *McCormick*); *see also Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) ("42 U.S.C. § 1981 does not create a private right of action against state actors"). When Plaintiffs' claim is properly framed as a claim under Section 1983 instead of a Section 1981 claim (as must be done here), it becomes apparent that Plaintiffs cannot meet the applicable pleading standard.

In order for a person to be found individually liable under Section 1983, he or she must have personally caused or participated in the claimed constitutional violation. *Matz v. Klotka*, 769 F.3d

21

517, 528 (7th Cir. 2014); *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009); *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986); *Duncan v. Duckwork,* 644 F.2d 653, 655 (7th Cir. 1981). That is because liability under Section 1983 is predicated upon personal responsibility for the claimed deprivation of constitutional rights. *Brooks,* 578 F.3d at 580 (holding that "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation," quoting *Rascon,* 803 F.2d at 273).

Plaintiffs claim that they and members of the putative class and subclasses were subject to a variety of racially discriminatory acts. However, as to Defendants Stark and Pope, Plaintiffs *do not* allege that they took *any* action that related to Plaintiffs, and Plaintiffs never specifically allege that Defendant Lynch acted with racial animus towards them or state how Lynch was involved in the acts of which they complain. Moreover, Plaintiffs fail to allege that Defendants Lynch and Pope committed *any* of the alleged discriminatory acts that form the basis of their class claims. Further, they only vaguely allege that Defendant Stark committed one of the acts they seek to recover for (alleged improperly-denied promotions) with respect to some unnamed individual, at some unspecified time and under some unspecified circumstances. Instead, Plaintiffs vaguely allege in purely conclusory fashion that Pope, Stark and Lynch committed or condoned a few acts which largely do not relate to them or pertain to their class claims.

The entirety of Plaintiffs' relevant allegations regarding the Individual Defendants are as follows:

- Defendant Stark allegedly "condone[d] and encourage[d] racist remarks and behavior by not disciplining white people who sent cartoons and other negative information (*e.g.,* crosses and swastikas) to African-American employees." (SAC ¶ 83.) However, Plaintiffs fail to plead any specific instances of such conduct, let alone claim that they were personally affected by such conduct or provide details regarding how Stark "condone[d] and encourage[d]" such conduct.

22

- Defendant Stark allegedly knew another employee's "proclivity for violence against African-Americans" but would nevertheless "place black employees near [the employee] and would then discipline" only the African-American employees when there was a disturbance." (SAC ¶ 94.) However, Plaintiffs fail to plead a specific instance of this behavior, let alone that they were personally subject to Stark's alleged actions or how they have a valid basis for pleading what allegedly happened to others.

- Defendant Stark allegedly gave African-Americans "unfavorable work assignments," disciplined African-American employees "while giving a pass to white employees," and promoted white employees who were "less experienced and or unqualified … over more experienced and qualified black employees." (SAC ¶ 100.) However, Plaintiffs fail to plead a specific instance of this behavior, let alone that they were subject to Stark's alleged actions or have a valid basis for pleading what allegedly happened to others.

- Defendant Lynch was allegedly "involved in attempts to physically attack African-American employees," including Plaintiffs Cooper and Glenn, but not white employees. (SAC ¶ 95.) However, Plaintiffs fail to plead the circumstances of the alleged attacks, let alone that Lynch was the one who attempted to attack Plaintiffs and did so because of racial animus.

- Defendant Pope allegedly "made a decision to remove information that employees needed to perform certain job functions, and when an African-American dared to question a Caucasian supervisor's decision, Pope saw to it that the employees was disciplined in retribution." (SAC ¶ 129.)[12] However, Plaintiffs fail to plead a specific instance of this alleged behavior, let alone that any of them was subject to Pope's alleged actions or how they may properly plead what allegedly happened to others.

These few vague allegations are insufficient to establish Stark, Lynch or Pope's personal involvement in the litany of discriminatory acts Plaintiffs allege, as required under Section 1983. Moreover, they certainly are insufficient to establish the Individual Defendants' personal involvement with respect to the specific alleged discriminatory acts underlying Plaintiffs' class claims, which are mentioned exactly once in the cited paragraphs.

---

[12] The additional allegations in this paragraph do not allege Pope was responsible for the alleged actions.

Outside Plaintiffs' few specific references to the Individual Defendants, Plaintiffs only conclusorily allege that they "were subjected to and harmed by the racial discrimination orchestrated and conducted by each of the Individual Defendants" and that "Defendants" or the "Individual Defendants" engaged in race discrimination against unnamed African-Americans or condoned it. (SAC ¶ 242; *see also* SAC ¶¶ 2, 7, 67, 73, 76, 78, 99, 102-104, 107-109, 113-114, 117, 120-121, 123, 125-127, 130-131, 133, 135, 137-138 and 143-145.) Such vague allegations are insufficient as a matter of law. *See, e.g., Brooks,* 578 F.3d at 580-582 (in affirming the dismissal of a Section 1983 claim for failure to state a claim, the court noted that the district court was correct to find the plaintiff's allegations that "'one or more of the Defendants' had engaged in certain acts or deprived him of his constitutional rights" were deficient).

Simply put, plaintiffs asserting Section 1981 or 1983 claims may not "lump[] each of the individual Defendants together without regard to their respective roles, if any," in the discrimination because liability under Sections 1981 and 1983 "is premised on individualized fault." *Harrison v. Ill. Dep't of Transp.*, No. 10-cv-4674, 2011 U.S. Dist. LEXIS 66145, at *20-24 (N.D. Ill. June 21, 2011) (Section 1981 and 1983 claims alleging race discrimination and retaliation based on transfer lacked details to "elucidate key facts, such as whether each or any of the[] Defendants actually had the authority to transfer Plaintiff," and instead alleged that the individual defendants "were all directly involved;" court found such a "naked assertion" insufficient and dismissed the complaint). Plaintiffs cannot simply claim "discrimination" generally and then fail to identify the roles that each Individual Defendant had in the alleged acts that form the basis of the claim of discrimination. However, that is all Plaintiffs do here and, as such, they cannot demonstrate direct personal involvement by any of the Individual Defendants.

