**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DERRICK EDMOND, KATHERINE
EALY, EDDIE COOPER, JR., VICKI
HILL, ROBERT T. LAWS, JR.,
ANTON GLENN, VERONICA SMITH,
DONALD ANDERSON, and DAVID
HENRY,

                          Plaintiffs,

    v.

THE CITY OF CHICAGO,

                          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:17-cv-04858

The Honorable Matthew F. Kennelly


## DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.  INTRODUCTION........................................................................................................... 1

II.  THE COURT SHOULD DISREGARD PLAINTIFFS' OBJECTIONS TO
DEFENDANT'S STATEMENT OF FACTS AND PLAINTIFFS' STATEMENT OF
ADDITIONAL FACTS. ............................................................................................ 1

III.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS'
DISPARATE TREATMENT CLAIMS UNDER 42 U.S.C. § 1983, 42 U.S.C. § 1981,
AND THE ILLINOIS CIVIL RIGHTS ACT.......................................................... 5

    A.  Plaintiffs do not meet the standard for disparate treatment. ..................................... 5

        1.  Plaintiffs' Claims for Discriminatory or Retaliatory Discipline Fail.......... 5

            a.  Ealy cannot maintain a discipline claim. .................................... 5

            b.  Cooper cannot maintain a discipline claim. ................................ 7

            c.  Glenn cannot maintain a discipline claim. .................................. 8

            d.  Anderson cannot maintain a discipline claim. ............................ 9

        2.  Plaintiffs' Promotion Claims Fail. ............................................................ 10

            a.  Ealy cannot maintain a failure-to-promote claim. ................... 10

            b.  Cooper cannot maintain a failure-to-promote claim. ................ 12

            c.  Laws cannot maintain a failure-to-promote claim. ................... 12

            d.  Smith cannot maintain a failure-to-promote claim. .................. 13

            e.  Anderson cannot maintain a failure-to-promote claim. ............ 14

            f.  Henry cannot maintain a failure-to-promote claim.................... 15

        3.  Plaintiffs' Claims for Allegedly Discriminatory Denial of Overtime Fail.
            ...................................................................................................... 16

            a.  Hill cannot maintain an overtime claim.................................... 17

            b.  Laws cannot maintain an overtime claim. ................................ 18

            c.  Glenn cannot maintain an overtime claim. ............................... 18

            d.  Anderson cannot maintain an overtime claim. ......................... 19

            e.  Henry cannot maintain an overtime claim. ............................... 19

        4.  Plaintiffs' Acting Up Claims Fail. ............................................................ 20

            a.  Ealy cannot maintain an acting up claim. ................................. 20

            b.  Cooper cannot maintain an acting up claim............................... 20

            c.  Veronica Smith cannot maintain an acting up claim. ............... 21

            d.  Vicki Hill cannot maintain an acting up claim. ....................... 22

            e.  Anderson cannot maintain an acting up claim. ........................ 22

        5.  Ealy's Shift Assignment Claim Fails........................................................ 23

**IV.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS.**............................................................................ 24

   A.    The Court should not consider Plaintiffs' vague, generalized allegations of allegedly harassing conduct on summary judgment. ............................................ 24

   B.    Plaintiffs cannot rely on alleged harassment of which they were not aware or second-hand hearsay to establish individual HWE claims. .................................. 25

   C.    Plaintiffs cannot pursue hostile work environment claims based on time-barred conduct under a continuing violation theory. ........................................ 28

   D.    Plaintiffs' conclusory allegations regarding discipline, overtime, promotions, and acting up provide no support for their HWE claims. ........................................... 30

      1.    Individual Plaintiffs Do Not Establish That They Experienced a Hostile Work Environment........................................................................................ 31

         a.    Edmond cannot establish that he experienced a HWE. ......................... 31

         b.    Ealy cannot establish that she experienced a HWE. .............................. 31

         c.    Cooper cannot establish that he experienced a HWE. ........................... 33

         d.    Hill cannot establish that she experienced a HWE. ............................... 34

         e.    Laws cannot establish that he experienced a HWE. .............................. 36

         f.    Smith cannot establish that she experienced a HWE.............................. 37

         g.    Anderson cannot establish that he experienced a HWE. ........................ 37

         h.    Henry cannot establish that he experienced a HWE............................... 39

         i.    Anton Glenn cannot establish that he experienced a HWE. ................... 39

**V.    THERE IS NO BASIS FOR EMPLOYER LIABILITY UNDER PLAINTIFFS' 1981 AND EQUAL PROTECTION 1983 CLAIMS.**.................................................... 40

**VI.    PLAINTIFFS CANNOT MAINTAIN CLAIMS UNDER THE ILLINOIS CIVIL RIGHTS ACT.**.......................................................................................................... 43

   A.    Plaintiffs have failed to establish that the Illinois Civil Rights Act applies to their employment discrimination claims. ..................................................................... 43

   B.    In the alternative, if the Court holds that Plaintiffs can pursue claims against Defendant under the Illinois Civil Rights Act, Plaintiffs fail to meet the standards to maintain hostile work environment, disparate treatment, or disparate impact / "unintentional discrimination" claims under the ICRA......................................... 46

**VII.    PLAINTIFFS CANNOT BRING CLAIMS UNDER A "PATTERN-OR-PRACTICE" THEORY.**............................................................................................. 48

**VIII.    THE COURT SHOULD EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS BERNARD SISKIN AND CHARLES GALLAGHER**........................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego v. Wilkie,*
  907 F.3d 1004 (7th Cir. 2018) ........................................................17, 35

*Adams v. Wal-Mart Stores, Inc.,*
  324 F.3d 935 (7th Cir. 2003) ..................................................................14

*Ahern v. Bd. of Ed. of Chi.,*
  133 F.3d 975 (7th Cir. 1998) ..................................................................45

*Alexander v. Northeastern Ill. Univ.,*
  586 F. Supp. 2d 905 (N.D. Ill. June 23, 2008) ...............................46, 47

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ................................................................................47

*Allen v. Ford Motor Co.,*
  2023 U.S. Dist. LEXIS 159171 (N.D. Ill. Sept. 8, 2023) ..........26, 28, 29

*Barnes v. Bd. of Trs. of the Univ. of Ill.,*
  946 F.3d 384 (7th Cir. 2020) ..................................................................12

*Beamon v. Marshall & Ilsley Trust Co.,*
  411 F.3d 854 (7th Cir. 2005) ..................................................................32

*Bennett v. Potter,*
  2011 U.S. Dist. LEXIS 33688 (N.D. Ill. Mar. 30, 2011) ........................17

*Bland v. Edward D. Jones & Co., L.P.,*
  2020 U.S. Dist. LEXIS 223612 (N.D. Ill. Nov. 30, 2020) ......................48

*Bloomer v. Slater,*
  2002 U.S. Dist. LEXIS 15683 (N.D. Ill. Aug. 23, 2002) .......................24

*Bostock v. Clayton Cty.,*
  140 S. Ct. 1731 (2020) ............................................................................12

*Brumfield v. City of Chi.,*
  735 F.3d 619 (7th Cir. 2013) .............................................................44, 46

*Buttron v. Sheehan,*
  2003 U.S. Dist. LEXIS 13496 (N.D. Ill. Aug. 4, 2003) .........................26

*Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
    2020 U.S. Dist. LEXIS 49102 (N.D. Ill. Mar. 22, 2020).........................................45

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012)..............................................................................49

*Comcast Corp. v. National Association of African American-Owned Media*,
    140 S. Ct. 1009 (2020)......................................................................................6

*Conley v. Village of Bedford Park*,
    215 F.3d 703 .............................................................................................16, 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).........................................................................................50

*De v. City of Chicago*,
    912 F. Supp. 2d 709 (N.D. Ill. 2012) ................................................................5

*Diaz v. Kraft Foods Global, Inc.*,
    653 F.3d 582 (7th Cir. 2011) ...........................................................................12

*Doe v. City of Chi.*,
    2020 U.S. Dist. LEXIS 41988 (N.D. Ill. Mar. 11, 2020)...............................48, 49

*Downey v. Briscoe*,
    2013 U.S. Dist. LEXIS 169043 (N.D. Ill. Nov. 29, 2013) (Kennelly, J.)............26

*Edmond v. City of Chicago*,
    2023 U.S. Dist. LEXIS 98174 (N.D. Ill. June 6, 2023) .......................1, 25, 27, 29

*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*,
    315 F.3d 817 (7th Cir. 2003) ...........................................................................24

*Gilty v. Oak Park*,
    919 F.2d 1247 (7th Cir. 1990) .........................................................................49

*Grant v. Trs. of Ind. Univ.*,
    870 F.3d 562 (7th Cir. 2017) ...........................................................................21

*Gunville v. Walker*,
    583 F.3d 979 (7th Cir. 2009) ...........................................................................36

*Harper v. Ceisel Masonry*,
    2008 U.S. Dist. LEXIS 7 (N.D. Ill. Jan. 2, 2008) .............................................32

*Hill v. Potter*,
    625 F.3d 998 (7th Cir. 2010) ...........................................................................16

*Hirsch v. Cognizant Tech. Sols. U.S. Corp.*,
2023 U.S. Dist. LEXIS 80954 (N.D. Ill. May 9, 2023) .........................................................11

*Howard v. Cook Cnty. Sheriff's Off.*,
2022 U.S. Dist. LEXIS 80848 (N.D. Ill. May 4, 2022) (Kennelly, J.) ........................... *passim*

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*,
988 F.3d 948 (7th Cir. 2021) .................................................................................................3

*Ill. Native Am. Bar Ass'n v. Univ. of Ill.*,
856 N.E.2d 460 (Ill. Ct. App. 2006) ...............................................................................44, 46

*Isaacs v. Hill's Pet Nutrition, Inc.*,
485 F.3d 383 (7th Cir. 2007) ...............................................................................................29

*J.K.J. v. Polk Cty.*,
960 F.3d 367 (7th Cir. 2020) ...............................................................................................41

*Jackson v. Cerpa*,
696 F. Supp. 2d 962 (7th Cir. 2010) ...............................................................................44, 47

*Johnson v. Advocate Health & Hospitals Corp.*,
892 F.3d 887 (7th Cir. 2018) ...............................................................................................27

*Johnson v. Transp. Agency*,
480 U.S. 616 (1987)........................................................................................................44, 46

*Jones v. City of Chicago*,
787 F.2d 200 (7th Cir. 1986) ...............................................................................................41

*Jungiewicz v. Allstate Insurance Co.*,
2014 U.S. Dist. LEXIS 42772 (N.D. Ill. Mar. 31, 2014).......................................................24

*Kahn v. Chi. Bd. of Educ.*,
2022 U.S. Dist. LEXIS 40565 (N.D. Ill. Mar. 8, 2022)...........................................................2

*King v. Ill. Dep't of Juv. Just.*,
2014 U.S. Dist. LEXIS 52954 (N.D. Ill. Apr. 17, 2014) .......................................................27

*Kotoklo v. DePaul Univ.*,
2021 U.S. Dist. LEXIS 188961 (N.D. Ill. Sep. 30, 2021) .....................................................16

*Lee v. Styrolution America LLC*,
2013 U.S. Dist. LEXIS 28611 (N.D. Ill. Mar. 1, 2013).........................................................33

*Lucas v. Chi. Transit Auth.*,
367 F.3d 714 (7th Cir. 2004) ...............................................................................................29

*Lust v. Sealy*,
    383 F.3d 580 (7th Cir. 2004) ........................................................................4

*Mannie v. Potter*,
    394 F.3d 977 (7th Cir. 2005) ......................................................................36

*Mason v. Southern Ill. Univ. at Carbondale*,
    233 F.3d 1036 (7th Cir. 2000) ....................................................................26

*Melton v. Tippecanoe Cnty.*,
    838 F.3d 814 (7th Cir. 2016) ......................................................................20

*Milligan-Grimstad v. Stanley*,
    877 F.3d 705 (7th Cir. 2017) ......................................................................28

*Moore v. PNC Bank*,
    2023 U.S. Dist. LEXIS 107125 (N.D. Ill. June 21, 2023) ......................24

*Nelson v. Pace Suburban Bus*,
    2023 U.S. Dist. LEXIS 51443 (N.D. Ill. Mar. 27, 2023).....................45, 48

*Nichols v. Mich. City Plant Planning Dep't*,
    755 F.3d 594 (7th Cir. 2014) ......................................................................33

*Outley v. City of Chi.*,
    407 F. Supp. 3d 752 (N.D. Ill. Sept. 9, 2019) ..........................................45

*Outley v. City of Chicago*,
    2021 U.S. Dist. LEXIS 196110 (N.D. Ill. Oct. 12, 2021)...........17, 24, 41

*Palmer v. Indiana Univ.*,
    31 F.4th 583 (7th Cir. 2022) ......................................................................22

*Pearson v. Advocate Health Care*,
    2017 U.S. Dist. LEXIS 128349 (N.D. Ill. Aug. 14, 2017).......................32

*Porus v. Randall*,
    2014 U.S. Dist. LEXIS 47988 (N.D. Ill. Apr. 8, 2014) (Kennelly, J.) ...................................30

*Puffer v. Allstate Ins. Co.*
    675 F.3d 709 (7th Cir. 2012) ......................................................................48

*Rao v. Gondi*,
    2014 U.S. Dist. LEXIS 151105 (N.D. Ill. Oct. 23, 2014)....................45, 46

*Riordan v. Kempiners*,
    831 F.2d (7th Cir. 1987) ............................................................................22

iv

*Selan v. Kiley*,
    969 F.2d 560 (7th Cir. 1992) ...........................................................................29

*SMS Fin. Recovery Servs., LLC v. Canelo*,
    2023 U.S. Dist. LEXIS 29181 (N.D. Ill. Feb. 22, 2023) ..............................4

