**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DERRICK EDMOND, KATHERINE EALY, EDDIE COOPER, JR., VICKI HILL, ROBERT T. LAWS, JR., ANTON GLENN, VERONICA SMITH, DONALD ANDERSON, and DAVID HENRY,<br><br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br><br>THE CITY OF CHICAGO,<br>　　　　　　　　　　Defendant. | Case No. 1:17-cv-04858<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO PRESENT EXPERT TESTIMONY AT TRIAL**

Defendant City of Chicago ("Defendant" or "the City"), by and through its undersigned attorneys, hereby responds to and opposes Plaintiffs' Motion to Present Expert Testimony at Trial. For the reasons stated below, Plaintiffs' Motion should be denied.

**I.　　INTRODUCTION**

Plaintiffs' eleventh-hour motion to identify experts five weeks before trial is improper. Based on the representations of Plaintiffs' counsel, the Court specifically set a schedule for disclosure and depositions of experts related to Plaintiffs' individual claims. Plaintiffs, however, did not disclose any such expert. Now, for the first time, Plaintiffs request that the Court allow their class certification experts—statistical expert Bernard Siskin and sociological expert Charles Gallagher—to testify at trial regarding Plaintiffs' individual claims, even though these experts have not previously offered any opinion regarding those claims, let alone timely disclosed any such opinion. Allowing these experts to testify at trial as to the remaining individual claims would greatly prejudice Defendant, as Defendant has not had the opportunity to explore their undisclosed

opinions on these claims. The Court should exclude their testimony on this basis alone.

To the extent Plaintiffs now attempt to rely on the opinions Siskin and Gallagher offered on Plaintiffs' class claims in support of their remaining individual claims, the Court should exclude Siskin and Gallagher because their previously disclosed opinions related only to Plaintiffs' class claims and have no bearing on the individual claims remaining at trial. Moreover, even if Gallagher had previously offered any opinion on the remaining individual claims, his report fails to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For all these reasons, Plaintiffs' class certification experts cannot provide any admissible testimony regarding the merits of any individual Plaintiff's remaining claim, and the Court should therefore deny Plaintiffs' Motion and exclude Siskin and Gallagher as witnesses at trial.

## II. ARGUMENT

### A. The Court should deny Plaintiffs' Motion because Plaintiffs failed to timely disclose expert reports addressing their individual claims pursuant to the discovery schedule set by the Court.

The Court should deny Plaintiffs' Motion under Rule 37(c) because allowing Siskin and Gallagher to testify at trial would greatly prejudice Defendant given Plaintiffs' failure to produce any report by these witnesses relating to their individual claims within the schedule previously set by the Court, and because Plaintiffs' failure to disclose any expert opinion applying to their individual claims within that schedule cannot be cured at this late date in the case. *See* Fed. R. Civ. P. 37(c)(1).

During a status hearing on July 24, 2023, the Court specifically set an expert schedule related to the individual claims that remained after denial of class certification. At the status hearing, Defendant's counsel informed the Court that Defendant intended to move to exclude

Gallagher because he did "not opine on any individual plaintiff or whether any individual plaintiff experienced any discrimination in employment in the water department." Exhibit A, July 24, 2023 Hearing Transcript, at 5:9–6:2. In response to this assertion, the Court then engaged in the following exchange with Plaintiffs' counsel:

> ***THE COURT: The question is going to be, do we – has there been an expert disclosure schedule that applies to anything other than class certification? I mean –***
>
> ***MR. SCHOOP: No.***
>
> THE COURT: -- I didn't have this case for the six years.
>
> MR. SCHOOP: No.
>
> THE COURT: It's a "no." Okay.
>
> MR. SCHOOP: It's a "no," right. Yeah.
>
> THE COURT: Okay. So this is what I think the thing to do is then. What I think the thing to do is, and we'll need to adjust this, we'll need to adjust this if the plaintiffs offer something from Dr. Gallagher in response to summary judgment or we may need to, but this is the way we're going to do it. ***I'm going to set a deadline now for 26(a)(2) disclosures relating to, let's just say, what's left of the case, the individual cases. I'm going to set a date for the plaintiff to make 26(a)(2) disclosures. I'm going to set a date for the defendant to make 26(a)(2) disclosures. And I'm going to set a date for completing any depositions.*** Unfortunately, and this is just part of what comes with the territory of having a six-year-old case, that schedule is going to overlap with the summary judgment schedule that I've entered. That's just, you know, as I say or somebody might say, life in the big city.
>
> MR. SCHOOP: That's life, Judge. Got it.
>
> THE COURT: So and then we're not – I'm going to worry about a motion to exclude Dr. Gallagher if and when he gets disclosed and, you know, defense counsel will let me know then because I won't obviously see the 26(a)(2) disclosures if they get filed. ***Somebody will have to give me a prompt saying, okay, they've disclosed Dr. Gallagher, you know, now we have some basis to exclude it. But if there hasn't been any requirement yet to make any 26(a)(2) disclosures other than for class certification, I just don't see any reason to preemptively start briefing about him right now. So that's the way we're going to do it.***

Ex. A, at 6:3–8:2 (emphasis added).

3

The Court subsequently issued an order requiring Plaintiffs to issue Rule 26(a)(2) disclosures for purposes of their individual claims by September 29, 2023; requiring Defendant to issue Rule 26(a)(2) disclosures for purposes of the individual claims by November 30, 2023; and requiring the Parties to complete expert depositions by January 31, 2024. Dkt. No. 277. Accordingly, Plaintiffs' assertion that "[d]iscovery in this case was never bifurcated" (Dkt. No. 333, at 2) is inaccurate—based on the repeated representations of Plaintiffs' counsel during the July 24, 2023 status hearing that there had not "been an expert disclosure schedule that applies to anything other than class certification" (Ex. A, at 6:15–23), the Court set a separate expert disclosure schedule applying to the individual claims. Plaintiffs then failed to produce any expert disclosure addressing their individual claims by the Court's deadline. *See* Dkt. No. 301, October 6, 2023 Joint Status Report, at ¶ 8 ("Plaintiffs did not issue Rule 26(a)(2) expert disclosures by the September 29, 2023 deadline set by the Court.").

Notwithstanding their failure to offer any expert disclosure supporting their individual claims as the Court required, Plaintiffs attempted to rely on Siskin's and Gallagher's reports in their response to Defendant's motion for summary judgment. *See* Dkt. No. 316, Defendant's Summary Judgment Reply Brief, at 49–50. In its summary judgment opinion, the Court stated that "plaintiffs have not provided a justification for their failure to submit Siskin and Gallagher's reports as expert disclosures for summary judgment purposes before this Court's deadline." Dkt. No. 327, at 22.

As Plaintiffs never disclosed Siskin nor Gallagher as an expert offering an opinion on Plaintiffs' individual claims, Plaintiffs cannot now rely on their testimony at trial. Contrary to Plaintiffs' claim that "[t]here is no prejudice or surprise here because the opinions and testimony were disclosed over two years ago" (Dkt. No. 333, at 6), allowing Siskin and Gallagher to testify

4

at trial would unjustifiably harm Defendant given its inability to address the impact of their conclusions on the Plaintiffs' individual claims within the discovery schedule set by the Court in its July 24, 2023 order. *See, e.g., In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2023 U.S. Dist. LEXIS 20323, *21–*23 (N.D. Ill. Feb. 7, 2023) (Kennelly, J.) (excluding supplemental expert reports produced after expert discovery deadline) (quoting *Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("Rule 37(c)(1) states that expert testimony may not be presented at trial if the expert's report was not disclosed to the other side within the deadline unless the party was justified in missing the deadline or the untimeliness of the disclosure was harmless.")).