Furthermore, although supervisors may be subject to Section 1983 liability where they "condoned or acquiesced in a subordinate's unconstitutional" misconduct, *Minix v. Canarecci,* 597 F.3d 824, 833-34 (7th Cir. 2010), Plaintiffs do not plead that the Individual Defendants even knew about any of the specific acts of which they complain other than those the Individual Defendants were allegedly involved in. Nor do Plaintiffs allege that any complaints were made directly to the Individual Defendants or that the Individual Defendants ever learned of the alleged complaints. Moreover, Plaintiffs do not specifically allege that Defendants Lynch and Pope condoned or acquiesced in any specific misconduct at all. At most, Plaintiffs plead that Stark "condone[d] and encourage[d] racist remarks and behavior by not disciplining white people" who sent objectionable material African-Americans. (SOF ¶ 83.) However, Plaintiffs provide no details regarding how Stark "condone[d] or encourage[d]" anything. Indeed, they do not even allege that he knew about the alleged "racist remarks and behavior," nor do they allege that they received any such materials from Stark's subordinates. (*Id.*)

Beyond that, Plaintiffs allege only that "Defendants" or the "Individual Defendants" otherwise condoned or encouraged the alleged conduct at issue. (*See* SAC ¶¶ 7, 67, 73, 76, 92, 137, 157, 162, 166-167, 173, 176, 178, 181, 183, 187, 190, 192, 195 and 197). These conclusory allegations fall short of plausibly suggesting that the Individual Defendants knowingly acted with deliberate indifference to Plaintiffs' rights or condoned the alleged misconduct. *Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (stating that the supervisor must "act either knowingly or with deliberate, reckless indifference"). Such conclusory allegations are insufficient to establish their personal involvement, as required under Section 1983. Indeed, the Seventh Circuit has held that allegations like those of the Plaintiffs, which merely recite elements of Plaintiffs' cause of action in "wholly conclusory terms," do not meet the pleading standard for a plausible claim for relief under *Iqbal* and *Twombly. See Adams,* 742 F.3d at 733 (affirming dismissal of complaint where "[f]or all its

heft, the amended complaint alludes to disparate impact in wholly conclusory terms. In several places the complaint uses the words 'disproportionate' and 'impermissible impact' and other synonyms, but those are bare legal conclusions, not facts."). *See also, e.g., Gonzalez-Koeneke v. Rockford Dist. 205*, No. 12 C 50311, 2014 U.S. Dist. LEXIS 185947, at *13-14 (N.D. Ill. June 16, 2014) (dismissing Section 1983 claim against individual defendants where, *inter alia*, the only allegations in the complaint regarding their personal involvement were legal conclusions).

### E. Plaintiffs' Illinois Civil Rights Act Claim in Count VI Fails.

In Count VI, Plaintiffs repackage the allegations of race discrimination underlying their *Monell* claims as a claim against the City under the Illinois Civil Rights Act of 2003 ("ICRA"), 740 ILCS 23/1 *et seq*. Plaintiffs add only vague boilerplate language in Count VI regarding the City's alleged "criteria and methods of administration" that led to Plaintiffs purportedly being discriminated against based on their race – not specific facts or new theories. (*See* SAC ¶¶ 244-249). As such, Plaintiffs' ICRA claim is nothing more than a recapitulation of Plaintiffs' deficient *Monell* discrimination claim against the City. Accordingly, Count VI should be dismissed for the same reasons that Plaintiffs' *Monell* claims against the City should be dismissed because they are subject to the same minimal pleading standards.

Indeed, an ICRA claim is to be treated as a federal discrimination claim under a different name. As the Seventh Circuit has held, "the ICRA was not intended to create new rights but merely created a new venue – state court – for discrimination claims under federal law." *Dunnet Bay Constr. Co.*, 799 F.3d 676, 697 (7th Cir. 2015); *see also Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (the ICRA "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon") (emphasis in original); *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 856 N.E.2d 460, 467 (Ill. App. Ct. 2006). Thus, courts "look to cases concerning alleged violations of

federal civil rights statutes to guide [their] interpretation of the [ICRA]." *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. 2015) (quoting *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.3d 976, 980 (Ill. App. Ct. 2013)); *see also Jackson*, 696 F. Supp. 2d at 964 (applying statistical evidence requirements for federal disparate impact discrimination claims to ICRA claim). As demonstrated in Section __, *supra*, Plaintiffs' Section 1983 race discrimination claim against the City is deficient under *Iqbal*, *Twombly* and Seventh Circuit precedent when packaged as a *Monell* claim. Thus, it is similarly deficient when packaged as an ICRA claim. Thus, the Court should dismiss Count VI. *Cf. Rao v. Gondi*, No. 14 C 66, 2017 U.S. Dist. LEXIS 86152, at *69-70 (N.D. Ill. June 5, 2017) (ruling that plaintiff's ICRA claim failed for the same reasons as his Title VII discrimination claim after determining that the applicable standards were the same).

## II.    THIS COURT SHOULD STRIKE PLAINTIFFS' CLASS CLAIMS.

### A.    Legal Standard

Rule 12(f) permits courts to strike any immaterial or impertinent matter from a pleading. Fed. R. Civ. P. 12(f). "Where pleadings are facially defective and definitively establish that a class action cannot be maintained, the court can properly grant a motion to strike class allegations at the pleadings stage." *Baker* v. *Home Depot USA, Inc.,* No. 11-CV -6768, 2013 U.S. Dist. LEXIS 9377, at *12 (N.D. Ill. Jan. 24, 2013) (internal quotation omitted). Indeed, courts have found early motions to strike class allegations "an appropriate device" to determine whether the case will proceed as a class action. *See, e.g., Lee v. The Children's Place Retail Stores, Inc.,* No. 14-CV-03258, 2014 U.S. Dist. LEXIS 145787, at *2-3 (N.D. Ill. Oct. 8, 2014) (dismissing class claims as a matter of law); *Padron v. Wal-Mart Stores, Inc.,* 783 F. Supp. 2d 1042, 1048 (N.D. Ill. 2011) (dismissing Title VII class action claims at the pleading stage); *Payne v. Abbott Labs.,* No. 97 C 3882, 1999 U.S. Dist. LEXIS 2443, at *16 (N.D. Ill. Mar. 2, 1999) (same); *Sample v. Aldi Inc.,* No. 93 C 3094, 1994 U.S. Dist. LEXIS 1518, at *18 (N.D. Ill. Feb. 8, 1994) (dismissing class action

claims alleging racially discriminatory hiring policies at the pleading stage). *See also Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification.").