*Sommerfield v. City of Chi.*,
    254 F.R.D. 317 (N.D. Ill. Nov. 3, 2008) ......................................................4

*Strickland v. Dart*,
    2023 U.S. Dist. LEXIS 56429 (N.D. Ill. Mar. 31, 2023) ...........................31

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    2023 U.S. Dist. LEXIS 20323 (N.D. Ill. Feb. 7, 2023) (Kennelly, J.)....................50

*Thanongsinh v. Bd. of Educ.*,
    462 F.3d 762 (N.D. Ill. Sept. 13, 2006) ........................................................2

*Trahanas v. Northwestern Univ.*,
    64 F.4th 842 (7th Cir. 2023) .........................................................................38

*Turner v. The Saloon, Ltd.*,
    595 F.3d 679 (7th Cir. 2010) ................................................................14, 20

*U.S. v. Given*,
    164 F.3d 389 (7th Cir. 1999) ....................................................................2, 3

*Vela v. Vill. of Sauk Vill.*,
    218 F.3d 661 (7th Cir. 2000) ........................................................................42

*Vince v. Ill. Cent. Sch. Bus, LLC*,
    2011 U.S. Dist. LEXIS 12858 (N.D. Ill. Feb. 9, 2011) ..............................20

*Vodak v. City of Chi.*,
    639 F.3d 738 (7th Cir. 2011) ..................................................................42, 43

*Waters v. City of Chicago*,
    580 F.3d 575 (7th Cir. 2009) ........................................................................42

*Weiler v. Vill. of Oak Lawn*,
    86 F. Supp. 3d 874 (N.D. Ill. Mar. 31, 2014) (Kennelly, J.)....................44

*Wince v. CBRE, Inc.*,
    2022 U.S. Dist. LEXIS 42516 (N.D. Ill. Mar. 10, 2022)............................17

*Wince v. CBRE, Inc.*,
    66 F.4th 1033 (7th Cir. 2023) .......................................................................10

*Woodard v. Tower Auto Prod Co.*,
    2004 U.S. Dist. LEXIS 19595 (N.D. Ill. Sept. 28, 2004) ...........................................34, 37, 40

*Yancick v. Hanna Steel Corporation*,
    653 F.3d 532 (7th Cir. 2011) .................................................................................39

*Zayas v. Rockford Mem'l Hosp.*,
    740 F.3d 1154 (7th Cir. 2014) ..........................................................................30, 39

*Zegarra v. John Crane, Inc.*,
    218 F. Supp. 3d 655 (N.D. Ill. Oct. 31, 2016) ...................................................17, 18

**Statutes**

740 ILCS 23/5...........................................................................................................28, 44,48

775 ILCS 5/8-111(D)...........................................................................................................46

42 U.S.C. § 1981 ....................................................................................................................5

42 U.S.C. § 1983 .................................................................................................................5, 28

42 U.S.C. § 2000d–3 ..............................................................................................................45

ADA Title II.......................................................................................................................44, 46

Civil Rights Act of 1964 Title VI ......................................................................... *passim*

Civil Rights Act of 1964 Title VII......................................................................... *passim*

Illinois Civil Rights Act ...................................................................................... *passim*

Illinois Human Rights Act ...............................................................................................44, 46

**Other Authorities**

Fed. R. Evid. 602 ...................................................................................................................19

Fed. R. Evid. 702 ...................................................................................................................50

Fed. R. Evid. 803 .............................................................................................................2, 3, 4

Local Rule 56.1 ....................................................................................................................1,4

## I.   <u>INTRODUCTION</u>

As this Court denied Plaintiffs' motion for class certification on the grounds that Plaintiffs could not establish commonality across the putative class or sub-classes, the only remaining claims in this case are nine individual plaintiffs' disparate treatment and hostile work environment claims. Although this is no longer a class case, Plaintiffs attempt to stave off summary judgment by pointing to a hodgepodge of alleged incidents from across the Department of Water Management over the course of more than a decade, the vast majority of which did not involve Plaintiffs whatsoever, to argue that a "racist culture" pervades the Department and creates a triable issue on all of their individual claims.  The Court, however, has already rejected that argument.

As the Court explained in denying class certification, "the allegations of harassment are specific and vary from plaintiff to plaintiff" and evaluating those allegations requires "site-specific" or "worker-specific" details. *Edmond v. City of Chicago*, 2023 U.S. Dist. LEXIS 98174, at *14–*15 (N.D. Ill. June 6, 2023).  Plaintiffs' individual claims depend on their individual experiences and circumstances, not the experiences of others in different bureaus, worksites, and job titles.  Defendant is entitled to summary judgment on Plaintiffs' claims in their entirety because they have failed to present sufficient evidence establishing individual claims of racial discrimination or harassment.  For the reasons stated herein, and in Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Def. Mem."), the Court should grant summary judgment on Plaintiffs' claims in their entirety.

## II.   <u>THE COURT SHOULD DISREGARD PLAINTIFFS' OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS AND PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS.</u>

Plaintiffs seek to avoid summary judgment by objecting to exhibits cited in Defendant's Local Rule 56.1(a)(2) Statement of Facts in Support of Its Motion for Summary Judgment.  *See* Dkt. No. 298, Defendant's Statement of Facts ("DSOF"); Dkt. No. 305, Plaintiffs' Response to

Defendant's Statement of Facts ("RSOF"). Because there is no basis for Plaintiffs' objections, Defendant's statements of material fact are not controverted and are thus admitted. *See Kahn v. Chi. Bd. of Educ.,* 2022 U.S. Dist. LEXIS 40565, *3, fn. 1 (N.D. Ill. Mar. 8, 2022).

In response to many of the facts stated in Defendant's Statement of Facts, Plaintiffs do not dispute the statements with any evidence of conflicting facts, but rather only contest the admissibility of various exhibits, arguing that Defendant failed to lay a proper foundation to establish the documents as business records admissible under Federal Rule of Evidence 803(6). *See,* RSOF ¶¶ 54-58, 59-61, 63-72, 92-141, 150, 151, 154-155, 157, 159-160, 163, 167, 173, 177, 179, 188, 195-197, 199-203, 223; Pl. Mem., at 9–14; Dkt. No. 306-1. For these facts, Plaintiffs offer no disputed evidence, and these facts should be deemed admitted.[1]

Plaintiffs argue discipline files and Violence in the Workplace ("VIW") files maintained by the Department of Water Management ("DWM"), documents relating to grievances filed by Plaintiffs maintained by DWM, hiring files maintained by the Department of Human Resources ("DHR"), and data maintained by DHR in the Taleo system that DHR uses to track applications through the hiring process are all inadmissible on this basis. *See id.* However, their objections are unfounded, as "Rule 803(6) permits the authentication of a business record by the custodian of the record or any other qualified witness." *Thanongsinh v. Bd. of Educ.,* 462 F.3d 762, 777 (N.D. Ill. Sept. 13, 2006) (internal quotations omitted). The Seventh Circuit has held that "[a] party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records." *U.S.*

---

[1] The Court should strike the 44-page Chart attached to Plaintiffs' Memorandum, as the Chart is a transparent attempt to avoid the 100-page limit set by the Court. *See* Dkt. No. 275; Dkt. No. 259. However, in the event the Court does not strike Plaintiffs' Chart, Defendant has attached a corresponding Chart containing its responses to Plaintiffs' objections to each of Defendant's exhibits hereto as Exhibit 1.

*v. Given*, 164 F.3d 389, 394 (7th Cir. 1999).  There is no need for the witness testifying to the business record to have personal knowledge of the information contained in the records.  A "qualified witness does not need to be the person who prepared the records or have personal knowledge of the information contained, but the witness must have knowledge of the procedure by which the records were created." *Id.*

Plaintiffs incorrectly claim that the declarations of DWM Managing Deputy Commissioner Marisol Santiago and DHR Acting Commissioner Kathleen Doyle Deane fail to satisfy the requirements of Rule 803(6).  Both Santiago and Deane are custodians of the records referenced in their declarations and have the requisite personal knowledge of Defendant's recordkeeping practices required by Rule 803(6) to authenticate the exhibits at issue as records kept in the regular course of business.  *See* DX 4, at ¶¶ 50–51; DX 32, at ¶¶ 93–94; *Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, 956 (7th Cir. 2021) (stating that plaintiff's "performance evaluations, corrective action plans, and disciplinary documents are all business records" admissible under Rule 803(6)).  Accordingly, Plaintiffs' objections to Defendant's exhibits should be disregarded, and the statements of fact referencing those exhibits should be deemed admitted.

Plaintiffs also claim that Defendant's March 4, 2022 Supplemental Answers to Plaintiffs' Interrogatories are inadmissible because they "are not signed and verified by a person with personal knowledge of any of the matters asserted therein."  *See* RSOF at ¶¶ 46, 48, 50–51, 91, 142–145, 147.  The copy of the March 4, 2022 Supplemental Interrogatory Answers attached to Defendant's Statement of Facts as Exhibit 45 inadvertently did not include the verification pages originally included with the interrogatory answers.  However, Defendant conveyed the verification pages to Plaintiffs when Defendant initially served the interrogatory answers on Plaintiffs on March 4, 2022.  A copy of the verified Supplemental Interrogatory Answers and the e-mail

conveying the verified answers is attached hereto as Corrected DX 45.[2]  As the Supplemental

Interrogatory Answers were verified by individuals with knowledge of the matters asserted, the

Court should disregard Plaintiffs' objection and should deem the statements of fact referencing the

answers to be admitted.

Plaintiffs also baselessly suggest that the exhibits to which they object are inadmissible

because "the source of information or the method or circumstances of preparation indicate a lack

of trustworthiness" under Rule 803(6)(E).  *See* Pl. Mem., at 11–13.  According to Plaintiffs, their

allegations that John Pope, Nick Devers, Joseph Lynch, William Bresnahan, and Mike Szorc

engaged in racially harassing conduct are sufficient in and of themselves to establish that

documents allegedly prepared by these individuals are "untrustworthy."  *Id.*  However, the cases

cited by Plaintiffs in support of this proposition are easily distinguishable.  In both *Lust v. Sealy,*

383 F.3d 580, 587–88 (7th Cir. 2004), and *Sommerfield v. City of Chi.,* 254 F.R.D. 317, 323 (N.D.

Ill. Nov. 3, 2008), the court excluded documents under Rule 803(6)(E) because the documents

were not created as part of a regularly conducted business activity, but were rather prepared in

anticipation of litigation.  *See Lust*, 383 F.3d at 588–89; *Sommerfield*, 254 F.R.D. at 323.  There is

no such evidence here and therefore no reason to believe that these records, kept in the ordinary

course of business, are inaccurate.  *See SMS Fin. Recovery Servs., LLC v. Canelo*, 2023 U.S. Dist.

LEXIS 29181, *10 –*11 (N.D. Ill. Feb. 22, 2023) (declining to exclude records under Rule

803(6)(E) where they were prepared in the ordinary course of business and were not prepared in

anticipation of litigation).[3]

---

[2] Defendant is attaching Corrected DX 45 hereto pursuant to Local Rule 56.1(f), which provides that "[t]he moving party may use its reply memorandum of law to respond to an evidentiary or materiality objection raised in a LR 56.1(b)(2) response."

[3] Plaintiffs also improperly seek to introduce facts in their Statement of Additional Facts ("PSOAF") that are misstatements of the record and/or statements not supported by the record. *See, e.g.,* Defendant's

## III. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' DISPARATE TREATMENT CLAIMS UNDER 42 U.S.C. § 1983, 42 U.S.C. § 1981, AND THE ILLINOIS CIVIL RIGHTS ACT.

### A. Plaintiffs do not meet the standard for disparate treatment.

Plaintiffs have failed to provide evidence sufficient to maintain claims for discriminatory discipline, denial of promotions, denial of overtime, denial of acting up, or transfers and shift selections.

#### 1. Plaintiffs' Claims for Discriminatory or Retaliatory Discipline Fail.

Plaintiffs' Memorandum clarifies that only Ealy, Cooper, Glenn, and Anderson are pursuing discriminatory discipline claims. *See* Pl. Mem. at 59.

##### a. Ealy cannot maintain a discipline claim.

Ealy acknowledges that she is only challenging a five-day suspension she received for insubordination, related to her refusal to provide a key to a nursing mother's room to a Black Custodian and her failure to abide by Defendant's acting up policy in relation to Black Custodians under her supervision. Pl. Mem. at 59–61; RSOF ¶¶ 56–59. However, there is no evidence to suggest that Ealy's discipline was based on race. The mother's room incident involved Ealy's obligation to inform a Black nursing mother about the mother's room and provide her with a key. RSOF ¶ 56. In e-mails, Ealy acknowledged she did not inform the nursing mother about the room,

---

Response to Plaintiffs' Statement of Additional Facts ("RSOAF"), ¶¶ 17, 35, 67, 71–73, 75, 104, 116, 123, 129, 131–132, 157. The PSOAF also purports to set forth facts that are lacking in foundation or personal knowledge (RSOAF, ¶¶ 14, 17–20, 22–24, 26, 32, 39, 40, 45, 47, 50, 53, 62–68, 70–73, 75–76, 79, 81, 83, 85–89, 98–99, 105–108, 117–118, 121, 130–131, 143–147, 149–154, 157–159, 166, 170–171, 174, 177, 180, 182–185, 188–189, 192–193, 195–196, 199–203, 218–226, 235, 238–240, 242, 252, 254–257, 259–268), and statements based solely on speculation or conclusory opinion. *Id.* at ¶¶ 3, 8, 10, 12–13, 15–18, 20, 28, 32, 35, 38, 40, 45, 47, 56–63, 65, 68, 70, 72–73, 75–78, 81–82, 85–91, 99, 102–103, 106, 108, 110, 112–113, 116–118, 124–125, 127, 130, 141–142, 144, 147, 150, 153, 160, 166, 170, 173, 177, 180, 182, 186, 195–196, 199–203, 206–207, 210–226, 228, 231–236, 240–241, 247–252, 254, 261–264, 266–267, 270–274. Given these deficiencies, the Court should disregard these statements of fact as well. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 712-13 (N.D. Ill. 2012) ("vague, argumentative, immaterial, or conclusory assertions" should be disregarded).

claiming that the mother already knew where it was, and admitted that she had not provided the mother a key. *Id.* at ¶ 58. Ealy also accused the nursing mother of "defaming [her] name and character" and threatened to file suit against the mother for harassment and defamation. *Id.*

With respect to the acting up policy, Ealy improperly challenges the admissibility of the records relating to the Black Custodians' seniority but does not dispute that she failed to follow the policy and sought to exclude the Custodians from acting up. Pl. Mem. at 60; RSOF ¶ 59. Instead, she argues that Pope could have made an exemption to the policy, and the fact that he did not submit a declaration explaining why he did not "is a fact a jury could consider to infer his testimony would have been helpful to Plaintiffs." Pl. Mem. at 60. However, the absence of a declaration from Pope is immaterial because it is not Defendant's burden to provide evidence establishing the suspension was not discriminatory—rather, it is Ealy's burden to come forth with evidence establishing it was, which she has failed to do. It is undisputed that Ealy admitted she did not want to follow the policy, that Pope did not accept her justification, and that she proceeded to violate the policy regardless. Pl. Mem. at 60; RSOF ¶ 59.