Granting Plaintiffs' Motion would prejudice Defendant. Contrary to Plaintiffs' argument, Defendant has not "had full disclosure of Plaintiffs' experts' opinions and testimony" on Plaintiffs' individual claims. Dkt. No. 333, at 7. Neither expert's report provided an opinion on any Plaintiff's individual claim, and each expert testified during his deposition that he did not reach a conclusion as to any individual's claim. *See* Section II.B., *infra*. This testimony, along with Plaintiffs' counsel's representation to the Court that its experts were identified only for purposes of class certification and not for purposes of Plaintiffs' individual claims, is exactly why the Court set the expert discovery schedule in its July 24, 2023 order in the first place—to allow the Parties the opportunity to adduce expert opinions supporting or opposing Plaintiffs' individual claims and explore those conclusions through depositions. Plaintiffs chose not to take advantage of this opportunity, thereby depriving Defendant of the ability to depose their expert witnesses regarding their conclusions as to any individual Plaintiff's claims.

The Court should not allow Plaintiffs to submit expert testimony that was never disclosed and for which Defendant was denied the opportunity to depose or rebut those experts. For these

5

reasons alone, the Court should deny Plaintiffs' Motion and exclude Siskin and Gallagher as witnesses at trial.

> **B. The Court should exclude the testimony of Plaintiffs' experts Bernard Siskin and Charles Gallagher because their previously disclosed reports only addressed Plaintiffs' class claims and did not offer any opinion on Plaintiffs' remaining individual claims.**

The Court should also exclude Siskin and Gallagher at trial because their reports produced during expert discovery on Plaintiffs' class claims have no bearing whatsoever on Plaintiffs' individual claims. There is no basis for Plaintiffs to claim that the opinions of their expert witnesses "are equally applicable to" the dismissed class claims and "the *Monell*, hostile work environment, and discipline issues set for trial." Dkt. No. 333, at 2.[1] To the contrary, neither Siskin's nor Gallagher's report contained any opinion related to any individual claim remaining after the Court denied Plaintiffs' class claims, much less any individual claim remaining after the Court issued its summary judgment ruling.

Siskin's report stated his assignment was "to examine the available data to determine the extent to which there is statistical evidence to support the allegation that there is a widespread pattern and practice of discrimination against African American employees of the" DWM in regard to discipline, overtime, and promotions. *See* Dkt. No. 333-1, August 16, 2021 Report of Bernard Siskin, at 1–2. Pursuant to the Court's rulings on class certification and summary judgment, all claims regarding overtime and promotions have been denied or dismissed, so Siskin's conclusions on those topics are irrelevant at trial.

---

[1] In light of Defendant's forthcoming waiver of the *Monell* requirement of proof, any argument that the opinions of Siskin and Gallagher are relevant to Plaintiffs' individual *Monell* claims (which Defendant denies) will also be moot.

6

In relation to discipline, only three individual Plaintiff's claims relating to disciplinary suspensions remain—a five-day suspension Katherine Ealy received in 2018, a 29-day suspension Eddie Cooper received in 2018, and a one-day suspension Anton Glenn received in 2017. *See* Dkt. No. 327, Summary Judgment Opinion and Order, at 26–31. Siskin's report, however, did not address or reach a conclusion on any specific disciplinary outcome received by any specific DWM employee. Rather, Siskin's report only assessed data relating to *pre-disciplinary* charges—indeed, the terms "suspension," "Ealy," "Cooper," and "Anderson" do not appear anywhere in Siskin's report. *See* Dkt. No. 333-1, at 25–35.

During his deposition, Siskin explicitly testified that his analysis did not consider the outcome of any specific disciplinary process. *See* Exhibit B, Transcript of December 10, 2021 Deposition of Bernard Siskin, at 51:20 – 52:6 ("Q. So to be clear, a charge could result in a range of outcomes; right? So it could be -- it could be not guilty or it could be some kind of a reprimand or suspension or even a termination, right? Those are some of the possible outcomes in a charge? A. That's correct. Q. And you're not considering in your analysis those outcomes; you're considering the charging event itself? A. That's correct."). Accordingly, Siskin's previously disclosed expert report bears no relation to any individual claim remaining in this case whatsoever.