**B.** **The Standard of Review for Motions to Strike Class Claims Pursuant to Federal Rule of Civil Procedure 23**

Pursuant to Rule 23, courts should ascertain the viability of a proposed class "at an early practicable time" after the commencement of the action. Fed. R. Civ. P. 23(c)(1). In some cases, this can be determined from the pleadings alone. *See Gen. Tel. Co.* v. *Falcon,* 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiffs' claim . . . ."); *Pilgrim* v. *Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming district court order striking class claims before plaintiffs made a motion to certify the class because a decision on class certification should be made "at an early practicable time" and the class claims could never be certified as a matter of law). Courts "need not delay a ruling on certification if . . . additional discovery would not be useful in resolving the class determination." *Kasalo,* 656 F.3d at 563. Rule 23 further provides that a court may order that "the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D).

**C.** **Plaintiffs' Race Discrimination Class Claims Should Be Stricken.**

Plaintiffs seek to certify three sub-classes of Plaintiffs pursuant to Rule 23(a), (b) & (c)(5) of the Federal Rules of Civil Procedure, and in the alternative, seek "issue certification" pursuant to Rule 23(b)(4). (SAC, ¶¶ 198 - 209). Plaintiffs' putative Class is defined as:

> Class *contains or may be divided into three* Sub-Classes under Fed. R. Civ. P. 23(c)(5) of African American Water Department employees: a **Promotions Sub-Class** consisting of all African American Water

Department employees who applied for a promotion and did not receive it; a **Transfer and Shift Selection Sub-Class**, consisting of all African American Water department employees who applied for transfers or better shifts and did not receive them; and an **Overtime Sub-Class** consisting of all African American Water department employees who sought and were eligible to work overtime and did not receive it.

(*Id.* ¶198)(*italics* emphasis added). Consistent with Rule 23, "a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo*, 656 F.3d at 563. Plaintiffs' class allegations and claims are still legally and factually flawed and should be stricken from the pleadings, in this their second attempt to raise class allegations pursuant to Rule 23.

In their original complaint, Plaintiffs included multiple specific facts about each named Plaintiff's position/title that made it obvious there was no typicality or commonality amongst their individual experiences at the Department of Water Management. (*See* Dkt #1, Compl. ¶¶ 11(g), 12(g), 14(g), 15(f), 16(g), and 61). They had no response to Defendant City's motion to dismiss the class allegations in their original complaint. Instead, they filed an amended complaint which conveniently removed all identifying information about each named Plaintiff. Apparently Plaintiffs hoped by removing positions/titles and work locations, and by using the phrase "Sub-class" they could avoid an order striking their class claims. Instead, the amendments they made to their Amended Complaint (Dkt. #32) and those made in response to Defendant's second motion to dismiss and strike, raise more questions than answers about the viability of their proposed class(es).

In fact, Plaintiffs have made their class allegations even vaguer and harder to decipher. What does the word "or" in the following phrase mean: "Class contains *or* may be divided into three Sub-Classes?" (SAC, ¶198). Is there one Class or are there 3 separate Classes? How many members are in each class? Are there some African-American employees who are in more than one class? If so, how many members overlap classes? Since the only dates Plaintiffs have *ever* included in any iteration of their Complaint, are dates of hire and retirement, is it Plaintiffs' intention that the Class(es)

contain *every single African-American employee who was denied a promotion, transfer or overtime from 1983 to the present, regardless of applicable statutes of limitations*? The reality is Plaintiffs' counsel hopes the Court defines the classes and allows class allegations to stand when they have failed to identify any facts to support a class(es). This is obvious from the inclusion of this new sentence in their Second Amended Complaint: "The foregoing Class and sub-classes are subject to revision upon completion of appropriate discovery." (*Id.*).

Simply put, Plaintiffs' claims should be struck for their failure to make any effort to comply with Rule 23(c)(5)'s requirement that *each sub-class* comply with the requirements of Rule 23 – just like a single class. Finally, as Plaintiffs make no effort whatsoever to identify the particular issues which supposedly justify issue certification, their single allegation that "alternatively, the issues determining liability and equitable relief are appropriate for issue certification under Rule 23(c)(4), as are other common issues," (SAC, ¶209), should be struck.

A review of the basic job information for each individually-named Plaintiff raises significant issues immediately. Significantly, of the 9 named Plaintiffs, only 2 share the same job title; there are 8 different job titles in this group. *See* fn.3. Although Plaintiffs conveniently removed all specific information relating to the named Plaintiffs' titles, unions and job locations in their amended complaint and second amended complaint, Plaintiffs are (or in 2 cases, *were*) public employees for whom employment information such as title and salary is freely available on the City's website. *See* https://data.cityofchicago.org/Administration-Finance/Current-Employee-Names-Salaries-and-Position-Title/xzkq-xp2w/data. The named Plaintiffs' titles, employment status, job locations, bargaining units, and salaries are as follows:

| Name | Title | Status | Job Location | Bargaining Unit |
|------|-------|--------|--------------|-----------------|
| Edmond | Operating Engineer A | *Retired* | South (Sawyer) Water Plant | Local 399 |
| Ealy | Chief Oper.Eng. | Current | South (Sawyer) Water Plant | Local 399 |
| Cooper | Water Chemist II | Current | South (Sawyer) Water Plant | AFSCME |

| Hill | Staff Assistant | *Retired* | Jardine Water Plant | AFSCME |
| Glenn | Foreman of Station Laborers | Current | South (Sawyer) Water Plant | Local 73 |
| Laws | Construction Laborer | Current | 95th and Genoa | Local 1092 |
| Smith | Construction Laborer | Current | Meter Shop | Local 1092 |
| Anderson | Plumber & Foreman of Water Pipe Constr. | Current | Central District | Local 130 |
| Henry | Plumber & Plumbing Investigator | Current | South District | Local 130 |

(*Id*; Compl. ¶¶11(g), 12(g), 14(g), 15(f), 16(g) and 61)).