Ealy also cannot establish a *prima facie* case that her five-day suspension was discriminatory because she cannot establish that she was meeting Defendant's legitimate expectations when she failed to follow Santiago's instructions and failed to follow Defendant's acting up policy. Nor can she show that any other similarly situated employee outside of her protected class was treated more favorably under similar circumstances. While Ealy argues that Salinas and Lynch operated Jardine without a nursing room and without reprimand, she points to no evidence that there were nursing mothers in need of a mother's room when Salinas and Lynch were ACOEs, or that they refused to provide a nursing room when instructed to do so. Nor can Ealy establish that her race was the "but for" cause of her discipline. *See Comcast Corp. v.*

*National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020). To the contrary, the undisputed evidence establishes that Ealy was only disciplined because she failed to provide a Black employee access to a nursing room and refused to allow Black Custodians to act up in violation of City policy.

### b. Cooper cannot maintain a discipline claim.

Cooper cannot show that his 29-day suspension for insubordination was discriminatory given that he admitted to the underlying conduct that led to the suspension. Cooper argues that none of the supposed "hearsay records" Defendant offers suggest that Cooper called anyone a "dumbass." Pl. Mem. at 61. It is undisputed, however, that Cooper admitted to calling Deputy Commissioner Pope "a dumb ass" and "a dummkopf" (German for "dumb head") during his deposition. RSOF ¶ 62. Cooper's conduct was clearly insubordinate, and unsurprisingly, he received a suspension because of it.

Additionally, Cooper fails to establish that another similarly situated individual who was not in the protected class was treated more favorably. Cooper generally alleges that other unidentified "leaders" used "far more derogatory terms" without consequences, but does not identify who those leaders were, what terms they allegedly used, the decisionmaker who allegedly failed to discipline them, and whether the same decisionmaker disciplined Cooper. Pl. Mem. at 61–62.

Cooper also refers to Hill's entirely unsupported deposition testimony that an unidentified White woman "show[ed] up high on drugs" at an unspecified time and was allowed to go home to argue that "worse behavior" was not punished. Pl. Mem. at 62; SOAF ¶ 242. As an initial matter, such vague, unsupported testimony is entirely insufficient to establish that Cooper's claim can survive summary judgment. *See Howard v. Cook Cnty. Sheriff's Off.*, 2022 U.S. Dist. LEXIS 80848, *28 (N.D. Ill. May 4, 2022) (Kennelly, J.) ("generalized allegations are insufficient,

without more, to defeat summary judgment"). Regardless, there is no credible argument that this unidentified woman was similarly situated to Cooper or that the same decisionmakers were involved. For these reasons, Cooper's discipline claim fails.

### c. Glenn cannot maintain a discipline claim.

Glenn cannot maintain that his one-day suspension in September 2017 for violating Defendant's EEO policy was discriminatory. It is undisputed that one of Glenn's Black subordinates filed an EEO complaint against him alleging sexual harassment and retaliation, and that DHR investigated and found Glenn violated Defendant's EEO policy. RSOF ¶¶ 66–67.[4] Based on DHR's findings, both DHR and Glenn's supervisor, Plaintiff Ealy, recommended that Glenn receive a one-day suspension. *Id.* at ¶ 67. The basis for Glenn's suspension is well-documented in Defendant's business records, which are admissible and authenticated by Marisol Santiago.

Although Glenn was disciplined by a Black supervisor for his conduct toward a Black subordinate, he argues that a jury could nevertheless find his suspension discriminatory based on the "many examples of Defendant refusing to discipline whites who engage in severe or worse conduct." Pl. Mem. at 62. But Glenn does not identify a similarly situated non-Black individual who was treated more favorably under similar circumstances. Glenn cannot meet his burden by broadly asserting that White employees engaged in unspecified "worse" conduct and were not disciplined without identifying the individuals, what the allegedly "worse" conduct was, and who made the decision regarding their discipline. *Howard*, 2022 U.S. Dist. LEXIS at *28.

---

[4] Plaintiffs' Response to Defendant's Statement of Facts disputes these facts on the grounds that they are not supported by admissible evidence because Santiago's declaration was inadequate. As discussed above, Plaintiffs' objection is unfounded and contrary to law. Plaintiffs further object that the EEO investigation report contains hearsay statements. Those statements, however, are not offered to prove the truth of what transpired between Glenn and the subordinate who filed the complaint, but to establish the basis for Defendant's decision to discipline Glenn. Accordingly, they are admissible.

Glenn also asserts that a jury could infer discrimination because Alan Stark refused to intervene and transfer the subordinate who filed the complaint as Stark had allegedly done for an unidentified White supervisor. Pl. Mem. at 62. In other words, Glenn's theory is that a jury could infer he was discriminated against when his Black supervisor disciplined him for inappropriate conduct toward a Black employee because Stark should have transferred the employee whom Glenn harassed. Clearly, no reasonable jury could make that inference.

### d. Anderson cannot maintain a discipline claim.

Anderson cannot establish that his five-day suspension for fighting with Michael Szorc in 2017 was discriminatory. Anderson was disciplined for initiating a physical altercation with Szorc, after which both parties filed VIW complaints. DHR investigated, and multiple witnesses confirmed, that Anderson initiated the fight, pushed Szorc, cocked his fist, and told Szorc that he would "get his head kicked in and his ass kicked in" and that Anderson would "kill him." RSOF ¶¶ 73–75.[5]

Anderson asserts that Szorc called him a "nigger" during the fight and that Defendant's failure to discipline Szorc while disciplining Anderson was discriminatory. At no point during DHR's investigation, however, did Anderson or anyone else ever report Szorc's alleged use of the "N-word." RSOF ¶79; DX 84. Anderson argues that there are factual disputes regarding the fight itself. At issue, however, are not the details of the fight, but whether Defendant discriminated against Anderson in imposing discipline based on the evidence before it. No reasonable jury could find that Anderson's suspension was discriminatory when multiple witnesses confirmed that

---

[5] Plaintiffs object to these facts on the grounds that the VIW and disciplinary records are inadmissible and contain hearsay. As stated above, these records are admissible business records. Additionally, the witness statements in the records are not offered to prove the truth of what transpired between Anderson and Szorc, but to establish the basis for Defendant's decision to discipline Anderson. Accordingly, they are admissible as well.

Anderson was the aggressor and threatened to kill Szorc, and nobody, including Anderson himself, claimed that Szorc used the "N-word" during the altercation.

Anderson cannot establish that his race was the "but for" cause of his suspension when the evidence that DWM reviewed showed that he initiated a physical altercation with another employee. Nor does he identify any other employee who engaged in comparable conduct, corroborated by multiple witnesses, and was not disciplined. Finally, even if Anderson could make out a *prima facie* case of discriminatory discipline (which he cannot), he cannot dispute that DWM had a legitimate nondiscriminatory reason for disciplining him under the circumstances, or show that the reason for his discipline was pretextual.

### 2. Plaintiffs' Promotion Claims Fail.

Plaintiffs' Memorandum clarifies that only Ealy, Cooper, Laws, Smith, Anderson, and Henry are pursuing discriminatory promotion claims. *See* Pl. Mem. at 63.[6] Plaintiffs bear the burden to present specific evidence showing that race was the cause of their failure to be promoted. *Wince v. CBRE, Inc.,* 66 F.4th 1033, 1040 (7th Cir. 2023). For each of their alleged failure-to-promote claims, Plaintiffs fail to cite any specific evidence establishing that a specific promotional decision was discriminatory.

### a. Ealy cannot maintain a failure-to-promote claim.

Ealy provides no evidence establishing that her denial of a promotion to Chief Operating Engineer ("COE") in 2014 was discriminatory. It is undisputed that Ealy was less senior than four other candidates listed as "highly qualified" for the position. *See* RSOF ¶ 94; Def. Mem. at 38. Ealy provides no evidence disputing this or otherwise showing that the individual selected in 2014 was less qualified than she was for the position. *See* Pl. Mem. at 64. Rather, she alleges with no

---

[6] Laws's promotion claim is not listed in the heading of Section V.F. of Plaintiffs' Memorandum, but that section includes a promotion claim on behalf of Laws. *See* Pl. Mem. at 63, 66-67.

support whatsoever "that seniority was manipulated to advantage whites" and that "whites preferred their own" in a vain attempt to "cast[] doubt on that justification." *Id*. Ealy's argument that Defendant's alleged failure to explain why "Highly Qualified candidate #2 was chosen over Highly Qualified candidate #3 when both have identical seniority dates" somehow implies that the promotional decision was discriminatory is nonsensical, as both candidates are White (and were more senior than Ealy in any event). RSOF ¶ 94. This vague conjecture is insufficient to defeat summary judgment. *See Hirsch v. Cognizant Tech. Sols. U.S. Corp.*, 2023 U.S. Dist. LEXIS 80954, at *30 (N.D. Ill. May 9, 2023) ("Guessing at an employer's hidden animus or inner prejudice [ ] is not enough to defeat summary judgment. The employee must support her hunch with evidence.").

Ealy's claim regarding her 2015 application for COE faces the same shortcomings. It is undisputed that Ealy failed a written test for this position, and Ealy provides no evidence that a less qualified candidate outside her protected class was promoted over her. RSOF ¶ 95; Pl. Mem. at 64. Neither Plaintiffs' Memorandum nor their Statement of Additional Facts provide any evidence establishing a *prima facie* case or otherwise supporting a claim of discrimination relating to this application. *See* Pl. Mem. at 64; SOAF ¶ 257.

Ealy also presents no evidence showing that her unsuccessful application for COE in 2016 was discriminatory. Once again, she presents no evidence that a less qualified individual was selected over her for this position, as it is undisputed that Barrett Murphy, who was selected for the position, had the highest seniority on the prequalified list. RSOAF ¶¶ 96–97. Additionally, it is undisputed that one of the decisionmakers for this position, is also Black. *Id*. Ealy's speculation regarding the qualifications for the position and her unsupported assertion that "Salinas held her

to a double-standard" are entirely insufficient to establish a *prima facie* case of failure-to-promote or that Defendant's reasoning was pretextual.  Pl. Mem. at 65.

### b. Cooper cannot maintain a failure-to-promote claim.

Cooper fails to offer evidence that he was passed over in favor of less qualified candidates outside of his protected class when he applied for Water Chemist III in 2013 and 2019.  To survive summary judgment, a plaintiff must produce sufficient evidence for a jury to find that "someone outside the protected class who was 'not better qualified' was hired instead."  *Barnes v. Bd. of Trs. of the Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020).  Cooper has not met that requirement, as it is undisputed that Black decisionmakers selected other Black applicants for both positions, and Cooper provides no evidence establishing that he was more qualified than the Asian and Hispanic applicants who were also selected for these positions.  *See* RSOF ¶¶ 104, 107–108.  The case law Cooper cites is inapplicable as neither *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582 (7th Cir. 2011) nor *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020), involved failure-to-promote claims where a member of the plaintiff's protected class was selected for the promotion.

### c. Laws cannot maintain a failure-to-promote claim.

It is undisputed that Laws was ineligible for the Caulker position for which he applied in 2018 because he was not a member of Plumbers Local 130, that all of the original applicants for this position were disqualified, and that Laws did not reapply for the position when it was posted without the Local 130 requirement.  RSOF ¶ 112; SOAF ¶ 265.  Laws has also failed to identify any non-Black applicant who was selected for the Caulker position.  *See* SOAF ¶ 265; Pl. Mem. at 66–67.  His unsupported speculation regarding why the Local 130 "requirement existed in the first place[,]" "who made the decision to re-post the position without the requirement or why, or what steps were taken to notify employees who were disqualified" after the position had been re-

posted provide no support for his claim that he was not selected for the position on the basis of his race.

### d. Smith cannot maintain a failure-to-promote claim.

Smith fails to dispute that she failed a written test for application for the Foreman of Pipe/Salvage Yards position in 2013 and presents no evidence that she was more qualified for the position than the White employee who was selected. RSOF ¶ 120; SOAF ¶ 261. Her citation to a vague comment allegedly made by Victor Villasenor in 2012, in addition to being inadmissible hearsay, provides no support for her claim that her failure to be selected for the Foreman of Pipe/Salvage Yards position in 2013 was discriminatory. Pl. Mem. at 67–68. Likewise, her allegation that Bresnahan described the White employee selected as his "number one guy" is also hearsay that does not support her claim. Her vague speculation regarding the accuracy of records in the hiring file is also insufficient to establish that Smith was discriminated against. *Id.*

Smith also claims she "was denied the opportunity to apply for a foreman position in her department in 2017 which was not posted and was filled with a white Hispanic" from a prior requisition. Pl. Mem. at 68. However, there is no admissible evidence that Smith ever applied for such a position, who was selected for the position, the qualifications of the individual selected for the position, who the decisionmakers were, or even what the position was. Such vague allegations are insufficient to survive summary judgment. *See Howard*, 2022 U.S. Dist. LEXIS 80848, at *28.