Likewise, Gallagher offered no opinion as to the merit of any individual Plaintiff's hostile work environment or discipline claim. *See generally* Dkt. No. 333-2, August 16, 2021 Report of Charles Gallagher. During his deposition, Gallagher repeatedly testified that he had no information regarding any individual claim, stating "I don't know the unique circumstance of each individual"; that he "was not brought in to discuss" individual claims; that he was unable to provide any evidence that racial animus played a role in disciplinary decisions at the "individual level"; and that he could only speculate as to which supervisors created a hostile work environment.

7

Exhibit C, Transcript of December 15, 2021 Deposition of Charles Gallagher, at 120:2–9; 138:23–139:2; 166:15–169:15; 201:17–21.

The Court's summary judgment decision also acknowledged that the conclusions of Siskin and Gallagher had no impact on its analysis of any Plaintiff's individual claim, as the Court stated that "excluding this evidence will not impact the Court's decision" and did not address either expert's conclusions throughout the remainder of the opinion. Dkt. No. 327, at 22. For the foregoing reasons, Siskin's and Gallagher's previously disclosed reports are irrelevant to the issues to be decided at trial and the Court should exclude their testimony on this basis as well.

### C. Gallagher's opinions are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)

Even if Plaintiffs were able to rely upon Gallagher's conclusions for purposes of their individual claims, the Court should exclude his testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because his methodology was not scientifically reliable. As Gallagher admitted during his deposition, he acted "merely" as "a conduit for" the allegations made by the Plaintiffs and former putative class members in their depositions and declarations submitted in this lawsuit, which he also admitted could be entirely biased. Ex. C, Gallagher Dep. Tr., at 46:5–47:11, 111:14–21, 237:19–238:7. The Court should also exclude Gallagher under Rule 702 and *Daubert* because his regurgitation of Plaintiffs' class allegations will not assist the jury in understanding the evidence or determining a fact in issue at trial.

> *1) The Court should exclude Gallagher's testimony because his methodology was not scientifically reliable.*

Gallagher's methodology fails under the requirements of *Daubert* and Rule 702. Under Rule 702, social science testimony must be tested to ensure that an expert's "court testimony

8

'adheres to the same standards of intellectual rigor that are demanded in [the expert's] professional work.'" *Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 263 (7th Cir. 1996) (quoting *Braun v. Lorillard Inc.,* 84 F.3d 230, 234 (7th Cir. 1996)). Here, the methodology Gallagher used to form his opinions was insufficiently rigorous compared to his professional work because he failed to conduct a survey or collect samples as he would have done in a "perfect world." Ex. C, Gallagher Dep. Tr., at 37:17–38:5. Moreover, he admitted that although social scientists like himself usually go through multiple steps to minimize bias, he took no steps to minimize the possibility of bias in the data he reviewed. Because Gallagher failed to follow basic protocols, which he admitted are demanded in his profession, his opinions are unreliable. *See Menasha Corp. v. News Am. Mktg. In-Store, Inc.,* 238 F. Supp. 2d 1024, 1030 (N.D. Ill. Jan. 7, 2003) (stating that because an expert witness "failed to observe numerous fundamental protocols necessary to protect the objectivity and reliability of the survey, [the expert's] survey report and deposition testimony do not meet the reliability requirement of Federal Rule of Evidence 702 and must be excluded").