Additionally, the Department of Water Management employs approximately 2000 employees, (Dkt. #84-1, ¶47) and consists of 5 separate Bureaus: 1) the Bureau of Administrative Support; 2) the Bureau of Engineering Services; 3) the Bureau of Meter Services; 4) the Bureau of Operations & Distribution; and 5) the Bureau of Water Supply. *See* http://my.cityofchicago.org/intranet/homepage/depts/water-management/bureaus.html. Finally, there are no less than 159 titles for these 2000 some odd employees within the Department of Water Management, ranging from watchman, to Chief Filtration Engineer to motor truck driver to Foreman of Water Pipe Construction. *See* https://data.cityofchicago.org/Administration-Finance/Current-Employee-Names-Salaries-and-Position-Title/xzkq-xp2w/data.

## D. Plaintiffs Cannot Satisfy the Requirements of Rule 23(a).

In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011), the Supreme Court noted that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." To successfully invoke that exception, plaintiffs must satisfy the four requirements of Fed. R. Civ. P. 23(a) and also the requirements of Rule 23(b). The four requirements of Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition,

Plaintiffs must show that they have satisfied at least one of the three following requirements in Rule 23(b):

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S. Ct. at 2551. As emphasized in *Dukes*, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." 131 S. Ct. at 2551 (emphasis in original). This burden remains on Plaintiffs even if the defendant initiates the court's review of the class allegations. *Lee*, 2014 U.S. Dist. LEXIS 145787, at *6, *citing Oshana v. Coca-Cola Co.,* 472 F. 3d 506, 513 (7th Cir. 2006) ("it is the plaintiff's burden to prove the class should be certified").

Where plaintiffs fail to make such a showing, courts deny class certification. *See* Fed. R. Civ. P. 23(d)(1)(D) (permitting courts to order the pleadings be amended to eliminate class action allegations); *Bond v. Nat'l City Bank of Pa.*, No. 05-cv-0681, 2006 U.S. Dist. LEXIS 41876, at *10-12 (W.D. Pa. June 22, 2006) (holding plaintiffs could not meet commonality and typicality requirements

of Rule 23 because they pointed to no common policy of not compensating proposed class members for all hours worked).[13] Here, as discussed below, at a minimum, Plaintiffs cannot satisfy the numerosity, commonality or typicality requirements of Rule 23(a), nor can they show that prosecution of separate actions would be dispositive of the interests of other members of the proposed class or that there are questions of law and fact common to members of the proposed class that predominate over questions affecting only individual members as required by Rule 23(b). Consequently, this Court should strike Plaintiffs' race discrimination class action allegations.

### 1. *Numerosity*

First, the Amended Complaint fails to establish any possibility that Rule 23's numerosity requirement could be met, even if discovery were to be taken. Plaintiffs make the merely conclusory assertion that "[t]he Class includes all African-Americans who worked at the City of Chicago Department of Water Management and is in excess of five hundred (500) members." (SAC, ¶200.) However, they fail to specify if this 500 includes past employees, or to which subclass(es) these 500 class members belong. Each subclass has to be treated as a class under Rule 23. Fed. R. Civ. P. 23(c)(5). Plaintiffs make no showing whatsoever that each of their three proposed subclasses satisfy the standards of Rule 23.

Regardless, Plaintiffs fail to establish the numerosity standard as this allegation is merely a conclusory statement about a broad span of presumably past and current employees. Given the diverse group of named Plaintiffs, minimally in terms of their titles, locations and salaries (some hourly workers, some managers with annual salaries) there is a no basis upon which to conclude that

---

[13] *See also Dukes*, 131 S. Ct. at 2554, 2556-57 (holding that plaintiffs failed to satisfy commonality requirement because they pointed to no unlawful policy of discrimination); *Webb v. Merck & Co.*, 206 F.R.D. 399, 408 (E.D. Pa. 2002) (denying class certification because plaintiffs' claims were too individualized to satisfy commonality and typicality requirements of Rule 23(a)).

the other 500 African-American employees were subjected to a common (and still unidentified) policy of race discrimination that satisfies Rule 23(a)'s numerosity requirement. *See, e.g., Snelling v. ATC Healthcare Servs.*, No. 2:11-CV-00983, 2012 U.S. Dist. LEXIS 172052, at * 17 (S.D. Ohio Dec. 4, 2012) (denying plaintiff's class certification motion because she did not satisfy the numerosity requirement as the court would not speculate as to the potential class size and plaintiff "failed to provide significant evidence, beyond conclusory allegations, that other violations occurred"); *Gordon v. Amer.'s Collectibles Network, Inc.*, No. 3:09-CV-206, 2010 U.S. Dist. LEXIS 50842, at *9 (E.D. Tenn. May 23, 2010) (dismissing plaintiff's class claims because the plaintiff's complaint, which contained only conclusory allegations of interrelatedness, did not satisfy the numerosity requirement that the limits of the class be defined with some specificity).

### 2. *Commonality*

Second, Plaintiffs cannot establish Rule 23(a)'s commonality requirement because their class claims present no common questions of fact or law. *See, e.g., Timoneri v. Speedway, LLC*, 186 F. Supp. 3d 756 (N.D. Ohio 2016) (dismissing plaintiff's class claims because plaintiff's own allegations showed he could not show commonality); *Payne*, 1999 U.S. Dist. LEXIS 2443, at *16 (dismissing class claims alleging Title VII race discrimination where, *inter alia*, plaintiff's pleading did not establish commonality). To satisfy the commonality requirement of Rule 23, Plaintiffs must show the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In *Dukes*, the U.S. Supreme Court unequivocally held that Rule 23 requires a plaintiff to allege facts that show "a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350; *see also Simmons v. Broadway Home Improvement, Inc.*, No. 1:14-cv-483-JMS-DML, 2014 U.S. Dist. LEXIS 102420, at *3 (S.D. Ind. July 28, 2014) (Plaintiffs must also demonstrate "that common questions predominate among members of the class."). In this context,

class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each one of the claims in one stroke. *Dukes*, 564 U.S. at 350. The Supreme Court summed up this standard as follows:

> What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.*

*Id.* (emphasis added).