Finally, Smith fails to dispute that one of her interviewers for her 2018 application for Foreman of Construction Laborers was Black, that neither interviewer recommended Smith for the position, and that a Hispanic individual and a Black individual were selected for the position. She provides no evidence that she was more qualified than the Hispanic individual selected. *See* RSOF ¶¶ 122–123; Pl. Mem. at 68. Smith's objection to the records supporting these facts is baseless

because they are admissible business records, but even if the records were inadmissible, Smith has come forth with no evidence establishing that this promotional process was discriminatory.

### e. Anderson cannot maintain a failure-to-promote claim.

Anderson claims he was discriminatorily denied promotion to Assistant District Superintendent ("ADS") in 2014. However, he provides no evidence that he was passed over for a less qualified non-Black candidate. Rather, the undisputed evidence indicates that a Black applicant was selected for the position, and Anderson provides no evidence that he was better qualified than any of the White applicants selected for the position. *See* RSOF ¶¶128–129; Pl. Mem. at 68. With no direct knowledge, Anderson alleges the test he took for the position "may have been altered." *See* SOAF ¶ 254. This unsubstantiated, speculative allegation cannot defeat summary judgment. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (affirming summary judgment where "there is no solid evidence in the record to support [plaintiff's] allegations").

Anderson also seems to argue that he can maintain claims relating to applications for the positions of General Superintendent and Superintendent of Construction Maintenance in 2017 and an application for the position of General Superintendent of Water Management in 2019. Pl. Mem. at 69. While Anderson claims he applied for these positions, he has presented no evidence establishing he applied other than his own deposition testimony. *See* RSOAF ¶ 255. His unsupported deposition testimony is insufficient to dispute Defendant's TALEO data, which establishes that Anderson started applications for General Superintendent in 2017, Superintendent of Construction/Maintenance in 2017, and General Superintendent of Water Management in 2019 but did not complete the applications. RSOF ¶¶ 130, 135. Anderson baselessly objects to the admissibility of Defendant's business records but offers no evidence to dispute these facts. *See* RSOF ¶ 130; *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010) (affirming summary

judgment and finding that "although [plaintiff] disputes the accuracy of [defendant's] records, his mere assertions are insufficient to create a jury issue"). Regardless, even if he had applied for these positions, Anderson provides no direct evidence of discrimination or proof that a less qualified applicant of another race was selected for any of the positions.

Plaintiffs' Memorandum does not challenge Anderson's application for General Superintendent of Water Management in 2019 and he has waived any claim related to that application. In any event, the undisputed evidence establishes that Anderson failed the written test for the position, and that a Black individual and a White individual were selected. DSOF ¶ 134. Anderson presents no evidence that he was more qualified than the White individual selected and cannot establish he was denied this promotion because of his race.

### f. Henry cannot maintain a failure-to-promote claim.

It is undisputed that Henry was not qualified for the District Superintendent of Water Distribution position in 2014, the Superintendent of Construction and Maintenance position in 2017, or the ADS position in 2018 because he lacked the requisite supervisory experience. RSOF ¶¶ 139–141. Indeed, Plaintiffs' Memorandum concedes that Henry did "not have[e] formal supervisor experience . . . ." Pl. Mem. at 69. His vague, unsupported testimony that he had "equivalent experience training others" and that he saw unidentified "people he knew were less qualified get promoted" to unspecified positions provides no support for his claims. *Id.* at 69–70; *Howard*, 2022 U.S. Dist. LEXIS 80848, at *28. Indeed, Henry offers no evidence even identifying any of the individuals selected for the positions for which he applied, much less that he had equivalent qualifications to any of the individuals selected.

### 3. Plaintiffs' Claims for Allegedly Discriminatory Denial of Overtime Fail.

Plaintiffs' Memorandum clarifies that only Hill, Laws, Anderson, Glenn, and Henry are pursuing overtime claims. *See* Pl. Mem. at 70. To establish a claim for denial of overtime, a plaintiff must show that "she applied for the overtime work, that she was qualified to do the overtime work, [and] that the overtime was given to people in the same job position." *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). Plaintiffs fail to meet this standard because they do not provide any evidence regarding any specific instance in which they were allegedly denied overtime, or any evidence that they received less overtime than a similarly situated White employee. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 711–12 ) (7th Cir. 2000) (affirming summary judgment on overtime claims where plaintiff failed to "set forth any specific times that [defendant] gave others overtime opportunities, but denied the same to him," and did not offer any evidence that "he did not receive the same number of overtime opportunities as others"); *Kotoklo v. DePaul Univ.*, 2021 U.S. Dist. LEXIS 188961, at *54 (N.D. Ill. Sep. 30, 2021) ("plaintiff must generally identify a similarly situated comparator where . . . she relies on circumstantial evidence of disparate treatment in order to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel") (internal quotation omitted).

Contrary to Plaintiffs' assertions, all payroll records from 2011 to 2020 related to payment of overtime were produced during discovery in this case. *Compare* Pl. Mem. at 71 *with* RSOF ¶ 148. Indeed, Plaintiffs admit that Bernard Siskin, their statistical expert for class certification purposes, analyzed payroll data that enabled analysis of overtime by title, bureau, seniority, and individual, but did not provide any analysis of any individuals' expected overtime. RSOF ¶¶ 148, 213. Nor do Plaintiffs provide any comparator evidence showing that any individual Plaintiff

received less overtime than similarly situated employees. Without such evidence, their claims fail. *See Wince v. CBRE, Inc.*, 2022 U.S. Dist. LEXIS 42516, *40–*42 (N.D. Ill. Mar. 10, 2022) (granting summary judgment on overtime claims where plaintiff failed to identify similarly situated comparators who received overtime he did not). Additionally, to the extent Plaintiffs attempt to rely on OIG reports relating to Defendant's overtime processes (*see* Pl. Mem. at 71 (citing SOAF ¶ 216)), the contents of the reports constitute inadmissible hearsay. *See Outley v. City of Chicago*, 2021 U.S. Dist. LEXIS 196110, *21 (N.D. Ill. Oct. 12, 2021) (excluding 2017 OIG reports on summary judgment because "[t]he reports' contents are inadmissible hearsay, as Outley seeks to use them to prove that the events happened as described").

Plaintiffs offer only their own unsubstantiated beliefs that other unnamed individuals received more overtime, which are insufficient to survive a motion for summary judgment. *See Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (a plaintiff's unsupported personal beliefs that he was discriminated against are insufficient to give rise to a genuine factual dispute over whether he was the victim of race discrimination); *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 667 (N.D. Ill. Oct. 31, 2016) (granting summary judgment where plaintiff's deposition testimony "articulated his belief that 'the majority of Spanish people weren't getting overtime and whites were,' but he has offered no evidence to back up his belief"); *Bennett v. Potter*, 2011 U.S. Dist. LEXIS 33688, at *7–*8 (N.D. Ill. Mar. 30, 2011) (finding no adverse employment action where Title VII plaintiff testified "that she had been denied overtime four or five times, but . . . was unable to say specifically when that occurred").

### a. Hill cannot maintain an overtime claim.

Hill presents no evidence of any specific similarly situated employee who received overtime when she did not. *See* SOAF ¶ 225. All she offers is the unsupported, conclusory statement that "all the white employees on [her] floor were given overtime." *See* Pl. Mem. at 72.

In fact, Hill admits that she did work and receive payment for overtime after pursuing a grievance. *See id.*; SOAF ¶ 225. To the extent she claims the alleged delay in payment was discriminatory, she provides no evidence that the delay was related to her race rather than her failure to submit the required paperwork, or that any similarly situated White employees were treated differently under similar circumstances. SOAF ¶ 225; RSOF ¶ 158–159. Accordingly, her overtime claims fail.

### b. Laws cannot maintain an overtime claim.

Laws provides no evidence substantiating his overtime claim other than his own vague, unsupported testimony. While Laws testified generally that John Daly "manipulated the overtime list" to give preferences to a Hispanic employee, he does not provide any evidence regarding the amount of overtime this Hispanic employee received or identify any specific instance in which this employee received overtime that should have gone to Laws. *See* RSOF ¶ 162; Pl. Mem. 72–73. Rather, Laws cites only his general conclusions that unidentified White workers allegedly received more overtime than unidentified Black workers, and hearsay statements he "overheard" involving unidentified Black employees asking unidentified White foremen "why they had not been called for an opportunity." Pl. Mem. at 73. This vague, non-specific testimony is insufficient to defeat summary judgement. *See Conley*, 215 F.3d at 711–12; *Zegarra*, 218 F. Supp. 3d at 667.

### c. Glenn cannot maintain an overtime claim.

Glenn provides no evidence regarding any specific instance in which he was allegedly denied overtime, any similarly situated employees who allegedly received more overtime, or the amount of overtime they received. Rather, his complaints are centered on work assignments for Station Laborers and Construction Laborers. RSOF ¶ 166–167; Pl. Mem. at 73–74. However, it is undisputed that not all of the members of Glenn's crew of Station Laborers were Black, and that there were Black Construction Laborers. RSOF ¶¶ 168, 171. Glenn provides no admissible evidence that the work assignments he challenges were made on the basis of race. RSOF ¶¶ 165–

172; SOAF ¶ 224.  Moreover, he provides no evidence he personally received less overtime due to these work assignments, or that any specific non-Black employee received more overtime than he did.  Accordingly, Glenn's overtime claims fail.

### d. Anderson cannot maintain an overtime claim.

In support of his overtime claim, Anderson cites only his own vague deposition testimony that Luci Pope-Anderson "would remove a Black crew already working and send out her husband's all-White crew."  *See* Pl. Mem. at 74; SOAF ¶ 221.  First, Anderson has not established any personal knowledge of decisions that Pope-Anderson made, so these statements are inadmissible.  *See* SOAF ¶ 221; Fed. R. Evid. 602. Additionally, Anderson's testimony provides no support for his claim that *he personally* was wrongfully denied overtime.  Anderson provides no evidence identifying any member of the alleged "all-White crew," identifying any specific instance in which the any member of the alleged "all-White crew" received overtime that should have gone to him, or establishing that he was similarly situated to the alleged "all-White crew." Anderson's vague, conclusory testimony is insufficient to survive summary judgment.

### e. Henry cannot maintain an overtime claim.

Henry claims he was discriminated against with respect to overtime under supervisor Jack Lee but admits that he cannot identify any specific instance in which he was denied overtime or any non-Black individual who received overtime that he should have received.  *See* Pl. Mem. at 74–75.  Henry's citation to the hearsay statement allegedly made by John Lee (*id.* at 75) is inadmissible and provides no support for his claim.  Without providing any specific evidence that he received less overtime than similarly situated non-Black employees, Henry's claim fails.

### 4.     Plaintiffs' Acting Up Claims Fail.

#### a.   Ealy cannot maintain an acting up claim.

Ealy alleges that she was denied opportunities to act up in 2015 and 2016, despite undisputed DWM records showing that Ealy consistently acted up from June 2015 through September 2015 and July 2016 through September 2016. RSOF ¶ 183. In fact, Ealy also admits that after she reached the 90-day acting up limit in 2015, Stark requested that she be allowed to act up for an additional 90 days. RSOF ¶ 184.

Ealy argues that the Court should nevertheless deny summary judgment because her recollection conflicts with DWM records. Pl. Mem. at 75. The Seventh Circuit has repeatedly rejected that argument. *See, e.g.*, *Melton v. Tippecanoe Cnty.*, 838 F.3d 814 (7th Cir. 2016) (affirming summary judgment where plaintiff sought compensation for unpaid lunch breaks based on his recollection of having worked through lunch, when company records indicated he had been compensated for that time on certain occasions); *Turner*, 595 F.3d at 691 ("Although [a plaintiff] disputes the accuracy of [the employer's] records, his mere assertions are insufficient to create a jury issue."). Ealy provides no evidence that any similarly situated non-Black employee was treated more favorably in regard to acting up, or establishing the amount of acting up pay she claims she was denied. The alleged statements of Guzman and Joyce (Pl. Mem. at 75) are inadmissible hearsay that provide no support for her claim that she was denied the opportunity to act up in 2015 and 2016. It is Ealy's burden to affirmatively prove her claim, not Defendant's burden to disprove it. *See Vince v. Ill. Cent. Sch. Bus, LLC,* 2011 U.S. Dist. LEXIS 12858, *36 (N.D. Ill. Feb. 9, 2011). Here, the record is clear that she cannot meet this burden.

#### b.   Cooper cannot maintain an acting up claim.

It is undisputed that the acting up policy states that the relevant pool of employees eligible to act up "includes all employees in the title *directly below* the Acting Up title, unless otherwise

required by the CBA." SOF ¶ 186 (emphasis added). Cooper, however, claims he should have been permitted to act up *two grades*, from Water Chemist II to Water Chemist IV, which was not permitted under the acting up policy absent some exception in the relevant CBA. He points to no such exception and instead argues that Stark could have theoretically sought an exception to the policy on Cooper's behalf, like he did for Ealy (who is also Black). Pl. Mem. at 75–76. This assertion is not plausible evidence of race discrimination. At summary judgment, the non-moving party must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Here, Cooper provides no evidence that any similarly situated non-Black employee was treated more favorably in regard to acting up, or establishing the amount of acting up pay he claims he was denied. Accordingly, his acting up claim fails.