Under *Daubert*, a court "must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In other words, a district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 779 (7th Cir. 2017) (citations and quotations omitted). The party seeking to introduce expert witness testimony bears the burden of establishing that the testimony meets the *Daubert* standard by a preponderance of the evidence. *Id.* at 782. Here, Gallagher's "opinions" are not based on any methodology, but rather are no more than a regurgitation of evidence fed to him by Plaintiffs' counsel, which does not satisfy *Daubert*'s standards. *See Goldberg v. 401 N. Wabash Venture*

*LLC,* 755 F.3d 456, 461 (7th Cir. 2014) ("An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful."). Indeed, his concession that he merely acted as a "conduit" for the Plaintiffs' and putative class members' allegations is fatal to the reliability of his opinions. *See United States v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991) ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury."); *Van,* 332 F.R.D. at 269 ("Experts who engage in cherry-picking of the evidence fail to satisfy the scientific method and *Daubert*.").

Gallagher's description of his "mixed methodological approach" establishes the unreliability of his work in this case. *See* Ex. C, Gallagher Dep. Tr., at 85:16–87:7; 30:24–32:22 (Gallagher reviewed "documents that were given to me" which "my lawyer felt . . . were relevant" but "just kind of whizzed through" documents he felt "weren't necessarily relevant"); 35:20–36:10 (admitting he did not conduct survey of DWM employees or devise questionnaire for collection of data because he "wasn't asked to do that" and "the declarations and depositions were provided to [him] already"). Rather than preparing his own survey or questionnaire, or requesting different data samples than those provided to him by Plaintiffs' counsel, Gallagher admitted that he merely reviewed the depositions and declarations provided by Plaintiffs' counsel and "showcase[d]" or "holistically . . . highlight[ed]" the deponents' and declarants' allegations. *Id.* at 38:8–40:19; 42:18–43:15. Indeed, nearly half of Gallagher's 35-page report merely summarizes the content of e-mails discovered by the OIG, declarations issued by putative class members, and Plaintiffs' deposition testimony. Dkt. No. 333-2, at 6–8, 18–32.

Although Gallagher acknowledged that soliciting biased responses "is the antithesis of what we want in the social sciences" and that there are "multiple steps you go through to minimize

10

bias[,]" he did nothing to minimize the possibility of bias in the data he collected and was not concerned about the reliability or validity of the data. Ex. C, Gallagher Dep. Tr., at 53:14–54:11, 239:2–13. He also admitted he did not seek out or review any data disconfirming the conclusions in his report. *Id.* at 57:23–58:18 ("I'm not in a position to seek out data on my own . . . [S]o I'm not in the situation where I can go out on my own to confirm or disconfirm."). Significantly, he testified that in a "perfect world," he would have conducted his study differently. *Id.* at 37:17–38:5 ("I might have done a survey – a whole study that was different. I would have had different samples. I would have sampled by occupation. I would have had – you know, I could have done a lot of things, but that's not how – typically how it works for qualitative expert witnesses, or at least I should say for me."). Gallagher's testimony regarding the unreliability of his methods and opinions is fatal to the admissibility of his conclusions.

This Court excluded plaintiffs' expert Louise Fitzgerald in *Howard v. Cook County Sheriff's Office,* 2019 U.S. Dist. LEXIS 13941 (N.D. Ill. Aug. 12, 2019) for similar shortcomings. The *Howard* plaintiffs attempted to offer the testimony of Fitzgerald, who performed a version of a "social framework analysis" related to workplace sexual harassment similar to the analysis performed by Gallagher. Like Gallagher, Fitzgerald did not administer a survey for assessing workplace harassment—rather, she relied only on declarations and deposition testimony from the named plaintiffs, as well as declarations from other putative class members and a tour of the jail. *Howard,* 2019 U.S. Dist. LEXIS 13941, at *8–*10.[2] This Court excluded Fitzgerald's testimony because it was unreliable, finding that "by her own admission, Dr. Fitzgerald's method of reviewing the testimony and statements of women involved in this litigation does not permit a

---

[2] Unlike Fitzgerald, Gallagher did not visit any DWM facilities or work sites.

scientific assessment of the conditions at the jail." *Id.* at *10. Gallagher's opinions in this case are unreliable for the same reasons.