Here, there is no such common contention. The commonality requirement of Rule 23(a) demands that all class members have suffered the same alleged injury, such that the named plaintiff's claim and the claims of putative class members will share common questions of law or fact and that the individual's claim will be typical of class claims. *Dukes*, 564 U.S. at 353 (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 (1982)). "The issue for certification is whether the Plaintiffs are similarly situated—whether a common question exists *that can be answered without individualized inquiries.*" *Strait v. Belcan Eng'g Group, Inc.*, 911 F. Supp. 2d 709, 720 (N.D. Ill. 2012) (emphasis added). Merely posing a common question is not enough to certify the class. Rather, a court must determine whether the common question can be resolved based on common inquiries and proof or, instead, whether it will need to conduct individualized inquiries. *Id.* at 721. Where, as here, the Court must make individualized inquiries to resolve liability, then proceeding as a collective action is not appropriate. *Id.*; *see also Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP-MJD, 2016 U.S. Dist. LEXIS 7400, at *15 (S.D. Ind. Jan. 22, 2016) (denying class certification because individualized proof was required to establish each of the class member's claims).

Here, Plaintiffs are not "similarly situated" to the class members they purport to represent because each potential class member of each of three proposed classes' race discrimination claim will require detailed factual analyses and individualized legal determinations. Consider the following questions to demonstrate the individualized nature of Plaintiffs' proposed classes:

- <u>What was the title, union affiliation (and applicable collective bargaining agreement), Bureau and work location of the employee?</u>
- <u>Who are the decisionmakers for each of the actions alleged by the Plaintiffs and members of the putative classes?</u>
- <u>Was the employee eligible to work overtime? When?</u>
- <u>Did the employee request to work overtime and who denied such request?</u>
- <u>Did the employee request a transfer? When and from whom?</u>
- <u>Did the employee submit an application for a promotion? When and for what position? Did they meet the minimum requirements? Did they pass the written exam? Who made the promotional decision? Who was selected for the promotion and why?</u>
- <u>Did the employee request a specific assignment? When and from whom?</u>
- <u>Did the employee request a specific shift? When and from whom?</u>

In their Second Amended Complaint, Plaintiffs' own individualized experiences belie any argument there was a common policy of discrimination. Although 5 of the 9 Plaintiffs claim they were not given overtime because of their race (SAC, ¶¶ 171, 176, 181, 190, 195), the Plaintiff with the highest title, Chief Operating Officer, Katherine Ealy, does not allege she was denied overtime.[14] Plaintiffs cannot assert that their own contradictory allegations can provide common answers to the examples of the questions above or to the fundamental question of whether Defendants maintained and applied a policy of race discrimination across the putative class.

One way of establishing commonality, according to *Dukes*, is to present "significant proof" that Defendant City "operated under a general policy of discrimination." *Dukes*, 564 U.S. at 353. Plaintiffs offer no support for their contention regarding such a universal policy, especially given the differences in job location, exempt status, job title, bargaining union membership and decision-makers. There is simply no attempt to connect the offensive emails detailed in their complaint, and the specific and individualized employment decisions to which the 9 Plaintiffs raise, conveniently without referring to any years, much less dates, or decisionmakers, with the exception of Plaintiff

---

[14] In response to the City's Motion to Dismiss their Original Complaint, Plaintiffs removed former Chief Filtration Engineer Adebola Fagbemi from the lawsuit. In its Motion, the City noted that before Fagbemi was terminated for cause in 2010 he was in charge of two water treatment plants where he supervised approximately 150 employees. *See* Dkt. # 21-1, p. 6, fn 4, City's Memo. in Supp. of Motion to Dis. & Str. Like Ealy, Fagbemi did not allege he failed to get overtime. *See* Dkt. #1, ¶¶ 197-201.

Anderson. They have not alleged the "significant proof" demanded by *Dukes*, and in fact make plain that their claims are not representative of those in the defined class. What do the promotional and overtime opportunities available to a Chief Operating Engineer making $118,000/year working in the Bureau of Water Supply (Ealy) have to do with those of a plumber making $48.00/hour in the Bureau of Distribution (Henry)? 564 U.S. at 357 (citing *Falcon*, 457 U.S. at 158) (one named plaintiff's experience of alleged discrimination is insufficient to permit inference that discriminatory treatment is typical of employer's employment practices).

Finally, if this case were permitted to proceed as three subclasses, the Court would still need to analyze a variety of individualized defenses that Defendants may have in response to the claims of each individual class member, further defeating commonality under Rule 23(a). *See Semenko v. Wendy's Int'l*, No. 12-cv-0836, 2013 U.S. Dist. LEXIS 52582, at *21 (W.D. Pa. Apr. 12, 2013). Those defenses may relate to a myriad of individualized legitimate reasons for Defendants' actions based on the employee's title, location, supervisor, bargaining unit and other potential defenses. *Fairchild v. All Am. Check Cashing, Inc.,* 815 F.3d 959, 967 (5th Cir. 2016) (determining "the record was replete with legitimate, non-discrimination reasons for [plaintiff's] termination: her contentious relationship with her manager; the problems she caused regarding store morale and customer service; and her repeated performance-related problems"); *Puffer,* 255 F.R.D. at 460-61 (rejecting class certification on commonality grounds where putative class members "were supervised and reviewed by many different people; had a wide variety of salary levels, jobs, and responsibilities; and had annual goals individually tailored to them.") *aff'd* 675 F.3d 709 (7th Cir. 2012); *Allen v. Chicago Transit Auth.,* No. 99 C 7614, 2000 U.S. Dist. LEXIS 11043, at *8 (N.D. Ill. July 28, 2000) (finding that named plaintiffs bringing Title VII and Section 1981 claims failed to satisfy the commonality requirement where challenged promotion and pay decisions were made in different ways by different people in different departments); *Bennett v. Roberts,* No. 96 C 6917, 2000 U.S. Dist. LEXIS 1693, at *22-23

(N.D. Ill. Feb. 14, 2000) (holding that plaintiff failed to establish commonality as to class claims alleging discriminatory hiring and promotional decisions, noting that these claims would depend on too many individualized factors, such as the applicant's qualifications, previous work performance and duties, and number of persons who applied).