### c. Smith cannot maintain an acting up claim.

Smith claims, with no support, that Defendant changed how acting up was assigned in the Meter Shop following a White employee's retirement, which resulted in Smith receiving fewer opportunities. Pl. Mem. at 76. However, Smith admits that the rules for acting up did not change as she claims. *See* RSOF ¶ 189. As Defendant explained, when the Bureau of Meter Services was reorganized in or around 2017 to divide the inside and outside functions, the same seniority rules applied to Construction Laborers who worked inside in the contractors and stock rooms and the Construction Laborers who worked outside in the field, and Smith could act up on a seniority basis when her foreman was absent. Def. Mem. at 56; RSOF ¶¶ 188–189. Moreover, Smith does not identify any similarly situated non-Black comparator who received more opportunities to act up, and she provides no other evidence from which a jury could find she was denied acting up opportunities because of her race.

#### d. Hill cannot maintain an acting up claim.

Hill cannot identify: (i) any specific position she believed she should have been permitted to act up into under the acting up policy; or (ii) any other non-Black Staff Assistants who were permitted to act up as she believes she should have been. Def. Mem. at 57; Pl. Mem. at 76–77. Hill pivots in Plaintiffs' Memorandum, arguing not that she was denied the opportunity to act up, but that "she was asked to do a job with higher pay" and was not compensated at a higher rate, and that "the informal acting up" she asserts "is a form of discrimination." Pl. Mem. at 76–77. In support of this specious argument, Hill cites two cases that are inapplicable to her acting up claim, as they address equal pay claims under Title VII and the Equal Pay Act. *See Palmer v. Indiana Univ.,* 31 F.4th 583, 591 (7th Cir. 2022); *Riordan v. Kempiners,* 831 F.2d at 698–99 (7th Cir. 1987). Further, Hill points to no specific evidence suggesting that she should have been compensated at a higher rate for work she allegedly performed, establishing the rate at which she claims she should have been compensated, or that any similarly situated non-Black comparator was treated more favorably. Accordingly, her acting up claim cannot go forward.

#### e. Anderson cannot maintain an acting up claim.

Anderson admits that he has never disclosed an acting up claim in this case (*see* RSOF ¶ 192) but now claims that he can pursue an acting up claim based only on his alleged deposition testimony that "Whites (including Chris Williams' nephew) were treated more favorably." Pl. Mem. at 77 (citing SOAF ¶ 136). However, there is absolutely no evidence supporting an acting up claim on behalf of Anderson, as the single fact he cites in support of this claim includes no mention of acting up, and the vague, unsupported deposition testimony he cites is not even included as an exhibit. *See* SOAF ¶ 136; PX 1, Anderson Dep. Tr.

### 5. Ealy's Shift Assignment Claim Fails.

Ealy fails to even specify a position to which she allegedly sought a transfer and was denied, much less that any of her shift assignments were discriminatory. As an initial matter, Ealy acknowledges that she cannot maintain a claim relating to her 2014 transfer to the Training ACOE position on the Day Crew. *See* Pl. Mem. at 77, fn. 11. Additionally, neither Paragraph 153 of Plaintiffs' Statement of Additional Facts nor Ealy's testimony cited therein specifies the position to which Ealy requested a transfer "outside the formal transfer request process" in 2018, or whether Ealy in fact received the transfer she requested. *See* SOAF ¶ 153; Pl. Mem. at 77–78. While that alone is fatal to her claim, her failure to identify a single "white guy" who was granted a transfer without formally requesting one, and her vague, unsupported testimony that she and other unspecified "black personnel at the plant" had "heard of other people doing it" (which constitutes inadmissible hearsay) only further highlight the lack of evidence supporting her claim.

Ealy also cannot maintain a claim relating to her alleged requests to transfer out of Sawyer in 2019 because she fails to specify the location or position to which she requested a transfer, whether the transfer was formally denied, or even the reason she believed the transfer was formally denied. *See* SOAF ¶ 153. Ealy's references to alleged "factual disputes" regarding her request for assignment to the Pump Control ACOE position at Jardine in 2015 (*see* Pl. Mem. at 77–78; RSOF ¶¶ 202–203) also have nothing to do with the transfer requests Ealy claimed were discriminatory during her deposition, which occurred in 2018 and 2019 after she transferred to Sawyer. *See* SOAF ¶ 153; RSOF ¶ 34. In any event, Ealy has failed to present any evidence contradicting Defendant's operational needs or establishing that any discriminatory action was taken against her in relation to her 2015 transfer request either. *See* Pl. Mem. at 77–78; RSOF ¶¶ 202–203.

**IV.** **SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS.**

    **A.** **The Court should not consider Plaintiffs' vague, generalized allegations of allegedly harassing conduct on summary judgment.**

Plaintiffs attempt to rely on vague allegations of racially harassing conduct that do not specify when the conduct occurred, the individuals who engaged in, experienced, or witnessed the allegedly harassing conduct, or the individuals to whom such conduct was reported. As this Court stated in *Howard*, such "generalized allegations are insufficient, without more, to defeat summary judgment." *Howard*, 2022 U.S. Dist. LEXIS 80848, at *28 (citing *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (noting that plaintiff did not "set forth any of the times, dates, or places which led to" his conclusions)); *see also Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817, 822 (7th Cir. 2003); *Bloomer v. Slater*, 2002 U.S. Dist. LEXIS 15683, *29–*30 (N.D. Ill. Aug. 23, 2002) (granting summary judgment where plaintiff "offered no evidence of the dates or times of the allegedly hostile comments, has never identified the coworkers involved, and has presented no evidence at all that she made complaints concerning these comments to managers").

As in *Howard*, this Court should consider only Plaintiffs' testimony specifying the "times, dates, or places" of the alleged incidents when ruling on their HWE claims. *Howard*, 2022 U.S. Dist. LEXIS 80848, at *28; *see also Outley v. City of Chi.*, 2021 U.S. Dist. LEXIS 196110, at *22–*23 (N.D. Ill. Oct. 12, 2021) (plaintiff's testimony that he had seen racially offensive screen savers, cartoons, jokes, posters, and graffiti but "could not recall when or where or give any specifics" did "not establish any foundation for his personal knowledge that such events occurred at DWM"); *Moore v. PNC Bank*, 2023 U.S. Dist. LEXIS 107125, at *34 (N.D. Ill. June 21, 2023); *Jungiewicz v. Allstate Insurance Co.*, 2014 U.S. Dist. LEXIS 42772, at *14 (N.D. Ill. Mar. 31, 2014) (recollection of statements made by supervisors "several times" insufficient to defeat summary

judgment where plaintiff "was unable to identify any specific instance or even give the name of one supervisor who made such a statement"). When considering the limited testimony provided by Plaintiffs including any specific dates or details, they have failed to establish severe or pervasive racial harassment.

**B.      Plaintiffs cannot rely on alleged harassment of which they were not aware or second-hand hearsay to establish individual HWE claims.**

None of the individual Plaintiffs has produced sufficient evidence for a reasonable jury to find that they *personally* experienced severe or pervasive racial harassment. Instead, Plaintiffs merely point to conclusory statements about an alleged "culture" of racism, along with alleged incidents in which Plaintiffs were not involved and had no personal knowledge of. *See* Pl. Mem. at 35–44.

As this Court found in denying Plaintiffs' motion for class certification, the DWM is not a single, common work environment—rather, it is comprised of "five separate bureaus and operates from numerous locations spread throughout Chicago, including two large multi-level treatment plants and hundreds of construction sites." *Edmond*, 2023 U.S. Dist. LEXIS 98174, at *12. As the Seventh Circuit emphasized in *Howard*, the question of whether "employees have endured objectively severe or pervasive harassment must be answered separately because they depend on individualized questions of fact and law whose answers are unique to each [plaintiff's] particular situation." *Howard,* 989 F.3d at 605 (internal citations and quotations omitted).

The presence of an allegedly racist supervisor at one location does not create a hostile work environment ("HWE") for every Black employee across the DWM. *See* RSOF ¶ 30 (admitting that various Plaintiffs did not know various supervisors who allegedly engaged in racially harassing conduct). Likewise, former Mayor Rahm Emanuel's statements to the media about the alleged "culture" of the DWM (which, contrary to Plaintiffs' misrepresentations, he never actually

referred to as a "racist culture") similarly provide no support for their claims. *See* Defendant's Response to Plaintiffs' Statement of Additional Facts ("RSOAF"), at ¶ 35; PX 45-12. And offensive e-mails, which were exchanged among a small group of individuals that did not include Plaintiffs, also do not establish that Plaintiffs themselves were subjected to a HWE. *See* RSOF ¶ 228 (admitting that Laws, Edmond, Hill, Henry, Cooper, and Smith testified they did not receive racist e-mails themselves); Dkt. No. 294, Def. Mem. at 73–74; *Mason v. Southern Ill. Univ. at Carbondale,* 233 F.3d 1036, 1046 (7th Cir. 2000).

As the Seventh Circuit stated in *Mason*: "Mean-spirited or derogatory behavior of which a plaintiff is unaware, and thus never experiences, is not 'harassment' of the plaintiff (severe, pervasive, or other). Thus, for alleged incidents of racism to be relevant to showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them." *Mason*, 233 F.3d at 1046; *see also Downey v. Briscoe,* 2013 U.S. Dist. LEXIS 169043, *14, fn. 1 (N.D. Ill. Nov. 29, 2013) (Kennelly, J.) (declining to consider "evidence of hostile conditions experienced by others of which [plaintiff] was unaware" because "[s]uch evidence is almost certainly irrelevant to show whether *Downey's* work environment was racially hostile") (emphasis in original); *Buttron v. Sheehan*, 2003 U.S. Dist. LEXIS 13496, *12 (N.D. Ill. Aug. 4, 2003) ("Plaintiffs must have known of these statements and this conduct during the time they experienced the purported harassment for the evidence to be probative of a hostile work environment."). The Court should disregard all allegations relating to racially harassing conduct of which individual Plaintiffs were not personally aware.

Moreover, Plaintiffs also repeatedly reference inadmissible second-hand hearsay in support of their HWE claims, upon which they cannot rely to defeat summary judgment. *See Allen v. Ford Motor Co.,* 2023 U.S. Dist. LEXIS 159171, *15–*16 (N.D. Ill. Sept. 8, 2023) (holding that plaintiff

could not rely on hearsay statements that she was frequently referred to as "black bitch," of which she was only aware based on comments of other coworkers, to defeat summary judgment on HWE claims); *King v. Ill. Dep't of Juv. Just.*, 2014 U.S. Dist. LEXIS 52954, at *3 (N.D. Ill. Apr. 17, 2014) (plaintiff's testimony about what other employees told him regarding incident involving alleged comparator "is hearsay that cannot serve to create a genuine question of fact on summary judgment") (citing *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011). As such, Plaintiffs cannot support their HWE claims with unsupported testimony that they "heard rumors" or "[s]everal other employees also told" them that supervisors used racial slurs or racially offensive language. *See* Pl. Mem. at 38, 40.

*Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887 (7th Cir. 2018), which Plaintiffs cite, is also distinguishable. Unlike most of Plaintiffs' allegations here, the plaintiffs in *Johnson* testified to hearing racially derogatory language themselves and cited to specific examples. *See Johnson*, 892 F.3d at 901–02. Moreover, the court in *Johnson* stated that the hearsay cited by the plaintiffs was the "weakest evidence" presented and specifically "caution[ed] against elevating workplace rumors to evidence of a hostile work environment" on summary judgment. *Id.* at 902–03. The court also stated that "offhand comments" and "isolated incidents," such as many of those alleged by Plaintiffs here, are insufficient to establish a HWE. *Id.* at 900.

To defeat summary judgment, each Plaintiff must be able to point to admissible "site-specific" or "worker-specific" details establishing that *they themselves* experienced severe or pervasive harassment. *Edmond*, 2023 U.S. Dist. LEXIS 98174, at *15. Plaintiffs cite almost no specific, admissible evidence supporting their individual HWE claims, instead simply making broad, conclusory allegations of a "Jim Crow" culture and citing inadmissible hearsay and vague, non-specific, or time-barred allegations. Accordingly, none of the Plaintiffs have produced

sufficient evidence sustaining an individual HWE claim, and vague allegations of harassing conduct experienced by others across the distinct, varied worksites of the DWM over the course of nearly a decade will not salvage their claims.

### C. Plaintiffs cannot pursue hostile work environment claims based on time-barred conduct under a continuing violation theory.

Plaintiffs fail to establish that they can rely on isolated incidents that allegedly occurred outside of the relevant limitation periods.[7]  As an initial matter, Plaintiffs assert that they are only challenging conduct dating back to 2011 under the continuing violation theory; accordingly, by their own admission, any conduct occurring prior to 2011 is time-barred.  *See* Pl. Mem. at 50. Moreover, this Court may consider conduct occurring between 2011 and the start of the statutory time periods *only* if the otherwise untimely conduct is part of a "a *single unlawful employment practice* falling at least in part within the statutory period."  *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) (emphasis added); *see also Ford*, 942 F.3d at 852 (stating that "[a]cts bearing 'no relation' to one another" constitute "separate employment practices" to which the continuing violation doctrine does not apply).