> 2) *The Court should exclude Gallagher's testimony because his opinions will not assist the jury in understanding the evidence or determining a fact in issue at trial.*

The Court should also exclude Gallagher's testimony on the grounds that it merely states a legal conclusion and will not assist the jury in understanding the evidence or determining a fact in issue at trial. "The Seventh Circuit has explained that experts may provide 'concrete information against which to measure abstract legal concepts' but cannot merely state 'a legal conclusion.' Consistent with that approach, courts have concluded that expert testimony in the form of legal conclusions is not helpful to the trier of fact and that such testimony therefore should be exclude[d] under Rule 702." *Van,* 332 F.R.D. at 270–71 (quoting *United States v. Blount,* 502 F.3d 674, 680 (7th Cir. 2007)). Under this principle, Gallagher's opinion that "DWM leadership created a hostile work environment for Black workers and this behavior lead [sic] to race based discriminatory treatment" (Dkt. No. 333-2, at 33–34) is a legal conclusion he is not qualified to answer. *See* Ex. C, Gallagher Dep. Tr., at 200:14-201:16 (describing an understanding of the term "hostile work environment" differing from the legal standard for maintaining a hostile work environment claim).

Additionally, Gallagher's opinions relating to Plaintiffs' hostile work environment and discipline claims will not assist the jury in any meaningful way because they are based only on allegations made by Plaintiffs and putative class members in depositions and declarations. As explained in Section II.A., *supra*, Gallagher admitted during his deposition that he could only speculate as to which supervisors created a hostile work environment. *See* Ex. C, Gallagher Dep. Tr., at 201:17–21. Likewise, he admitted that he was unable to provide any evidence that racial animus played a role in any disciplinary decision at the "individual level," and that he could not

12

provide a percentage of instances in which racial animus played a role in the assignment of discipline. *Id.* at 166:15–169:15.

Rather, Gallagher believed it was his role to act as a "mere . . . conduit" for the Plaintiffs' and declarants' allegations, "holistically . . . highlight[ing]" their allegations by rotely summarizing the contents of their deposition transcripts and declarations. Ex. C, Gallagher Dep. Tr., at 111:14–21; 42:18–43:15; *see generally* Dkt. No. 333-2. However, an expert that merely summarizes the evidence at trial is not helpful to the jury. *See Van,* 332 F.R.D. at 271 (excluding expert testimony relating to defendant's knowledge or toleration of a "pervasive, systematic practice of sexual harassment against women and a policy of retaliation against those who oppose it" because issue could be decided "without resort to expert testimony"). To the extent Gallagher's opinions are based on e-mails, declarations, and testimony cited by Plaintiffs (most of which relate to claims that are no longer at issue in this case), this is evidence the jury can easily assess without resort to his unsupported expert testimony. *See Smith v. Union Pac. R.R.,* 2017 U.S. Dist. LEXIS 94501, *20–*21, (N.D. Ill. June 20, 2017) (excluding expert's opinion relating to facts that were "readily apparent from the face of the documents in this case"). Accordingly, Gallagher should be excluded under Rule 702 and *Daubert* as well.

### III. CONCLUSION

For the foregoing reasons, Defendant City of Chicago respectfully requests that this Court deny Plaintiffs' Motion to Present Expert Testimony at Trial, and requests all other relief this Court deems proper.

Dated: May 3, 2024                                                                 Respectfully submitted,

                                                                              **CITY OF CHICAGO**

By: */s/ Richard J. Mrizek*
One of Its Attorneys

Richard J. Mrizek
James F. Botana
Julia S. Wolf
Anderson Franklin
Jackson Lewis P.C.
Special Assistants Corporation Counsel
150 N. Michigan Ave., Ste. 2500
Chicago, IL 60601
(312) 787-4949

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 3, 2024, he caused a true and correct copy of the foregoing, *Defendant City of Chicago's Response in Opposition to Plaintiffs' Motion to Present Expert Testimony at Trial*, to be electronically filed with the Court and served upon all attorneys of record registered with the Court's ECF/CM system.

                                                      */s/ Richard J. Mrizek*