One of the main purposes of a class action is judicial economy, but judicial economy is not realized when adjudicating the class claims will require "multiple mini-trials, each requiring individual proofs." *Brown v. SBC Comm'cns, Inc.*, No. 05-cv-777-JPG, 2009 U.S. Dist. LEXIS 7987, at *9 (S.D. Ill. Feb. 4, 2009). When individualized issues predominate in a proposed class action, this creates unfairness to the defendant and manageability problems for the court. Accordingly, many courts in this district and others have affirmed that class certification is not appropriate where a fact-specific analysis of each individual plaintiff's circumstances would be required to determine liability.[15]

### 3. *Typicality*

The typicality requirement of Rule 23(a)(3) requires Plaintiffs to show their claims are typical of the claims asserted by other potential class members. *Roberto v. UNUMProvident Corp.*, 385 Fed. Appx. 423, 430-31 (6th Cir. 2009) ("The premise of the typicality requirement is simply stated: as

---

[15] *See, e.g., Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 460-461 (N.D. Ill. 2009) (noting that "[s]everal decisions in this district have denied class certification in discrimination cases where a plaintiff's class definition implicated numerous, independent decision-makers, resulting in the need for numerous individual inquiries," collecting cases and denying class certification, as discussed *infra*); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 05 C 6583, 2010 U.S. Dist. LEXIS 80002, at *22-23 (N.D. Ill. Aug. 9, 2010) (finding commonality requirement not met on race discrimination claim where individuals "worked in different offices, had different supervisors, and allegedly experienced vastly different forms of discrimination"); *Sandoval v. City of Chicago*, No. 07 C 2835, 2007 U.S. Dist. LEXIS 77829, at *15 (N.D. Ill. Oct. 18, 2007) (finding no commonality on class discrimination claim, noting "discrimination based solely on membership in a protected class, which manifests itself in a different set of facts for each employee is not enough to satisfy the commonality requirement") (internal quotation omitted); *Bennett v. Roberts*, No. 96 C 6917, 2000 U.S. Dist. LEXIS 8351, at *9-13 (N.D. Ill. June 14, 2000) (further discussed *infra*); *Dicker v. Allstate Life Ins. Co.*, No. 89 C 4982, 1990 U.S. Dist. LEXIS 8586, at *13-14 (N.D. Ill. July 11, 1990) (commonality not demonstrated for disparate treatment discrimination claim where "[t]he individual employment record of each class member would become the focus" and judicial economy undermined).

goes the claim of the named plaintiff, so go the claims of the class.") (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). As demonstrated above with regard to the commonality requirement, it is clear on the face of the Amended Complaint that Plaintiffs' claims look substantively different than claims of other putative class members, even if discovery were permitted. *See, e.g., Payne*, 1999 U.S. Dist. LEXIS 2443, at \*16 (dismissing class claims where, *inter alia*, plaintiff's pleading did not establish typicality). In fact, Plaintiffs fail to allege which named Plaintiffs belong in the three subclasses – never mind whether they can adequately represent the claims of the subclasses.

## E. Plaintiffs Fail to Meet the Requirements of Rule 23(b).

Additionally, a party seeking class certification must show the proposed class satisfies one of the requirements of Rule 23(b). *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Although Plaintiffs seek certification under 23(b)(1), 23(b)(2) and 23(b)(3), they cannot meet any of these provisions.

Rule 23(b)(1)(A) "applies where separate actions by or against individual class members would create a risk of 'establish[ing] incompatible standards of conduct for the party opposing the class,' such as 'where the party is obliged by law to treat the members of the class alike,'" *Wal-Mart Store, Inc., Dukes et al.*, 564 U.S. 338, 361, fn. 11 (2011), quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231 (1997). There are simply no facts implicating this provision. The same is true for subsection (B). Here, the members of the purported class are in different positions, departments, subjected to different CBAs and supervised by different individuals making the decisions. Plaintiffs much show that "individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would

39

substantially impair or impede their ability to protect their interests,'...such as in 'limited fund' cases, ... in which numerous persons make claims against a fund insufficient to satisfy all claims." *Id.* Plaintiffs cannot satisfy this provision. Approximately 2000 employees fall into one of 159 different titles/positions across 5 different bureaus within the Department of Water Management. https://data.cityofchicago.org/Administration-Finance/Current-Employee-Names-Salaries-and-Position-Title/xzkq-xp2w/data. As a result, the adjudication of each individual's claim will most assuredly be different and this is exactly why Plaintiffs' class allegations should be struck. The adjudication of a construction laborer in the Bureau of Water Treatment's claim he was not offered overtime based on race is not dispositive of a motor truck driver in the Bureau of Operations & Distribution's claim he was denied overtime based on race. They work in different bureaus, with different supervisors, different shift schedules and are in different unions.

Under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification under Rule 23(b)(2) is generally limited to cases "when the main relief sought is injunctive or declaratory, and the damages are only incidental." *In re Allstate Insurance Co.*, 400 F.3d 505, 507 (7th Cir. 2005). The Seventh Circuit has held that the meaning of "incidental" damages "is that the computation of damages is mechanical, without the need for individual calculation, so that a separate damages suit by individual class members would be a waste of resources." *Id.* (internal citation and quotation omitted). Here, Plaintiffs seek substantial monetary damages—including lost wages, back pay, front pay, pre-and post-judgment interest, compensation for lost benefits, and other compensatory damages. (*See* SAC, Counts I-VI *ad damnum).* Such damages would necessarily entail individual calculations of the amount of back, front, and other compensatory damages to which class members were entitled. Accordingly, certification under Rule 23(b)(2) is inappropriate given the relief being

sought by Plaintiffs. *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 05 C 6583, 2010 U.S. Dist. LEXIS 80002, at *28 (N.D. Ill. Aug. 9, 2010) (denying class certification under Rule 23(b)(2) where class sought significant damage awards).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance criterion "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). Plaintiffs cannot meet the predominance requirement. The lack of a common policy and predominance of individual questions of fact also preclude Plaintiffs from meeting their burden under Rule 23(b)(3) to show that prosecution of their individual actions would be dispositive of the claims of other members of the class. Rather, each case would rest on a series of individualized inquiries such as:

- whether and when each employee applied for a promotion;
- whether and when each employee requested a transfer;
- whether and when each employee requested a specific assignment;
- whether and when each employee requested a specific shift;
- whether and when each employee was eligible to be offered overtime; and
- to which bargaining unit was each employee a member and how it defined seniority.

The determinations from these inquiries would have no effect on the claims of any other employee and necessarily must rely on proof that does not apply to any other putative class members. Consequently, this Court should strike the race discrimination class action allegations of Plaintiffs' Amended Complaint.

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss all claims against them and strike Plaintiffs' class claims with prejudice.