Plaintiffs' argument that they can rely on otherwise time-barred conduct in support of their HWE claims incorrectly assumes they have established a HWE constituting "one unlawful employment practice" across the entire DWM dating back to 2011.  *See* Pl. Mem. at 33–34.  As

---

[7]     Plaintiffs apparently misunderstand Defendant's position on the statutes of limitation applicable to their claims.  Pl. Mem. at 32.  As Judge Gotschall held in this case, Section 1983 Equal Protection claims are subject to a two-year statute of limitation and Section 1981 claims brought via Section 1983 are subject to a four-year statute of limitations.  Dkt. No. 108 ("A four-year limitations period therefore applies to plaintiffs' § 1981 claims pleaded in the SAC, and a two-year period governs any pre-formation § 1981 claims and all of plaintiffs' claims brought under § 1983 and the Fourteenth Amendment."); Def. Mem. at 64–65.  If the ICRA applies to Plaintiffs' claims (which Defendant disputes), claims brought under the ICRA are governed by a two-year statute of limitations.  740 ILCS 23/5.  Because Plaintiffs filed their original Complaint on June 29, 2017 (Dkt. No. 1), they cannot pursue Section 1981 claims arising out of conduct occurring before June 29, 2013 and cannot pursue Section 1983 Equal Protection or ICRA claims arising out of conduct occurring before June 29, 2015.

this Court stated in its opinion denying Plaintiffs' motion for class certification, Plaintiffs have not done so. *See Edmond*, 2023 U.S. Dist. LEXIS 98174, at *10–*18 (denying certification of HWE class in part because Plaintiffs' allegations of a "culture of racism" "overlook[] meaningful distinctions among the class members' individual experiences").

Plaintiffs' allegations are nothing more than a collection of isolated incidents insufficient to establish that the continuing violation doctrine applies to Plaintiffs' claims. Where there is a significant gap of time between alleged incidents, alleged incidents involve different work locations or supervisors, or intervening action by an employer severs a HWE claim, time-barred conduct cannot be considered as part of a single, continuous HWE under the continuing violation doctrine. *See Ford*, 942 F.3d at 852 (stating that a "significant gap between alleged incidents of discriminatory harassment" and "certain intervening action by the employer" can "sever the hostile work environment claim"); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (holding discriminatory acts separated by a three year gap were "not part of the same hostile work environment"); *Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992) (holding two similar acts, separated by a two-year gap were not part a continuing violation); *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 386 (7th Cir. 2007) ("employee moved from one plant to another, where a different set of managers made decisions about working conditions, might well experience different hostile environments for the purpose of *Morgan*"). Such is the case here.

As noted above, the vast majority of Plaintiffs' allegations regarding allegedly racially harassing conduct are not tied to any specific date, time period, or details. However, the limited allegations for which Plaintiffs do specify dates clearly indicate that these alleged incidents were not part of a single unlawful employment practice to which the continuing violation doctrine applies. As just one example, Plaintiffs claim that Donald Anderson was told by Superintendent

Jack Lee that Anderson "would be leaving" the South District "in 2009 or 2010" and that Anderson saw a noose in a truck "in approximately 2009 or 2010." Pl. Mem. at 42, 44. Such conduct is clearly unrelated to Anderson's alleged confrontation with Szorc eight years later in March 2017. *Id.* at 42.

As this Court held in *Porus v. Randall*, 2014 U.S. Dist. LEXIS 47988 (N.D. Ill. Apr. 8, 2014) (Kennelly, J.), the time-barred conduct alleged by Plaintiffs, which involved different perpetrators, levels of frequency, and severity, is insufficiently related to the limited admissible, specific conduct that allegedly occurred within the statute of limitations to form part of the same HWE. *Porus*, 2014 U.S. Dist. LEXIS 47988, at *12–*16 (granting summary judgment). Accordingly, Plaintiffs should not be permitted "to rope in all of the" time-barred conduct they allege under the continuing violation doctrine. *Id.*

**D.    Plaintiffs' conclusory allegations regarding discipline, overtime, promotions, and acting up provide no support for their HWE claims.**

Plaintiffs argue that their conclusory, unsupported allegations regarding conduct that "does not constitute an 'adverse action' . . . comprise part of Plaintiffs' evidence of a hostile work environment." Pl. Mem. at 37–38. Specifically, Plaintiffs cite to their allegations that they were "accused of disciplinary actions" but not ultimately disciplined, and Hill's unsupported testimony that Stark, Bresnahan, Pope and Lynch "would initiate disciplinary actions" against unidentified Black employees "to retaliate or prevent them from protesting harassing conditions." *Id.* at 37. To the extent Plaintiffs allege they were "subjected [to] the disciplinary process" but not disciplined, or that unidentified Black employees were subjected to disparate treatment in relation to discipline, overtime, or promotions by unidentified supervisors under unexplained circumstances, these vague, conclusory allegations have no connection to race and are also insufficient to sustain a HWE claim. *See Id.* at 37–38, 46–50; *Zayas v. Rockford Mem'l Hosp.*,

740 F.3d 1154, 1159 (7th Cir. 2014) ("Alleged harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race."); *Howard*, 2022 U.S. Dist. LEXIS 80848, at *28.

<blockquote>

**1.  Individual Plaintiffs Do Not Establish That They Experienced a Hostile Work Environment**

**a.  Edmond cannot establish that he experienced a HWE.**

</blockquote>

Plaintiffs' Memorandum makes no mention whatsoever of Edmond anywhere in its discussion of Plaintiffs' HWE claims.  *See* Pl. Mem. 30–53. Edmond states only that Lynch referred to Blacks as "you people" and picked fights with Cooper "because Cooper is Black." SOAF ¶ 159.  Edmond does not claim that he ever heard any racial epithet, saw racist imagery, or that he himself was ever called any derogatory term.  Nor does he claim to have witnessed or otherwise experienced any racial hostility.  His assertion that Lynch used the ambiguous term "you people" to refer to other unidentified individuals at an unspecified time, and his speculation that Lynch picked fights with Cooper "because Cooper is Black," which is not supported by any personal knowledge, do not create a genuine dispute for trial.  *See Strickland v. Dart,* 2023 U.S. Dist. LEXIS 56429, at *54 (N.D. Ill. Mar. 31, 2023) (finding that the use of "you people" and other derogatory comments do not rise to the level of a HWE); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and discrimination law would be unmanageable if disgruntled employees . . . could defeat summary judgment by affidavits speculating about the defendant's motives.").

<blockquote>

**b.  Ealy cannot establish that she experienced a HWE.**

</blockquote>

The crux of Ealy's HWE claim is that she was not respected as a supervisor, her authority was undermined, and her subordinates were allowed to circumvent her, which she contends did

not happen to unidentified White employees. SOAF ¶¶ 151, 156–158. But "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). To survive summary judgment, Ealy must establish that the conduct she complains of "was tied 'in character or purpose' to" her race. *Pearson v. Advocate Health Care*, 2017 U.S. Dist. LEXIS 128349, *13 (N.D. Ill. Aug. 14, 2017) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)). These vague, non-specific allegations do not meet that burden.

The only example of racial animus that Ealy claims to have personally experienced is being called a "bitch" or "black bitch" by ACOE Nick Dever at an unspecified time. SOAF ¶ 152; RSOF ¶ 238. Ealy does not specify when or how many times Dever used the term, or offer any specific details supporting this allegation. *Id.*[8] This vague allegation is insufficient to establish that Ealy was subjected to severe or pervasive harassing conduct. *See Harper v. Ceisel Masonry*, 2008 U.S. Dist. LEXIS 7, *3 (N.D. Ill. Jan. 2, 2008) (granting summary judgment on HWE claim where plaintiff alleged she was called a "black bitch").

Nor can Ealy establish that she worked in an environment that was racially hostile in any other respect. Ealy claims that she heard unidentified ACOEs use the term "you people," "boy," or "y'all," and that Stark, Pope, and Lynch used the term "you people" or "you all," but does not identify when, how many times, to whom this was said, or in what context, which is critical given that all of those terms may be used without racial connotations. SOAF ¶¶ 152, 155. These non-specific allegations are not enough for a jury to find that Ealy experienced severe or pervasive

---

[8] Ealy also claims that a co-worker named John Scollard used the term "black bitch," but similarly does not specify when or how many times, or provide any supporting details. RSOF ¶ 237. Scollard retired on December 31, 2010, so any claim based on his comments is indisputably time-barred. RSOF ¶ 237.

racial harassment. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 601–02 (7th Cir. 2014) (affirming summary judgment on HWE claim where plaintiff alleged that co-worker referred to him as "black nigger" and "boy"); *Lee v. Styrolution America LLC*, 2013 U.S. Dist. LEXIS 28611, *16–*18 (N.D. Ill. Mar. 1, 2013) (holding that plaintiff's allegation that co-worker repeatedly called him "boy" was not severe or pervasive). Finally, Ealy claims that she saw a noose at an unspecified time in an unspecified location prior to 2011. *See* Def. Mem. at 77; DSOF ¶ 241; SOAF ¶ 153. That isolated incident, which allegedly occurred years before the start of the statutory period, is time-barred, and given the lack of supporting detail, insufficient to support Ealy's HWE claim.

### c. Cooper cannot establish that he experienced a HWE.

Cooper does not identify a single time he was personally harassed because of his race. The only incident he cites is a fight Cooper had with Lynch in 2017 because "Cooper spoke to [Lynch] rudely[,]" which Cooper himself admits. SOAF ¶ 149. According to Cooper's own testimony, however, this alleged incident had no connection to race, as Lynch did not use any racially offensive language and Cooper never heard him use any racially offensive language otherwise. RSOF ¶ 246.[9] Cooper further concedes that Lynch also had conflicts with White employees, identifying Joe McMahon as "a white person that got into it with Joe Lynch." RSOF ¶ 249. As there is no evidence that Cooper's altercation with Lynch was related to race, this alleged incident provides no support for Cooper's HWE claim.

---

[9] Plaintiffs dispute that Cooper testified that he "never heard Lynch use racially offensive language" and claim that the cited portions of the record "reflect that Cooper was not asked that question." RSOF ¶ 246. In fact, Cooper was asked exactly that question in the portion of his deposition transcript Defendant cites. *See* DX. 13, Cooper Dep. Tr., 146:16–24 ("Q: Have you ever heard Lynch use any racially offensive language? A. No.").

Cooper also claims he saw KKK symbols and swastikas at the Sawyer facility, but offers no evidence as to when he allegedly saw them and admits that he never reported seeing them. SOAF ¶¶ 143, 148. As explained above, the Court should not consider these vague, non-specific allegations on summary judgment. However, even if the Court were to consider these allegations, the symbols, which were not directed at Cooper himself, are insufficient to establish that he was subjected to a HWE. *See Woodard v. Tower Auto Prod Co.,* 2004 U.S. Dist. LEXIS 19595, *7 (N.D. Ill. Sept. 28, 2004) (holding that graffiti including the terms "nigger" and "Ku Klux Klan" "which was directed at a general audience rather than at plaintiff" and did not interfere with plaintiff's work performance was insufficient to establish HWE).

Cooper also does not claim to have heard any racial slurs directed at him or others. He claims only that he heard Skiadopoulos use the word "boy" and the phrase "you people." SOAF ¶ 146. These allegations provide no support for Cooper's claims because he does not provide any details as to when he allegedly heard Skiadopoulos use those terms, how many times, to whom they were said, or the context in which they were said. *Id.* Cooper also asserts that another Black employee told him that Skiadopoulos once used the term "nigger boy" and that "it was common knowledge that Joe Jones was referred to as an 'effing nigger' on a daily basis and other employees experienced similar epithets." *Id.* at ¶¶ 146–147. These allegations, which are supported only by inadmissible hearsay and provide no specific detail, are also insufficient to support a HWE claim.

### d. Hill cannot establish that she experienced a HWE.

Hill claims, with no support, that Alan Stark and her supervisor Mark O'Malley treated her rudely because of her race. Hill asserts that "from [her] observations of how O'Malley treated her, his mannerisms and the way he acted with other African Americans, it was clear O'Malley (from Bridgeport) had a problem with [her] being black." SOAF ¶ 189. Likewise, Hill claims she believed Stark was racist because he "often spoke to [her] in a nasty, unprofessional tone of voice."

SOAF ¶ 180.  Hill does not allege that O'Malley or Stark ever referred to her in a derogatory way, and the fact that O'Malley was "from Bridgeport" does not establish that he subjected Hill to a HWE.  *See Abrego*, 907 F.3d at 1015 (having supervisors who are "'short tempered,' 'hostile,' unfairly critical, and disrespectful," does not amount to "objectively offensive, severe, or pervasive" conduct).  Nor does Hill identify any similarly situated non-Black employee whom O'Malley or Stark treated differently.  Hill's unsupported suspicion that her race affected how O'Malley and Stark treated her is not enough to establish a HWE.

While Hill presents no evidence that Stark ever directed any racially offensive language toward her, she claims that she heard Stark say "nigger" on a single occasion sometime "between 2010 to 2014, 15" while Stark was on the phone in his office and Hill was standing outside.  RSOF ¶251.[10]  Hill testified that she did not know the subject of the conversation, and that the term was not directed at her or used in reference to her.  Nor did she report the incident to anyone.  *Id.*  This isolated incident involving a single racially offensive term that was not directed at Hill, but rather overheard from a different room at an unspecified time over a four-to-five-year period beginning prior to the applicable statutes of limitations, is insufficient to sustain a HWE claim.

Hill also fails to establish that Stark harassed her by initiating a pre-disciplinary hearing against her while her mother was in the hospital in 2012, or that this alleged incident is timely or had any relation to race regardless.  *See* Def. Mem. at 85; RSOF ¶¶ 262–269; SOAF ¶ 183.  Hill's vague testimony that she saw a Black figurine/doll in Lynch's office at an unspecified time between 1998 and 2005, with no additional context, is also untimely and insufficient to support a HWE claim.  RSOF ¶ 254; SOAF ¶ 181.  Finally, all of Hill's testimony about what other

---

[10] Plaintiffs claim that Hill heard Stark use the "N-word" three times.  RSOF ¶ 251.  However, Hill's testimony was unequivocal. *See* DX 19, Hill Dep. Tr., 42:21-23 ("Q. So to be clear, you heard him say the word 'nigger' one time; is that correct? A. That's correct.").

employees allegedly told her is inadmissible hearsay and cannot support her claim. *See* Pl. Mem. at 49; *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

### e. Laws cannot establish that he experienced a HWE.

Laws's testimony that he heard racial slurs in the 1990s allegedly used by individuals who left DWM well before the start of statutory limitations periods is insufficient to support his HWE claim. *See, e.g.*, SOAF ¶ 195; DX 14: Laws Dep. Tr., 71:5–10. Indeed, it is undisputed that Laws was never called derogatory names after the early 1990s and had not seen racially offensive graffiti in any City facilities since the early-to-mid-1990s. RSOF ¶ 276. These allegations have no connection to any conduct alleged by Laws within the applicable limitations periods and are therefore time-barred.