41

Dated:  April 20, 2018

Respectfully submitted,

EDWARD N. SISKEL,
Corporation Counsel of the City

By:     *s/Melanie Patrick Neely*
MELANIE PATRICK NEELY
Supervising Assistant Corporation Counsel
SUSAN M. O'KEEFE
Deputy Corporation Counsel

City of Chicago
30 N. LaSalle St., Ste. 1020
Chicago, IL 60602
(312) 744-5453/742-9036

## Table of Authorities

**Federal Cases**

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ...................................................16, 25

*Allen v. Chicago Transit Auth.*, No. 99 C 7614, 2000 U.S. Dist. LEXIS 11043 (N.D. Ill. July 28, 2000)..............38

*Allstate Insurance Co.*, 400 F.3d 505 (7th Cir. 2005)..................................................................40

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231 (1997)......................................40, 41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), 129 S. Ct. 1937 (2009)............................................. 7, 11, 18, 25, 27

*Baker v. Home Depot USA, Inc.*, No. II-CV -6768, 2013 WL 271666 (N.D. Ill. Jan. 24, 2013).....................27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)...................................................................7

*Bennett v. Roberts*, No. 96 C 6917, 2000 U.S. Dist. LEXIS 1693 (N.D. Ill. Feb. 14, 2000)....................................38

*Bond v. Nat'l City Bank of Pa.*, No. 05-cv-0681, 2006 U.S. Dist. LEXIS 41876 (W.D. Pa. June 22, 2006) .........33

*Bressner v. Ambroziak*, 379 F.3d 478 (7th Cir. 2004) ....................................................................2

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009)............................................................... 10, 22, 24

*Brown v. SBC Comm'cns, Inc.*, No. 05-cv-777-JPG, 2009 U.S. Dist. LEXIS 7987 (S.D. Ill. Feb. 4, 2009) ...........38

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) .......................................................................9

*Campbell v. Forest Preserve Dist. of Cook County*, Ill., 752 F.3d 665 (7th Cir. 2014) ................................8, 21

*Cox v. Sherman Capital LLC*, No. 1:12-cv-01654-TWP-MJD, 2016 U.S. Dist. LEXIS 7400 (S.D. Ind. Jan. 22, 2016)..........................................................................................................35

*Cunliffe v. Bd. of Ed., et al.*, 51 F.Supp.3d 721 (N.D. Ill. June 20, 2014) ..............................................8

*Day v. River Forest Sch. Dist.*, No. 10 C 4426, 2011 U.S. Dist. LEXIS 28201 (N.D. Ill. Mar. 17, 2011) .............19

*Delaware State College v. Ricks*, 449 U.S. 250 (1980) .................................................................9

*Dicker v. Allstate Life Ins. Co.*, No. 89 C 4982, 1990 U.S. Dist. LEXIS 8586 (N.D. Ill. July 11, 1990)................38

*Drager v. Village of Bellwood*, 969 F. Supp. 2d 971 (N.D. Ill. 2013)...................................................15

*Duda v. Bd. of Educ. of Franklin Park Public Sch. Dist. No. 84*, 133 F.3d 1054 (7th Cir. 1998) ...........................18

*Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)...............................................................22

*Dunnet Bay Constr. Co.*, 799 F.3d 676 (7th Cir. 2015) ...............................................................26

*Echezarreta v. Kemmeren*, No. 10 C 50092, 2013 U.S. Dist. LEXIS 114141  (N.D. Ill. Aug. 13, 2013) ...............16

*Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016).................................................37

*Falk v. Perez*, 973 F. Supp. 2d 850 (N.D. Ill. 2013).....................................................................16

*Florek v. Vill. of Mundelein*, No. 05 C 6402, 2010 U.S. Dist. LEXIS 31635 (N.D. Ill. Mar. 31, 2010)................19

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ........................................28, 35, 37

*Gonzalez-Koeneke v. Rockford Dist. 205*, No. 12 C 50311, 2014 U.S. Dist. LEXIS 185947 (N.D. Ill. June 16, 2014)........................................................................................................26

*Gordon v. Amer.'s Collectibles Network, Inc.*, No. 3:09-CV-206, 2010 U.S. Dist. LEXIS 50842 (E.D. Tenn. May 23, 2010)..................................................................................................34

*Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) ..................................................................9

*Harrison v. Ill. Dep't of Transp.*, No. 10-cv-4674, 2011 U.S. Dist. LEXIS 66145 (N.D. Ill. June 21, 2011) .........24

*Horowitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602 (7th Cir. 2001) ...................................18

*Jackson v. Cerpa*, 696 F. Supp. 2d 962 (N.D. Ill. 2010)..........................................................26, 27

*Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011) .................................................28, 29

*Lee v. The Children's Place Retail Stores, Inc.*, No. 14-CV-03258, 2014 U.S. Dist. LEXIS 145787.................27, 32

*Lewis v. City of Chicago*, 496 F.3dd 645 (7th Cir. 2007) ..............................................................17

*Matthews v. City of E. St. Louis*, 675 F.3d 703 (7th Cir. 2012) ......................................................25

*Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014)...........................................................................22

*McCauley v. City of Chicago,* 671 F.3d 611 (7th Cir. 2011) .................................................................10, 13

*McCormick v. Miami Univ.,* 693 F.3d 654 (6th Cir. 2012) ...................................................................20, 21

*McGovern v. City of Philadelphia,* 554 F.3d 114 (3d Cir. 2009) .................................................................. 8

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* No. 05 C 6583, 2010 U.S. Dist. LEXIS 80002 (N.D. Ill. Aug. 9, 2010) .........................................................................................................................38, 41

*McTigue v. City of Chicago,* 60 F.3d 381 (7th Cir. 1995) ............................................................................ 9

*Minix v. Canarecci,* 597 F.3d 824 (7th Cir. 2010) ...................................................................................... 25

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ................................................................................... 9

*Myers v. Joliet Twp. High Sch. Dist.,* No. 12-cv-1866, 2013 U.S. Dist. LEXIS 104655 (N.D. Ill. July 26, 2013) ... 17

*Nitch v. Ester,* No. 16-CV-06033, 2017 U.S. Dist. LEXIS 171338 (N.D. Ill. Oct. 17, 2017) ............................... 21

*O'Leary v. Will Cnty. Sheriff's Office,* No. 12 C 5555, 2013 U.S. Dist. LEXIS 5695 (N.D. Ill. Jan. 15, 2013)........ 19