Within the limitations period, Law claims to have heard Foreman Norman Clark make racist remarks to other Black employees between 2014 and 2017 but does not claim that Clark ever directed a racial slur at him. Pl. Mem. at 43. However, as Laws provides no details about where, when, or to whom these statements were made, they are insufficient to support his claim on summary judgment and should not be considered by the Court. *See* SOAF ¶ 197.

Laws also claims to have seen what he believed to be a noose hanging from a White truck driver's truck around 2017 or 2018, to which he responded by shaking his head and moving along. RSOF ¶ 274. This isolated incident is also insufficient to maintain a HWE claim. *See Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (affirming summary judgment on HWE claim where plaintiff offered no proof that she "was unable to perform her job because of the conduct of her supervisors and coworkers").

### f. Smith cannot establish that she experienced a HWE.

It is undisputed that Smith testified she was never called a racial epithet and never heard anyone call someone else a racial epithet. RSOF ¶ 278. The only racist imagery she claims to have witnessed was a monkey allegedly hanging on an office wall in 2004. SOAF ¶ 201. As Smith provides no detail about the alleged monkey or any context suggesting it was intended to have racial connotations, this allegation is insufficient to establish a HWE. *Id.* Moreover, because this allegation has no connection to any conduct alleged by Smith within the applicable limitations period and Plaintiffs admit they do not include conduct before 2011 in the HWE claims, it is time-barred. Smith also claims that she was once asked to write up a Black laborer for something a White employee had done. SOAF ¶ 203. However, Smith offers no explanation of what the conduct was, when it occurred, who engaged in the conduct, who asked her to write up the Black employee, or who made the decision not to write up the White employee. *Id.* Accordingly, this vague allegation cannot be considered as evidence of a HWE on summary judgment.

### g. Anderson cannot establish that he experienced a HWE.

The vast majority of allegations Anderson cites occurred at an unspecified time or well before the statutory time period, and are therefore insufficient and/or time-barred. *See* Def. Mem. at 88; SOAF ¶¶ 137–138 (describing incidents from 2009 or 2010, and failing to provide dates for other allegations cited). To the extent he attempts to rely on bathroom graffiti he allegedly saw "for a couple years around 2013," those allegations are also insufficient to establish a HWE. *See id.* at ¶ 132; *Woodard,* 2004 U.S. Dist. LEXIS 19595, *7.

Anderson claims that Michael Szorc, Christopher Williams, and Jack Lee called him "nigger" and used other racial slurs when he worked in the South District, and that Williams called him "nigger" at least five times, including as recently as 2017. SOAF ¶¶ 136–137. Anderson also refers to various other slights that he or others allegedly experienced, including that Anderson's

parking spot was reassigned and his vehicle was subsequently scratched at an unspecified time; that the truck Anderson drove had several flat tires at an unspecified time; and that a Black truck driver allegedly had his brakes cut around 2016 or 2017. *Id.* at ¶¶ 139–140. However, Anderson provides no evidence supporting these claims, as the deposition testimony he cites is not included in PX 1. *See Id.* at ¶¶ 136–137; 139–140; PX 1, Anderson Dep. Tr. Moreover, it is undisputed that Anderson transferred from the South District to the Central District in approximately 2009, so any allegation relating to his time working in the South District is necessarily untimely. RSOF ¶ 40; SOAF ¶ 137.

Anderson also claims that Szorc called him "nigger" during their 2017 altercation described above. Pl. Mem. at 42. DWM personnel investigated the VIW complaints filed by Anderson and Szorc after the altercation and ultimately found Anderson responsible after multiple witnesses confirmed Anderson pushed Szorc, got "in Szorc's face with his fist cocked back ready to hit him[,]" and told Szorc that Szorc would "get his head kicked in and his ass kicked in" and that Anderson would "kill him." RSOF ¶¶ 74–75.[11] Neither Anderson nor any other witness ever claimed that Szorc called him the "N-word" at any point during DWM's investigation. RSOF ¶ 79. Accordingly, Defendant cannot be held liable for any alleged racial harassment committed by Szorc, who was not Anderson's supervisor. *See* RSOF ¶ 73; *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 855 (7th Cir. 2023) (holding that defendant could not be held liable for alleged co-worker harassment because plaintiff failed to report alleged harassment).

---

[11] Anderson argues that these facts are disputed because the VIW and disciplinary records are "incomplete" and misleading. RSOF ¶¶ 73–75. As noted above, this objection is baseless. Anderson also objects that the records contain hearsay statements. However, as also noted above, the witness statements contained in the records are not being offered for the truth of the matter asserted but to explain how Defendant reached its determination on Anderson's and Szorc's complaints.

### h. Henry cannot establish that he experienced a HWE.

Over 21 years at the DWM, Henry describes few incidents that he perceived as racist and admits that he never filed any complaints or grievances about race discrimination. RSOF ¶ 284. Henry alleges that he saw a picture of people in suits with a gorilla's face over the face of Deputy Commissioner Hightower at an unspecified time, and that he heard unidentified individuals refer to unidentified African Americans as "spook" and "boy a lot of times." SOAF ¶¶ 175, 178. As Henry does not identify when or where these allegations occurred, who was involved, or provide any further details, the Court should disregard these allegations on summary judgment.

Henry also alleges that he saw what he believed to be a noose hanging in the truck of a White Motor Truck Driver at an unspecified time, and that he was told "from a guy years ago, when he was over in a bar at 115th and Pulaski," that Jack Lee had referred to Henry as a "nigger" at an unspecified time. SOAF ¶¶ 176; 174 (citing PX 9, Henry Dep. Tr., at 65–68). Henry's testimony about a comment that Lee allegedly made at a bar, which was relayed to Henry by an unidentified individual who had been at the bar, is inadmissible hearsay, lacks any indicia of reliability, and cannot be considered in evaluating Henry's HWE claim. These isolated alleged instances are also insufficiently severe or pervasive to maintain a HWE claim. *See Yancick v. Hanna Steel Corporation,* 653 F.3d 532, 544 (7th Cir. 2011) ("The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference is that it had an effect on the terms and conditions of the plaintiff's workplace").

### i. Anton Glenn cannot establish that he experienced a HWE.

Glenn claims that Lynch raised his voice at Glenn and belittled him, and that Stark treated him in an "authoritative" manner. SOAF ¶¶ 161–163. These allegations bear no connection to race and are therefore insufficient to establish a HWE. *See Zayas*, 740 F.3d at 1159. Glenn also claims that Pope called him a "nigger" on one occasion when Pope asked him to sign a document.

RSOF ¶ 293. However, Glenn could not specify when this comment allegedly occurred, recall the name of the person the document was about, or offer any additional details. *Id.* This isolated incident is also insufficient to establish a HWE.

Glenn asserts that majority-Black Station Laborers were forced to work in less favorable condition than the majority-White Construction Laborers. SOAF ¶ 170. Glenn cannot establish, however, that differences in the working conditions he described had anything to do with race rather than Defendant's operational needs. *See* RSOF ¶¶ 166–172. Station Laborers and Construction Laborers have different jobs with different responsibilities, and Sawyer and Jardine are different facilities with different needs. Moreover, it is undisputed that not all of the members of Glenn's crew were Black. RSOF ¶ 168. Glenn's speculation that Stark discriminated against Black Station Laborers by making them take on worse jobs is unsupported by anything other than Glenn's unsupported speculation.

Glenn additionally claims that he saw a swastika in the workplace around 2009 or 2010, which was spray painted on the ground in the garage area toward the front of the plant. He does not know who did this, and he believes the painters painted over it. RSOF ¶ 292. Glenn also claims he saw "KKK" written on the walls at SWPP at an unspecified time, but he thinks the "KKK" writings were removed. *Id.* Glenn did not report any of this graffiti to anyone. *Id.* By Plaintiffs' own admission, a claim based on an alleged swastika in 2009 or 2010 is time-barred, and these vaguely described occurrences do not rise to the level of a HWE in any event. *See Woodard*, 2004 U.S. Dist. LEXIS 19595, at *7.

## V.  THERE IS NO BASIS FOR EMPLOYER LIABILITY UNDER PLAINTIFFS' 1981 AND EQUAL PROTECTION 1983 CLAIMS.

Plaintiffs seek to establish *Monell* liability under three theories: DWM had a widespread practice permitting and condoning racially harassing language, Defendant failed to respond to a

known risk, and Barrett Murphy was a final policymaker. Pl. Mem. at 15–16. Plaintiffs fail to present admissible evidence to establish facts to support any of these theories.

Plaintiffs lack evidence of a widespread custom or practice of discrimination. To establish such a practice or custom, Plaintiffs must show there was "some knowledge or awareness—actual or imputed—of the custom and its consequences showing the municipality's approval, acquiescence, or encouragement of the alleged unconstitutional violation." *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986). Here, Plaintiffs fail to establish a widespread custom that caused their alleged injuries. Plaintiffs primarily rely on hearsay statements made during a City Council hearing and contained in OIG reports regarding offensive conduct that are inadmissible and should be excluded by the Court. *See* Pl. Mem. at 26–27; *Outley*, 2021 U.S. Dist. LEXIS 196110, at *21 (excluding 2017 OIG reports regarding offensive e-mails on summary judgment). The offensive e-mails Plaintiffs cite also do not establish widespread harassment of Black DWM employees. The DWM is vast, employing 2,000 individuals (RSOF ¶ 3), and the alleged e-mails were exchanged only among a small handful of employees. Moreover, none of the e-mails pertained to or were sent to the individual Plaintiffs in this case. *See*, *e.g.,* RSOAF ¶ 17.

Plaintiffs also cannot show inaction caused their alleged injuries. The standard to establish *Monell* liability based on inaction is high. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has *caused* an employee to do so, rigorous standards of culpability and *causation* must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020) (emphasis added). Plaintiffs cannot establish that the City's alleged inaction caused any of their alleged injuries. Though they claim the City did not have an effective claim procedure, Plaintiffs do not allege they made complaints, let alone that any complaint they made was not investigated. *See* Pl.

Mem. at 24-26.  Further, as Plaintiffs concede, when Defendant became aware that certain DWM managers engaged in e-mail correspondence that violated the City's EEO policy, Defendant took action to address the conduct, which led to the retirement, resignation, or discharge of multiple individuals involved.  *See* RSOAF ¶ 33. Plaintiffs' argument that Defendant's EEO complaint system was ineffective also misrepresents EEO Officer Mark Pando's deposition testimony and is not supported by admissible evidence.  *See* Pl. Mem. at 24–25; RSOAF ¶¶ 85–99.  Contrary to Plaintiffs' claim that DHR was understaffed, Pando in fact testified that DHR was fully staffed for the entirety of the relevant time period other than a brief period of turnover at the end of 2016.  DX 179, Mark Pando July 27, 2021 Deposition Transcript, at 11:4–15:16.  This testimony provides no support for Plaintiffs' claim that Defendant failed to address complaints.

Finally, Plaintiffs cannot establish that DWM Commissioner Barrett Murphy was the final policymaker for purposes of *Monell* liability.  Plaintiffs admit that DHR sets Defendant's EEO policy (Pl. Mem. at 21) and they lack evidentiary support that Murphy was a policymaker with respect to personnel issues. *See Vodak v. City of Chi.*, 639 F.3d 738, 748 (7th Cir. 2011) ("one can be an official policymaker in one domain but not in another.") According to the Municipal Code of the City of Chicago, the Chicago City Council has expressly delegated authority to the Commissioner of Human Resources to promulgate personnel rules, including disciplinary matters. M.C.C. § 2-74-050; *See Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009) (City Council and Commissioner of Human Resources are the final policy makers for the City in the area of employment).  Nor is there evidence that the City Council or the Commissioner of Human Resources delegated final policymaking authority with respect to personnel issues to Murphy. *See Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 665-66 (7th Cir. 2000) (addressing plaintiff's failure to

demonstrate "that Illinois law grants final policy making authority to either of these officers nor any delegation of such authority").

Further, Plaintiffs have presented no evidence that Murphy had any authority over the discriminatory actions they allege. "The question is whether the promulgator . . .was at the apex of authority for the action in question." *Vodak*, 639 F.3d at 748. Plaintiffs do not cite *any* evidence tying Murphy to any allegedly discriminatory action or racial harassment that any individual Plaintiff experienced. They provide no evidence that Murphy ever used any racially offensive language in their presence other than unsupported speculation (Pl. Mem. at 38–39), or that he made any decisions on Plaintiffs' discipline, promotions, overtime, acting up, or shift assignment. *Id.* at 59–78. The undisputed evidence establishes that Murphy was not a final policymaker with respect to personnel issues and that Plaintiffs cannot tie their claims to any policy promulgated by Murphy. For these reasons, Plaintiffs' *Monell* claim fails.

## VI. PLAINTIFFS CANNOT MAINTAIN CLAIMS UNDER THE ILLINOIS CIVIL RIGHTS ACT.

### A. Plaintiffs have failed to establish that the Illinois Civil Rights Act applies to their employment discrimination claims.