*Oshana v. Coca-Cola Co.,* 472 F. 3d 506 (7th Cir. 2006) ........................................................................... 32

*Padron v. Wal-Mart Stores, Inc.,* 783 F. Supp. 2d 1042 (N.D. Ill. 2011) ..................................................... 27

*Payne v. Abbott Labs.,* No. 97 C 3882, 1999 U.S. Dist. LEXIS 2443 (N.D. Ill. Mar. 2, 1999) ................. 27, 34, 39

*Payton v. County of Kane,* 308 F.3d 673 (7th Cir. 2002) ........................................................................... 39

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) .................................................................................. 17

*Pilgrim* v. *Universal Health Card, LLC,* 660 F.3d 943 (6th Cir. 2011) ........................................................ 28

*Puffer v. Allstate Ins. Co.,* 255 F.R.D. 450 (N.D. Ill. 2009) .................................................................37, 38

*Radic v. Chicago Transit Auth.,* 73 F.3d 159 (7th Cir. 1996) ..................................................................... 17

*Rao v. Gondi,* No. 14 C 66, 2017 U.S. Dist. LEXIS 86152(N.D. Ill. June 5, 2017) ......................................... 27

*Rascon v. Hardiman,* 803 F.2d 269 (7th Cir. 1986) ................................................................................... 22

*Roberto v. UNUMProvident Corp.,* 385 Fed. Appx. 423 (6th Cir. 2009) ..................................................... 39

*Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir. 1992) .................................................................................. 39

*Sample v. Aldi Inc.,* 93 C 3094, 1994 U.S. Dist. LEXIS 1518 (N.D. Ill. Feb. 8, 1994)..................................... 27

*Sandoval v. City of Chicago,* No. 07 C 2835, 2007 U.S. Dist. LEXIS 77829 (N.D. Ill. Oct. 18, 2007) ................. 38

*Semenko v. Wendy's Int'l,* No. 12-cv-0836, 2013 U.S. Dist. LEXIS 52582 (W.D. Pa. Apr. 12, 2013) .................. 37

*Simmons v. Broadway Home Improvement, Inc.,* No. 1:14-cv-483-JMS-DML, 2014 U.S. Dist. LEXIS 102420 (S.D. Ind. July 28, 2014).....................................................................................................35

*Smith v. Frac Tech Servs., LLC,* No. 4:09CV00679 JLH, 2011 U.S. Dist. LEXIS 3165 (E.D. Ark. Jan. 11, 2011). .................................................................................................................................................... 39

*Snelling v. ATC Healthcare Servs.,* No. 2:11-CV-00983, 2012 U.S. Dist. LEXIS 172052 (S.D. Ohio Dec. 4, 2012) ........................................................................................................................................34

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388 (6th Cir. 1998).................................................................... 39

*Strait v. Belcan Eng'g Group, Inc.,* 911 F. Supp. 2d 709 (N.D. Ill. 2012) .................................................... 35

*Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir. 1985) .......................................................................... 10

*Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293 (7th Cir. 2009)........................................................14, 15

*Timoneri v. Speedway, LLC,* 186 F. Supp. 3d 756 (N.D. Ohio 2016)............................................................ 34

*Valentino v. Village of S. Chicago Heights,* 575 F.3d 664 (7th Cir. 2009) .................................................12, 17

*Walker v. Sheahan,* 526 F.3d 973 (7th Cir. 2008) ..................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), 564 U.S. 338 (2011) ...............................31, 32, 33, 35, 36, 39

*Waters v. City of Chicago,* 580 F.3d 575 (7th Cir. 2009) ........................................................................... 16

*Watkins v. United States,* 854 F.3d 947 (7th Cir. 2017)............................................................................... 6

*Webb v. Merck & Co.,* 206 F.R.D. 399 (E.D. Pa. 2002)............................................................................... 33

*Weiler v. Vill. of Oak Lawn,* 86 F. Supp. 3d 874 (N.D. Ill. 2015) ............................................................... 27

*White v. City of Chicago,* No. 11-cv-7802, 2014 U.S. Dist. LEXIS 31738 (N.D. Ill. Mar. 12, 2014) .................... 15

*Wuerffel v. Cook Cnty. Sheriff's Office*, No. 14 C 3990, 2016 U.S. Dist. LEXIS 55723 (N.D. Ill. Apr. 27, 2016)...15

**State Cases**

*Cent. Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.3d 976 (Ill. App. Ct. 2013) ................................................27
*Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 856 N.E.2d 460 (Ill. App. Ct. 2006)............................................................26

**State Statutes**

740 ILCS 23/1 *et seq* .....................................................................................................................................................26

**Federal Rules and Statutes**

Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) ...........................................................................................................39
Fed. R. Civ. P. 23(b)(2) ................................................................................................................................................40
Fed. R. Civ. P. 23(d)(1)(D) ..........................................................................................................................................33
Fed. R. Civ. P. 12(f)..................................................................................................................................................1, 27
Fed. R. Civ. P. 23(a) ............................................................................................................................. 28, 32, 33, 35, 37
Fed. R. Civ. P. 23(a)(2) ................................................................................................................................................34
Fed. R. Civ. P. 23(c)(1) ................................................................................................................................................28
Fed. R. Civ. P. 23(c)(5) ................................................................................................................................................33
Fed. R. Civ. P. 23(d)(1)(D) ..........................................................................................................................................28
Fed. R. Civ. P. 23(a)(3) ................................................................................................................................................39
Fed. R. Civ. P. 2 (b)(2), and (b)(3) ..............................................................................................................................28
Fed. R. Civ. P. 23(b) .............................................................................................................................................31, 33
Fed. R. Civ. P. 23(b)(1)(A) ..........................................................................................................................................39
Fed. R. Civ. P. 23(b)(2) ................................................................................................................................................40
Fed. R. Civ. P. 23(b)(3) ................................................................................................................................................41
Fed. R. Civ. P. 23(c)(1)(A) ..........................................................................................................................................28
Fed. R. Civ. P. 23(c)(4) ................................................................................................................................................30
Fed. R. Civ. P. 23(c)(5) ................................................................................................................................................30
Fed. R. Civ. P. 12(b)(6) ..................................................................................................................................................7
42 U.S.C. § 1981 ................................................................................................................................................8, 20, 21
42 U.S.C. § 1983 ..............................................................................................................................................................8