In arguing that the "plain text" of the Illinois Civil Rights Act ("ICRA") applies to their employment discrimination claims against Defendant, it is in fact Plaintiffs who attempt to "re-write" the statute. As highlighted by Plaintiffs' diagram inserting the phrase "other than employment" into the text of Section 23/5 of the ICRA, the phrase "employment" in fact does not appear *anywhere* in the statutory text. *See* Pl. Mem. at 80–81. In light of the statutory text and legislative history of the statute, employment discrimination claims brought under the ICRA should be analyzed under the same standard as employment discrimination claims brought under Title VI of the Civil Rights Act of 1964. Under the Title VI standard, a plaintiff cannot bring an ICRA employment discrimination claim against a government entity unless the entity's primary

purpose is to "provide employment."  If the entity's primary purpose is not to "provide employment," as is the case here, a plaintiff must pursue state law employment discrimination claims under the Illinois Human Rights Act ("IHRA").

The plain language of the statute does *not* support Plaintiffs' assertion that it applies to their employment discrimination claims. Section 23/5(a)(1) the ICRA prohibits "discrimination under any program or activity on the grounds of" race.  740 ILCS 23/5(a).  Plaintiffs argue that the term "activity" encompasses employment because "[e]mployment, including setting the terms and conditions thereof, discipline, promotion, and assignment of overtime, are all activities." Pl. Mem. at 82–83. However, there is no mention of "employment" anywhere in the statute.  *See* 740 ILCS 23/5(a).   Moreover, the Seventh Circuit has stated that "employment is not ordinarily conceptualized as a 'service, program, or activity' of a public entity."  *Brumfield v. City of Chi.*, 735 F.3d 619, 626 (7th Cir. 2013) (holding that Title II of the ADA does not cover disability-based employment discrimination).

Nor does the statute's legislative history, which indicates that the enactment of the ICRA in 2003 was not intended to "create any new rights."  *Ill. Native Am. Bar Ass'n v. Univ. of Ill.,* 856 N.E.2d 460, 467 (Ill. Ct. App. 2006).  The ICRA was patterned on Title VI of the Civil Rights Act of 1964 and "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon" under Title VI.  *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (7th Cir. 2010) (emphasis in original); *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. Mar. 31, 2014) (Kennelly, J.) (stating that the ICRA "was patterned on" Title VI).  As Title VII of the Civil Rights Act of 1964 is the primary vehicle for addressing employment discrimination under federal law, Title VI allows employees to bring employment discrimination claims only under limited circumstances.  *See Johnson v. Transp. Agency,* 480 U.S. 616, 627, n. 6 (1987).

A plaintiff can only bring an employment discrimination claim under Title VI if his employer received federal funds and "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern v. Bd. of Ed. of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998); *see also* 42 U.S.C. § 2000d–3 (Title VI does not authorize action against any employer "except where a primary objective of the Federal financial assistance is to provide employment"); *Outley v. City of Chi.*, 407 F. Supp. 3d 752, 766–67 (N.D. Ill. Sept. 9, 2019) (dismissing employment discrimination claims under Title VI because plaintiff's allegations failed to satisfy either prong of *Ahern*). Because the ICRA is patterned on Title VI, employment discrimination claims under the ICRA are also subject to these same limitations.

Applying the *Ahern* Title VI standard to claims under the ICRA, a plaintiff cannot bring employment discrimination claims against a government entity under the ICRA unless that entity's primary purpose is to "provide employment." Accordingly, Plaintiffs cannot bring ICRA claims against Defendant here because the primary purpose of the DWM is to deliver drinking water and remove wastewater, not to provide employment. *See* Dkt. No. 194, Plaintiffs' Third Amended Complaint ("TAC"), at ¶ 46.

Plaintiffs' citations to *Nelson v. Pace Suburban Bus*, 2023 U.S. Dist. LEXIS 51443 (N.D. Ill. Mar. 27, 2023), and *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2020 U.S. Dist. LEXIS 49102 (N.D. Ill. Mar. 22, 2020), are inapplicable because neither opinion addressed whether the ICRA applies to employment discrimination claims against government entities whose primary purpose is not to "provide employment." *Nelson*, 2023 U.S. Dist. LEXIS 51443, at *9–*11; *Cary*, 2020 U.S. Dist. LEXIS 49102, at *9. In *Rao v. Gondi*, 2014 U.S. Dist. LEXIS 151105 (N.D. Ill. Oct. 23, 2014), the court acknowledged that there is a lack of Illinois case law construing the "program

or activity" language of the ICRA, and limited its holding on this issue to a finding "that tenured employment with the University constituted a program or activity under" the ICRA. *Rao*, 2014 U.S. Dist. LEXIS 151105, *15–*16; *cf. Brumfield*, 735 F.3d at 626 ("employment is not ordinarily conceptualized as a 'service, program, or activity' of a public entity" in the context of Title II of the ADA).

Plaintiffs also fail to respond to Defendant's argument that state law employment discrimination claims are governed by the IHRA, which was enacted long before the ICRA and explicitly provides that "[n]o court of this state shall have jurisdiction over the subject of an *alleged civil rights violation* other than as set forth in this Act." 775 ILCS 5/8-111(D) (emphasis added). As the Illinois legislature did not intend for the ICRA to "create any new rights" (*Ill. Native Am. Bar Ass'n*, 856 N.E.2d at 467), it did not intend for the ICRA to impinge on the IHRA, just like Congress did not intend for Title VI to impinge on Title VII. *See Johnson*, 480 U.S. at 627, n. 6. To the contrary, "[t]he Illinois Supreme Court has found that 'the legislature intended the [IHRA], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source of redress for alleged human rights violations." *Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905, 914 (N.D. Ill. June 23, 2008) (internal citations omitted).

Illinois courts have repeatedly held that they do not have jurisdiction over claims brought under other statutes that are "inextricably linked" to alleged violations of an employee's civil rights, which are exclusively governed by the IHRA. *See* Def. Mem. at 19–20 (collecting cases). As Plaintiffs' discrimination claims under the ICRA arise solely out of their employment with the DWM, their claims are governed exclusively by the IHRA and cannot be brought under the ICRA.

**B.      In the alternative, if the Court holds that Plaintiffs can pursue claims against Defendant under the Illinois Civil Rights Act, Plaintiffs fail to meet the standards to maintain hostile work environment, disparate treatment, or disparate impact / "unintentional discrimination" claims under the ICRA.**

If the Court finds that Plaintiffs can bring HWE or disparate treatment claims against Defendant under the ICRA, then the standard for such claims under Title VII and the Equal Protection Clause applies. *See* Def. Mem. at 20 (collecting cases). As explained above, Plaintiffs have failed to come forth with sufficient evidence to maintain HWE or disparate treatment claims under the *Ortiz* or *McDonnell Douglas* standards, so summary judgment should be granted on their ICRA claims on this basis as well.

Plaintiffs characterize their disparate impact claims as "unintentional discrimination" claims in an attempt to convince this Court to ignore precedent applying the Title VII standard to disparate impact claims under the ICRA, which requires Plaintiffs to identify a "particular employment practice" that had a disparate impact. Pl. Mem. at 83–86. However, Plaintiffs propose no alternative framework for analyzing their "unintentional discrimination" claims— rather, they argue only that the ICRA "permits Plaintiffs to prevail by showing Defendant utilized 'criteria *or* methods of administration' that had the effect of subjecting individuals to discrimination based on race." Pl. Mem. at 86. Plaintiffs' proposal is both unworkable on summary judgment and at trial, and unsupported by the ICRA's legislative history and applicable case law.

The ICRA was enacted in response to *Alexander v. Sandoval,* 532 U.S. 275 (2001), in which the Supreme Court held that Title VI authorized the federal government to bring enforcement actions based on disparate impact but did not allow private actions on that basis. *See Alexander,* 532 U.S. at 280–81, 291–93; Def. Mem. at 17–18. Accordingly, the ICRA was "expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon." *Jackson,* 696 F. Supp. 2d at 964 (emphasis in original) (citation omitted). Contrary to Plaintiffs' assertion that the language of Section 23/5(b) undermines this conclusion, that is exactly

why the statute provides that "[a]ny State claim brought in federal district court shall be a supplemental claim to a federal claim." 740 ILCS 23/5.

If the Court determines that the ICRA applies to Plaintiffs' claims, it should apply the Title VII standard for their disparate impact claims as well. *See, e.g., Nelson*, 2023 U.S. Dist. LEXIS 51443, at *11 (applying Title VII standard and dismissing ICRA disparate impact claim for failure to identify a specific employment practice). Under this standard, Plaintiffs are "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.* 675 F.3d 709, 717 (7th Cir. 2012). General or vague claims are not sufficient. *Id.* ("it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact"). Plaintiffs are obligated to identify: (1) the "specific employment practice[s]" they contend had an adverse impact on Black employees, and (2) facts showing the impact was significant. *See, Bland v. Edward D. Jones & Co., L.P.,* 2020 U.S. Dist. LEXIS 223612, at *47 (N.D. Ill. Nov. 30, 2020). As they have not done so here, their disparate impact / "unintentional discrimination" claim fails.

## VII.  PLAINTIFFS CANNOT BRING CLAIMS UNDER A "PATTERN-OR-PRACTICE" THEORY.

Plaintiffs' Complaint does not contain a "pattern-or-practice" count. *See* TAC.  Likewise, when Plaintiffs set forth their claims before Defendant moved for summary judgment, Plaintiffs' counsel did not state that Plaintiffs are pursuing a "pattern-or-practice" claim.  RSOF ¶ 32.  That is because there is no separate "pattern or practice" cause of action for individual plaintiffs. "'Pattern or practice' allegations do not constitute a discrete claim; rather, they amount to a method of proving discrimination." *Doe v. City of Chi*., 2020 U.S. Dist. LEXIS 41988, at *8 (N.D. Ill. Mar. 11, 2020) (concluding on summary judgment that "plaintiffs may not use the 'pattern or practice' method of proof as an independent method of establishing liability"); *see also Nelson*, 2020 U.S.

Dist. LEXIS 208670, at *19. Contrary to Plaintiffs' argument, there can be no waiver for not moving on a claim that is not a claim. *See* Pl. Mem. at 27–30.

To the extent Plaintiffs are attempting to defeat summary judgment by relying on a pattern or practice method of proof, such an approach is not available to plaintiffs pursuing individual claims. *See Doe,* 2020 U.S. Dist. LEXIS 41988, at *8 ("[i]n private, non-class litigation, the pattern-or-practice method of proof is at odds with a plaintiff's ultimate burden of proving intentional discrimination"). In *Gilty v. Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990), the Seventh Circuit rejected an attempt to prove individual claims through a pattern or practice method of proof, noting the plaintiff "filed an individual claim; this is not a class action. Consequently, his evidence of a pattern and practice can only be collateral to evidence of specific discrimination against the actual plaintiff." *Gilty*, 919 F.2d at 1252. Indeed, courts have universally found that "that the pattern-or-practice method of proof is not available to private, nonclass plaintiffs." *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 149 (2d Cir. 2012) (collecting cases). As the Court denied class certification in this case, Plaintiffs must proceed as individuals and cannot rely on the pattern or practice method of proof.

## VIII. <u>THE COURT SHOULD EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS BERNARD SISKIN AND CHARLES GALLAGHER</u>

In an attempt to defeat summary judgment, Plaintiffs cite the conclusions of their statistical expert Bernard Siskin and sociological expert Charles Gallagher. Pl. Mem. at 50–51; 57–59; 70–71; 78–79; 87. However, because these expert reports were produced only for purposes of class certification and Plaintiffs did not produce any additional expert disclosures for purposes of summary judgment by the deadline set by the Court, the Court should exclude the testimony of these experts, which does not address the merits of any individual Plaintiff's claim in any event. *See* RSOAF, ¶¶ 206–214, 270–274.

During a July 24, 2023 status hearing, Plaintiffs' counsel informed the Court there had not been an expert disclosure schedule applying to anything other than class certification. *See* DX 178, at 6:5–23. Accordingly, the Court set deadlines for Rule 26(a)(2) disclosures relating to "what's left of the case, the individual cases." *Id.* at 7:5–10. The Court also stated it did not see any reason to brief the issue of the admissibility of Gallagher's testimony because there had not "been any requirement yet to make any 26(a)(2) disclosures other than for class certification[.]" *Id.* at 7:17–8:2. The Court then issued an order requiring Plaintiffs to issue Rule 26(a)(2) disclosures for purposes of summary judgment by September 29, 2023. Dkt. No. 277.

As stated in a joint status report filed on October 6, 2023, "Plaintiffs did not issue Rule 26(a)(2) expert disclosures by the September 29, 2023 deadline set by the Court." Dkt. No. 301, at ¶ 8. Accordingly, they cannot now rely on the conclusions of Siskin and Gallagher, which were produced only in support of Plaintiffs' motion for class certification, to defeat summary judgment. The Court should exclude the testimony of these experts because Plaintiffs unjustifiably failed to produce any expert disclosures for purposes of summary judgment by the September 29, 2023 deadline set by the Court, and because Defendant has been harmed by this failure due to its inability to address the impact of Plaintiffs' experts' conclusions on their individual claims within the discovery schedule set by the Court in its order dated July 24, 2023. *See, e.g., In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 20323, *21–*23 (N.D. Ill. Feb. 7, 2023) (Kennelly, J.) (excluding supplemental expert reports produced after expert discovery deadline on summary judgment).[12]

---

[12] As noted above, the reports of Siskin and Gallagher were offered only for purposes of class certification and provide no support for Plaintiffs' individual claims on summary judgment. However, if the Court determines it can rely on Siskin's or Gallagher's testimony on summary judgment, Defendant requests leave to file a motion to exclude their testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: January 10, 2024

Respectfully submitted,

**CITY OF CHICAGO**

By: *_/s/ Richard J. Mrizek_* _____
   One of Its Attorneys

Richard J. Mrizek
James F. Botana
Julia S. Wolf
Anderson Franklin
Jackson Lewis P.C.
Special Assistants Corporation Counsel
150 N. Michigan Ave., Ste. 2500
Chicago, Illinois 60601
(312) 787-4949

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 10, 2024, a copy of the foregoing DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which also electronically serves a copy upon all attorneys of record in this matter.

_/s/ Richard J. Mrizek_